FRANCIS & MAILMAN P.C.
JAMES A. FRANCIS (*pro hac vice* pending)
DAVID A. SEARLES (*pro hac vice* pending)
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
Tel: (215) 735-8600; Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com

CENTER FOR SCIENCE IN THE PUBLIC INTEREST
STEPHEN GARDNER (*pro hac vice* forthcoming)
5646 Milton Street Suite 211
Dallas, TX 75206
Tel: (214) 827-2774; Fax: (214) 827-2787
sgardner@cspinet.org

THE GOLAN LAW FIRM
YVETTE GOLAN (*by pro hac vice*)
1919 Decatur St.
Houston, TX 77007
Tel: (866) 298-4150 x101
Fax: (928) 441-8250
ygolan@tgfirm.com

FLASHPOINT LAW, INC.
SHIRISH GUPTA (SBN 205584)
1900 S. Norfolk Street, Suite 350
San Mateo, CA 94403
Telephone:  (650) 539-4019
sgupta@flashpointlaw.com

*Proposed Interim Lead Class Counsel and Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BATES, VANESSA GIBSON, and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>KASHI COMPANY, a California corporation, KELLOGG COMPANY, a Delaware corporation, DAVID DENHOLM, DAVID DESOUZA, and DOES 1-100<br><br>　　　　　　　　Defendants. | Case No. 3:11-cv-01967-H-BGS<br><br>**THE BATES PLAINTIFFS' MOTION TO RECONSIDER APPOINTMENT OF THE STEMBER/FARUQI GROUP AS INTERIM CO-LEAD COUNSEL**<br><br>Hearing<br>DATE: March 26, 2012<br>TIME: 10:30 a.m.<br>CTRM: 13<br>JUDGE: The Honorable Marilyn Huff |

1
BATES PLAINTIFFS' MOTION TO RECONSIDER APPOINTMENT OF THE STEMBER/FARUQI GROUP AS
INTERIM LEAD CLASS COUNSEL

**TABLE OF CONTENTS**

I.  APPLICABLE STANDARD ................................................................................ 2

II.  THE EXPERIENCE, KNOWLEDGE, AND RESOURCES OF THE BATES GROUP ............................................................................................................... 2
   A. CENTER FOR SCIENCE IN THE PUBLIC INTEREST ........................................ 2
   B. FRANCIS & MAILMAN P.C. ............................................................................ 6
   C. YVETTE GOLAN AND SHIRISH GUPTA. ........................................................ 7
   D. SELECTION OF THE STEMBER/FARUQI GROUPS' TEAM .............................. 7

III.  THE WORK COUNSEL HAS DONE ............................................................... 8
   A. THE FARUQI GROUP'S COPYCAT COMPLAINT ............................................ 9
   B. THE STEMBER GROUP'S SKELETAL COMPLAINT ...................................... 11
   C. THE BATES GROUP'S INVESTIGATION IS CRITICAL TO THE EFFECTIVE REPRESENTATION OF THE CLASS ................................................................... 12

# TABLE OF AUTHORITIES

CASES

*Carlin v. DairyAmerica, Inc.*, No. 109CV0430 AWI-DLB, 2009 WL 1518058 (E.D. Cal. May 29, 2009)..................................................................14

*In re Auction Houses Antitrust Litig.,* 00 CIV. 0648, 2001 WL 210697 (S.D.N.Y. Feb. 26, 2001) ...........................................................................11

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) .......................11

*In re Oclaro, Inc. Derivative Litig.*, C-11-3176 EMC, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011)..................................................................11

*Kaminske v. JP Morgan Chase Bank N.A.*, Nos. SACV 09-00918 JVS (RNBx), CV 09-6352-JVS (RNBx), 2011 WL 521338 (C.D. Cal. Jan. 3, 2011) ..................................................................................................14

*Sexton ex rel. Jones Soda Co. v. Van Stolk*, C07-1782RSL, 2008 WL 1733242 (W.D. Wash. Apr. 10, 2008) ................................................................11

*Walker v. Discover Financial Services*, 2011 WL 2160889 (N.D. Ill. 2011) .....................................................................................................................14


OTHER AUTHORITIES

Managing Class Action Litigation: A Pocket Guide for Judges at (Federal Judicial Center) (2010) ......................................................................8

Stephen J. Choi, *Motions for Lead Plaintiff in Securities Class Actions* (N.Y.U. Law & Econ. Research Paper No. 08-53, June 2009).........................8

*Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689 (2001)...................................................................8, 9, 10


RULES

FED. R. CIV. PROC. 23 ................................................................................2, 8


TREATISES

7 NEWBERG ON CLASS ACTIONS § 22:7 (4th ed.)......................................................8

MOORE'S FEDERAL PRACTICE § 23.120 [3][a] ............................................13

## MOTION TO RECONSIDER APPOINTMENT OF THE STEMBER/FARUQI GROUP AS INTERIM CO-LEAD COUNSEL

Plaintiffs Michael Bates and Vanessa Gibson (the "Bates Plaintiffs") submit this Motion for Reconsideration of this Court's Order Granting the Stember/Faruqi Group's Motion to be Appointed as Interim Co-Lead Counsel (Doc. 41, entered January 19, 2012). The Bates Plaintiffs ask this Court to reconsider their counsel, the Golan Firm, as well as their *new co-counsel*, Francis & Mailman P.C., a firm focusing almost exclusively on consumer litigation and class actions, and the Center for Science in the Public Interest ("CSPI"), the leading non-profit group in the food labeling arena that has achieved unmatched success in food labeling class action suits.

The Bates Group ask this Court to order the Bates Group as lead counsel or, in the alternative, to allow them to join the Stember/Faruqi Group as co-lead counsel. As another option, the Bates Group invites the Court to order the Stember/Faruqi Group confer with the Bates Group so that they may jointly propose a revised pretrial order governing the interim lead class counsel's duties and roles.

The Bates Group's record of experience and success in similar food-related class actions, along with its relationship with the putative class, ensure it will represent the class in a way that is not only adequate, but also ideal. Its work thus far reflects the care and commitment they devoted, and will continue to devote, to this litigation. The Bates Group's factual investigation and continued inquiry remains unmatched. The *Bates* Complaint, though copied and imitated, remains the only suit that is backed by the factual investigation class members will require to succeed in their claims.

## I. Applicable Standard

As this Court held in its Order in appointing class counsel, a court must consider:

- the work counsel has done in identifying or investigating potential claims in the action;
- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- counsel's knowledge of the applicable law;
- the resources that counsel will commit to representing the class; and
- any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Order at 3; *quoting* FED. R. CIV. PROC. 23(g)(1)(A)-(B) (listing the first four factors as mandatory and the last as permissive). As this Court held, the first factor weighs in favor of the Bates Group because of their investigation and their continued work. With the addition of the Bates Plaintiffs' new co-counsel, the remaining three factors all weigh in favor of the Bates Group as well.

## II. The Experience, Knowledge, and Resources of the Bates Group

While the Bates Plaintiffs' additional co-counsel may seem new to the court, they are not new to the case. CSPI has been a key voice in the litigation almost from the very beginning – advising and working with Ms. Golan shortly after she filed the *Bates* suit. Ms. Golan, Francis & Mailman, and CSPI also work together as co-counsel in another misleading food labeling case, *Sandys v. Naked Juice Co. et al.*, C.D. Cal., 11-08007-JAK-PLAx, a nation-wide class action challenging the misleading labeling of "all natural" "100% juice" beverages.

### A. Center for Science in the Public Interest

The Center for Science in the Public Interest ("CSPI") has served as the

organized voice of the American public on nutrition, food safety, health and other issues since the early 1970s. CSPI has long sought to educate the public, advocate government policies that are consistent with scientific evidence on health and environmental issues, and counter industry's powerful influence on public opinion and public policies.

CSPI's Litigation Project[1] was created as a non-profit law firm in 2004, to provide experienced lawyers to represent plaintiffs in a variety of state and federal lawsuits. The Litigation Project has obtained binding settlements resulting in more honest labeling of artificial ingredients and halting deceptive marketing. Litigation, or the threat of litigation, has spurred many companies to change their marketing practices, including removing artificial trans fats from their foods and reducing the marketing of junk foods to kids.

Some of CSPI's notable class actions include:

- **Vitaminwater**. CSPI's Litigation Project serves as co-counsel in a class action lawsuit challenging the labeling of Vitaminwater.[2] Under the name Glaceau, Coca-Cola markets Vitaminwater as a healthful alternative to soda by labeling its several flavors with such health buzz words as "defense," "rescue," "energy," and "endurance." The company made a wide range of dramatic claims, including that its drinks reduce the risk of chronic disease, reduce the risk of eye disease, promote healthy joints, and support optimal immune function. In fact, the 33 grams of sugar in each bottle of Vitaminwater do more to promote obesity, diabetes, and other health problems than the vitamins in the drinks do to perform the advertised benefits listed on the bottles. Despite the names of the drinks, such as "endurance peach mango" and "focus kiwi strawberry," Vitaminwater contains between zero and one percent juice.

---

[1] Subsequent references to CSPI herein are limited to the non-profit law firm that is CSPI's Litigation Project, and do not refer to the many other methods of advocacy in which CSPI as an organization engages outside of litigation. See www.cspinet.org for additional background CSPI's advocacy efforts.

[2] *In re: Glaceau Vitaminwater Marketing and Sales Practices Litigation (No. II)* Case No. 1:11-md-00215-DLI-RML (E.D.N.Y. filed Feb. 25, 2011).

- **Aurora Dairy.** CSPI serves as co-counsel in a lawsuit[3] against Aurora Dairy, the second-largest organic milk company. Aurora produced non-organic dairy products that it sold as "organic." Consumers pay premium prices for organic products, but in this case—due to the illegal behavior of Aurora—they paid premium prices for non-organic products.

- **Airborne**. CSPI and private counsel successfully negotiated an approved class action settlement relating to the supplement Airborne, which was misleadingly advertised as preventing colds.[4] The settlement resulted in distribution of approximately $12 million in cash to class members and an additional approximately $7,000,000 in *cy pres* grants directed (in varying amounts) to organizations that submitted proposals for research and education projects related to colds and dietary supplements.

CSPI's threat of litigation has halted misleading ads and labels by Tropicana, Quaker Oats, Frito-Lay, and other major food companies, including Cadbury Schweppes' misleading labeling of 7-Up and Snapple as "natural," Sara Lee's misleading labeling of white bread as being "made with whole grain," Betty Crocker's "carrot" cake mix, and Aunt Jemima's "blueberry" waffles. In another case settled prior to litigation, CSPI's negotiations with the major soft drink companies culminated in an agreement in which Coca-Cola, PepsiCo, and Cadbury Schweppes agreed to phase-out sugary soft drinks from schools. In a landmark pre-suit settlement with CSPI and others, Kellogg Company agreed to adopt nutrition standards for the foods it advertises to young children, and agreed to stop sponsoring product placements in children's media and to stop advertising in preschools and elementary schools.

CSPI's Litigation Director Stephen Gardner brings a breadth and depth to food and nutrition lawsuits such as this one. When he started the Litigation Project,

---

[3] *In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation*, No. 4:08-md-01907-ERW (E.D. Mo. filed Mar. 19, 2008).
[4] *Wilson v. Airborne*, 2008 WL 3854963 (C.D. Cal., 2008).

there were almost no food and nutrition class actions. As the Litigation Project built upon success after success, private lawyers began to bring food and nutrition cases in significant number. Although some of the private cases were copycat lawsuits to CSPI's own efforts, the overall result has been an increase in honest marketing of foods, so that consumers can make better nutrition choices when they purchase products. *See* Declaration of Stephen Gardner. Mr. Gardner himself is one of the most-experienced and respected consumer lawyers in the country, as evidenced by the nature and scope of his writing and the variety of class actions in which he has been directly involved.

Mr. Gardner is also a highly experienced and nationally recognized class action authority. He is a member of the bars of New York, Texas, and the District of Columbia, as well as numerous federal courts (including the Ninth Circuit). Mr. Gardner has been a consumer lawyer for over 35 years, serving as an Assistant Dean of Southern Methodist University Law School, an Assistant Attorney General in Texas and New York, the Students' Attorney at the University of Texas at Austin, and a legal services attorney. Prior to joining CSPI in 2004, he was in private practice. Mr. Gardner has written and lectured extensively on a wide variety of consumer law and class action issues, including:

- NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) (contributing editor)

- CONSUMER CLASS ACTIONS (National Consumer Law Center, 5th ed.) (contributing author)

- THE PRACTICE OF CONSUMER LAW (National Consumer Law Center) (co-author)

- NAT'L ASS'N OF CONSUMER ADVOCATES, STANDARDS AND GUIDELINES FOR LITIGATING AND SETTLING CONSUMER CLASS ACTIONS, REVISED, 255 F.R.D. 215 (2009); original Guidelines, 176 F.R.D. 375 (1998) (principal author)

- *Litigation as a Tool in Food Advertising: A Consumer Advocacy Viewpoint,* LOYOLA LAW REVIEW, Vol. 39, No. 1 (2006)

- *Lost in the Supermarket: Consumer Confusion and Marketing Mania, in* NUTRITION LABELING HANDBOOK 373 (Shapiro ed., 1995).

Mr. Gardner has appeared on behalf of the class in several dozen class actions, and has testified as an expert witness in cases on food and drug law issues, as well as approximately 20 cases on class action certification issues.

### B. Francis & Mailman P.C.

Originally founded in 1998, Francis & Mailman P.C. concentrates its practice in consumer protection litigation, and specifically in class actions. Francis & Mailman possess extensive experience litigating complex class actions and other representative actions and in leading complex investigations in the areas of unlawful consumer credit reporting, employment background screening, fair debt collection, unfair and deceptive trade practices litigation, breach of warranty, and other consumer matters. The firm's attorneys have significant litigation experience both in federal and state trial courts. *See* Declarations of James A. Francis and David A. Searles. Indeed, the firm has been appointed as lead counsel in numerous class actions. *Id.* at ¶¶ 4, 4 and 6, respectively. Some of Mr. Francis' and Mr. Searles' notable class action trial successes include *Samuel-Bassett v. Kia Motors America, Inc.*, __ A.3d __, 2011 WL 6059098 (Pa. 2011) ($5.6 million verdict for class of Pennsylvania car purchasers, plus award of attorney's fees upheld by Pennsylvania Supreme Court); *Little v. Kia Motors America, Inc.*, 2003 WL 25568765 (N.J. Super. L. 2003) ($6 million (approximate) verdict for class of New Jersey car purchasers); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201 (E.D. Pa. 2011); *Roethlein v. Portnoff Law Associates, Ltd.*, 25 A.3d 1274 (Pa. Cmwlth Ct. 2011) (Pennsylvania class action tried to a trial verdict of $1,058,697 against a debt collection law firm on behalf of a class of homeowner

taxpayers, recently affirmed by the Commonwealth Court of Pennsylvania).

### C. Yvette Golan and Shirish Gupta

In addition, the Bates Group includes Ms. Golan of The Golan Firm. Through the work of Yvette Golan, the Golan Firm spearheaded the investigation of Kashi's labeling practices, its ingredients' nature and production, and defendants' knowledge of the mislabeled beverages. She has defended national class actions in science-based complex litigation, including in asbestos and automotive defects, providing a valuable perspective in the tactics and strategies of defense counsel. From 2005 to 2010, she also gained business experience in the consumer products industry, including the manufacturing, distribution, and pricing methodologies used by companies such as Defendants.

The Bates Group has also engaged local California counsel that is well-versed in California law. Since graduating from the University of Chicago Law School in 1999, Shirish Gupta has been practicing complex civil litigation, securities and shareholder litigation, intellectual property litigation, consumer class actions, employment class actions, and commercial litigation. Declaration of Shirish Gupta at ¶ 3. He has been counsel of record in numerous class actions involving California law, including *Bates v. Kashi Co. et al.* (mislabeled food products as "all natural,"), *Patel v. Apple Computer* (misleading iPhone signal meter readings), *Baker v. Adobe* (deceptive consumer practices), and other cases. He has been recognized as a SuperLawyers Rising Star in 2010 and 2011. In addition, he was awarded the Best Under 40 award by the National Asian Pacific American Bar Association. Decl. of S. Gupta at ¶¶ 3-7.

### D.     Selection of the Stember/Faruqi Groups' Team

Class actions are often lawyer-driven, and "[i]n high-stakes, high-profile class action litigation, entrepreneurial plaintiff attorneys often compete to play the lead role." Managing Class Action Litigation: A Pocket Guide for Judges at 7

(Federal Judicial Center) (2010). Increasingly, attorneys will file duplicative actions to announce that they want to be considered for inclusion as class counsel. *Id.* To avoid a fight over the appointment of lead class counsel, attorneys will sometimes agree to a back-room deal and include all the attorneys as lead counsel or as a part of the "Executive Committee."

Such is the proposal of the Stember/Faruqi Group. In comparison to the Bates Plaintiffs' careful selection of counsel that each bring something valuable and unique to the litigation, the Stember/Faruqi Group simply combines all the firms who filed a duplicative class action as part of the "Executive Committee."

The selection of co-lead counsel seems to "simply reflect bargaining among lawyers for their own stake in the case, and not serve the best interests of the class." 7 NEWBERG ON CLASS ACTIONS § 22:7 (4th ed.). *See also* Stephen J. Choi, *Motions for Lead Plaintiff in Securities Class Actions* at 36 (N.Y.U. Law & Econ. Research Paper No. 08-53, June 2009) (recommending courts be wary of aggregation that "may simply represent a bargain struck among plaintiffs' attorneys rather than the best representative for the class," conducting an empirical study of the increased attorneys fees common with such co-lead arrangements).

The Federal Judiciary Center also warns judges of such convenient arrangements. "To safeguard the interests of the class and to prevent unnecessary litigation and overstaffing, you may want to review those agreements (which will be subject to disclosure upon settlement in any event)." Managing Class Action Litigation: A Pocket Guide for Judges at 7-8 (Federal Judicial Center) (2010). *See also* Fed. R. Civ. P. 23(g)(1)(C)(iii) (allowing the court to "order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs.").

**III. The Work Counsel Has Done**

In its Order (Doc. 41), The Court concluded that the work counsel has done

weighed "slightly" in favor of the Bates Plaintiffs' counsel because they filed the first complaint and retained food science and damage experts. Order at 4:10-13. The Bates Group believes that the work done *strongly* favors their appointment as interim lead class counsel. This factor weighs heavily in the Bates Group's favor not simply because their case was the first-filed, but because their counsel ***completed the key investigative work***. It is not just that their counsel did it first, but that their counsel ***is the only one to have ever done so.***

As a general rule, courts confer lead status on the attorneys who did "real investigation into and work on the case." *Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689, 771-72 (2001). The Bates Plaintiffs' "filing of a well-prepared complaint after significant investigation is relevant 'work'." *Id.*

In comparison, the Stember/Faruqi Group filed complaints that are essentially copies of the *Bates* Complaint (*Diaz*) and skeletal complaints based on scant investigation (*Sethavanish*). As the Third Circuit has held, "such copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) (denying attorneys fees). And the "filing of a skeletal complaint is no 'work' at all." *Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689, 771-72 (2001).

### *A. The Faruqi Group's Copycat Complaint*

Almost every factual allegation in the Faruqi Group's *Diaz* Complaint is an edited copy of the Bates Complaint, changing a few words for style but replicating the substance. For example, in making their allegations to show Kellogg's responsibility for its subsidiary's labels, the *Diaz* Complaint rewords the *Bates* Complaint:

> ~~129~~. *76.* Kashi's product marketing and packaging *were and* are

~~under~~ *made pursuant to* Kellogg's direct orders, direction, control, and consent. Kellogg has paid for much of Kashi's marketing budget. Kellogg guides and controls Kashi's product packaging also through Kellogg's Worldwide Marketing and Communication Guidelines ("WWMCG"), which ~~is~~ *are* designed to ensure uniform standards *company-wide* and form~~s~~ the basis for all *of* Kellogg's and Kashi's *communications with* consumer*s* ~~communications~~.

~~130.~~ *77.* Kellogg ~~also~~ actively ~~and directly~~ developed, formulated, and selected the ingredients in ~~Kashi's Falsely Labeled~~ *the Unnatural* Products. After Kellogg acquired Kashi in 2000, Kellogg introduced new Kashi product lines using Kellogg's food ~~innovations~~ *technology*, including Heart to Heart® products in 2001, frozen entrees in 2007, and TLC®™ products in 2002, 2005, 2006, 2007, 2008, and 2009. Kellogg continues to introduce new Kashi products, such as TLC®™ Pita Crisps in 2011.

~~131~~. *78.* Kellogg controls and directs Kashi's other business decisions, including Kashi product recalls. ~~132.~~ Kellogg also audits Kashi's suppliers and tests Kashi's ingredients.

*Bates* Original Compl. at ¶¶ 129-132; *Diaz* Compl. at ¶¶ 76-78.

**Almost every factual allegation** is a similar "edit." *See* Exhibit 1 (listing the *Bates* factual allegations and the corresponding *Diaz* allegations). Even the typographical errors are identical. *See, e.g., Bates* Complaint ¶¶ 18, 19 (inconsistent capitalization in the "State of Michigan" but the "state of California"); *Diaz* Complaint ¶¶ 20, 21 (same).

Courts routinely hold that such "work" does not benefit the class. *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) (denying fees to one of the firms in the Stember/Faruqi Group's Executive Committee, because they "did nothing more than file a complaint that was substantially identical to dozens of other complaints filed in this litigation."); *In re Oclaro, Inc. Derivative Litig.*, C-11-3176 EMC, 2011 WL 4345099, at *2 (N.D. Cal. Sept. 14, 2011) (listing "whether one complaint is simply a 'copycat action' of another" as a factor in

selecting lead counsel); *In re Auction Houses Antitrust Litig.,* 00 CIV. 0648, 2001 WL 210697, at *3 (S.D.N.Y. Feb. 26, 2001) (refusing to apply a multiplier to interim lead counsel fees, reasoning that the complaint was based on a New York Times story, and thus was not a claim "ferreted out by industrious counsel who invested substantial time and effort against a chance of success. . . ." but ". . . was much more like finding a pot of gold in the middle of the sidewalk."); *Sexton ex rel. Jones Soda Co. v. Van Stolk*, C07-1782RSL, 2008 WL 1733242, at *1 (W.D. Wash. Apr. 10, 2008) (holding that an attorney's filing of a duplicative action "increased the costs of this litigation with no appreciable benefit to the company or the absent shareholders").

### B. The Stember Group's Skeletal Complaint

Until the *Bates* Complaint, which uncovered evidence challenging more than fifty ingredients, the Stember Group challenged only ***three*** ingredients. Decl. of Y. Golan, attaching Janet Spielberg's pre-litigation letter as Exhibit A. Ironically, instead of being proof of an independent investigation, this letter shows what the Stember Group *did not* investigate.

Until the *Bates* Complaint, the Stember Group did not examine Kashi's ingredient labels before mailing their private letter to Kashi. Of the three ingredients the letter challenges, one ingredient (citric acid) is not even used in Kashi's products. *See Bates* Original Compl. Ex. 6 (providing ingredient labels).

To this day, the Stember Group did not conduct adequate investigation as to the ingredients. One of the remaining two ingredients (alkalized cocoa) can be "natural," and both the Stember and Faruqi firms concede as much. *See Sethavanish II* Compl. at page 11 n.7; Diaz Compl. ¶ 47.

The Stember Group's Complaint continues to illustrate similar gaps in their investigation. For example, the Stember Group still has not studied Kashi product labels, and they challenge Kashi's Mountain Medley Granola, a product that is not

even labeled to be "all natural." *Sethavanish II* Compl. at 13:7; Kashi Mountain Medley Granola product label, attached as Exhibit 2, and *available at* http://asset0.kashi.com/images/products/kashi_granola_mountain_medley/large.jpg?2eb0bd0.

The Stember Group does not include product labels as exhibits to their complaint. The Stember Group does not attach ingredient labels as exhibits. Their "skeletal complaint is no 'work' at all." *Third Circuit Task Force Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689, 771-72 (2001).

### *C. The Bates Group's Investigation is Critical to the Effective Representation of the Class*

The Bates Group's investigation and findings are not simply worthy of rewards. Its work will be critical to the class's success on the merits. Food chemistry will be a central and recurring thread throughout the litigation. Only the Bates Group can shoulder this duty, and appointment of the Stember/Faruqi Group deprives the class of this investigation.

Though the Stember/Faruqi Group can rely on the *Bates* Complaint, and can cite the same reports or evidence cited in *Bates*, they cannot accurately interpret the Bates Group's work. For example, the *Bates* Complaint alleges that malic acid is synthetic, citing a report by the U.S. International Trade Commission. *Bates* Compl. at p. 11:11-15. Relying upon the *Bates* Complaint, the Faruqi Group alleges that malic acid is synthetic, citing this report's 400-page appendix as proving its synthetic nature. *Diaz* Compl. at ¶ 51, citing Appendix B, page 50. The Stember Group makes no allegation of malic acid.

Not having done the investigation themselves, the Faruqi Group misinterprets the report cited in the *Bates* Complaint. The appendix that the Faruqi Group relies upon lists not just synthetic substances, but non-synthetic substances as well. Moreover, the appendix simply lists "malic acid" – not specifying whether

it refers to DL-malic acid (synthetic) or L-malic acid (non-synthetic).  U.S. International Trade Commission, Synthetic Organic Chemical Index, USTIC Pub. 2933 (Nov. 1995), selections attached hereto as Exhibit 3.

In comparison, the Bates Group does not rely upon the report's appendix, but on page 3-102 of the report, which lists malic acid as a synthetic organic chemical, produced by Haarmann Reimer Corp., Food Ingredients Division.  Ex. 3. Today, food-grade malic acid is also produced by other suppliers, such as Wintersun Chemical and Maypro Industries, Inc.  The Bates Group also has direct evidence that Kashi knew that malic acid is not "natural" under their own definition because of the method of production. *See also Bates* Compl. at p. 11:11-15 (alleging that malic acid is not "natural" because of its environmentally damaging production process).

Without the Bates Group's work, the class would likely have no evidence other than an ambiguous reference in a 400-page appendix to a report.  The class would not have the evidence that Defendants knew that malic acid is not "natural" and would not have evidence of the environmentally damaging methods used to produce malic acid.  The class would lack the evidence showing this court why a reasonable consumer would consider Kashi's inclusion of the malic acid ingredients to be materially misleading.

Other errors in the Stember/Faruqi Group's complaints demonstrate the importance of a strong food chemistry investigation.  For example, in their challenge of ascorbic acid, the Faruqi Group incorrectly alleges that ascorbic acid is not the same as vitamin C, citing a dubious blog. *Diaz* Compl. at ¶ 49.  The Stember Group similarly and inaccurately alleges that "[w]hole food Vitamin C contains no ascorbic acid." *Sethavanish II* Compl. at ¶ 15.

These allegations are simply false.  Vitamin C is the same as ascorbic acid,

1 and ascorbic acid exists in fruits.[5] They are also the same molecular compound.[6]
2 Because the Stember/Faruqi Group challenges so few ingredients, their error would
3 leave three products unchallenged.[7]

4       The Bates Group's work and investigation are essential to the class's success
5 on the substantive claims. In similar situations, courts have considered the work
6 done as the ***deciding*** factor in selecting lead counsel. The Bates Group should – at
7 the very least – not be ousted from representing the class. *See* MOORE'S FEDERAL
8 PRACTICE § 23.120 [3][a] ("When an attorney has performed these or other
9 investigative and analytical tasks before making the application for appointment,
10 he or she is in a better position to represent the class fairly and adequately than
11 attorneys who have not undertaken those tasks."); *Kaminske v. JP Morgan Chase*
12 *Bank N.A.*, Nos. SACV 09-00918 JVS (RNBx), CV 09-6352-JVS (RNBx), 2011
13 WL 521338, at *1 (C.D. Cal. Jan. 3, 2011) (appointing counsel for the first-filed
14 plaintiffs over the objection of the later-filed plaintiffs after concluding that the
15 firm representing the first-filed plaintiffs were in the best position to represent the
16 class "in light of the extensive amount of research and discovery [it] has
17 conducted, the lack of discovery conducted by [the competing firm], and the
18 sufficiency of [its] manner of conducting the [class action] thus far"); *Walker v.*
19 *Discover Financial Services*, 2011 WL 2160889 (N.D. Ill. 2011) (same); *Carlin v.*
20 *DairyAmerica, Inc.*, No. 109CV0430 AWI-DLB, 2009 WL 1518058, at *2 (E.D.

---

[5] *See* Dietary Supplement Fact Sheet: Vitamin C, Office of Dietary Supplements, National Institutes of Health, at http://ods.od.nih.gov/factsheets/VitaminC/

[6] National Center for Biotechnology Information, U.S. National Library of Medicine.

[7] For example, the Stember Group challenges three products *only* because it contains ascorbic acid. *See Sethavanish II* Compl. Ex. A (GoLean Shakes: Vanilla, Kashi Frozen Entrees: Black Bean Mango, and Kashi Frozen Entrees: Sweet and Sour Chicken).

Cal. May 29, 2009) (same).

## CONCLUSION

For the reasons set forth above, Plaintiffs Michael Bates and Vanessa Gibson request the Court reconsider its Order and appoint their counsel, Francis & Mailman P.C., the Center for Science in the Public Interest, and The Golan Firm (collectively, the "Bates Group"), as Interim Lead Class Counsel in the pre-certification phase of these proceedings.

Dated: February 15, 2012                THE GOLAN FIRM

                                        By: /s/ Yvette Golan
                                            Yvette Golan

                                        FRANCIS & MAILMAN P.C.
                                        James A. Francis
                                        David A. Searles

                                        CENTER FOR SCIENCE IN THE
                                        PUBLIC INTEREST
                                        Stephen Gardner

                                        *Attorneys for Plaintiffs Michael Bates,*
                                        *Vanessa Gibson, and Proposed Interim*
                                        *Lead Class Counsel*