**FARUQI & FARUQI, LLP**
Vahn Alexander (167373)
Christopher B. Hayes (277000)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Phone: (424) 256-2884
Fax: (424) 256-2885
Email:  valexander@faruqilaw.com
            chayes@faruqilaw.com

**STEMBER FEINSTEIN DOYLE
    PAYNE & KRAVEC, LLC**
Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
Maureen Davidson-Welling (admitted *pro hac vice*)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
            wlison@stemberfeinstein.com
            mdavidsonwelling@stemberfeinstein.com

*Interim Co-Lead Class Counsel*
(Additional Counsel on Signature Page)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SKYE ASTIANA, MILAN BABIC, TIMOTHY BOLICK, JOE CHATHAM, JAMES COLUCCI, TAMARA DIAZ, MARTHA ESPINOLA, TAMAR LARSEN, MARY LITTLEHALE, and KIMBERLY S. SETHAVANISH, on behalf of themselves and all others similarly situated,** | **CASE NO.:**  11-cv-1967-H (BGS) |
| | **CLASS ACTION** |
| | **CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF** |
| **Plaintiffs,** | **DEMAND FOR JURY TRIAL** |
| **v.** | |
| **KASHI COMPANY, a California Corporation; KASHI SALES, LLC, a Delaware company; KELLOGG COMPANY, a Delaware corporation,** | |
| **Defendants.** | |

Plaintiffs,[1] by their attorneys, bring this class action against Defendants Kashi Company ("Kashi"), Kellogg Company ("Kellogg"), and Kashi Sales, LLC ("Kashi Sales") (collectively, "Defendants") on their own behalf and on behalf of all others similarly situated, and allege as follows based upon information and belief and the investigation of their counsel:

## INTRODUCTION

1.      This is a class action on behalf of nationwide Classes of persons, as more fully defined herein, who purchased Kashi food products containing synthetic and/or artificial ingredients, including but not limited to one or more of the following ingredients: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Potassium Carbonate (a/k/a Cocoa processed with Alkali), Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum. Since at least 2007, Defendants have packaged, marketed, distributed and sold Kashi food products as being "All Natural" or "Nothing Artificial," despite the fact the Kashi food products contain between one (1) and seven (7) of the aforementioned ingredients, as specified in Paragraphs 71-72 herein, some of which are artificial, all of which are synthetic chemicals, and all but one of which are recognized as synthetic chemicals by federal regulations.[2]

2.      Moreover, since at least 2007, Defendants prominently claimed that the Kashi Products were "All Natural" or contained "Nothing Artificial," cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though the food products were actually ***not*** "All Natural" or "Nothing Artificial" as they were labeled.

3.      While certain "All Natural" Kashi Products' labels did disclose that they contained Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Soy Ingredients, Potassium

---

[1] This Consolidated Amended Complaint (the "Complaint") amends and supersedes the previously filed complaints in: *Babic v. Kashi Company*, 3:11-cv-02816-H (BGS); *Espinola v. Kashi Company*, 3:11-cv-02629-H (BGS); *Diaz v. Kashi Co., et al.*, 11-cv-2256-H (BGS); *Chatham v. Kashi Co., et al.*, 11-cv-2285-H (BGS); *Sethavanish, et al. v. Kashi Company*, 11-cv-02356-H (BGS); and *Baisinger v. Kashi Company,* 11-cv-02367-H (BGS).

[2]    As used throughout this Complaint, Kashi's food products (collectively, the "Kashi Products") include and refer to the products identified in Paragraphs 71 and 72 of this Complaint and in Exhibits 1 and 2 attached hereto.

Bicarbonate, Potassium Carbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and/or Xanthan Gum, these Kashi Products' labels did not disclose that these ingredients were synthetic or artificial.  In addition, none of the Kashi Products labeled "All Natural" disclosed on the packaging that the soy ingredients contained within were hexane-processed, and many of the Kashi Products labeled "All Natural" simply identified "Cocoa processed with Alkali" on the packaging without disclosing that the alkali was potassium carbonate. In light of these Kashi Products' labels' "All Natural" representation, a reasonably prudent consumer would certainly not normally expect these food products to include synthetic or artificial ingredients. Indeed, as a result of such false and misleading labeling, Kashi was able to sell these purportedly "All Natural" products to thousands of unsuspecting consumers in California and throughout the United States while profiting handsomely from these transactions.

4.     Likewise, while certain "Nothing Artificial" Kashi Products' labels did disclose that they contained Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Soy ingredients, these Kashi Products' labels did not disclose that these ingredients were artificial.  In addition, none of the Kashi Products labeled "Nothing Artificial" disclosed on the packaging that the soy products contained within were processed with hexane, which is artificial.  In light of these Kashi Products' labels' "Nothing Artificial" representation, a reasonably prudent consumer would certainly not normally expect these food products to include artificial ingredients.  Indeed, as a result of this false and misleading labeling, Kashi was able to sell these purportedly "Nothing Artificial" products to thousands of unsuspecting consumers in California and throughout the United States while profiting handsomely from these transactions.

5.     Plaintiffs allege that Defendants' conduct violates the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. (the "MMWA"), constitutes a breach of express warranty under state law, violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code §§ 17200, *et seq.* (the "UCL"), California's Business and Professions Code §§ 17500, *et seq.* (the "FAL"), the Consumers Legal Remedies Act of the California Civil Code §§ 1750, *et seq.* (the "CLRA"), and gives rise to common law fraud.  Plaintiffs also allege in the alternative that Defendants' conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

6. Defendant Kashi is incorporated in California, has its principal place of business in La Jolla, California and operates, manages and directs its nationwide sales and business operations from its offices in California. Kashi has manufacturing, storage and distribution facilities in California, from which Kashi operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations. Defendant Kashi Sales also maintains its principal place of business in La Jolla, California, and directs the distribution of the Kashi Products from its offices in California. It is therefore believed and averred that the misleading labeling and related misconduct at issue in this Complaint occurred, were conducted and/or were directed primarily from, or at least a substantial proportion emanated from, California, including, but not limited to: a) the design of the Kashi Products' packaging; b) the review, approval and revision of food products and labeling; c) the selection and integration of ingredients into the Kashi Products; d) the distribution of the Kashi Products nationwide; and e) the management and supervision of sales operations to Plaintiffs and the Classes (as defined herein).

7. Plaintiffs also seek injunctive and declaratory relief based upon Defendants' conduct asserted in this Complaint. As of the date of this Complaint, retail stores in California and throughout the United States are selling Kashi Products labeled as "All Natural," even though they contain synthetic and artificial ingredients, and are selling Kashi Products Labeled as "Nothing Artificial," even though they contain artificial ingredients. Moreover, even if Defendants elect to remove the "All Natural" and "Nothing Artificial" representations from the Kashi Products' labels, Defendants are not presently enjoined from putting the "All Natural" or "Nothing Artificial" representations back on the Kashi Products' labels at any time Defendants so decide, even if the Kashi Products contain unnatural synthetic and/or artificial ingredients. Accordingly, Plaintiffs seek declaratory and injunctive relief to ensure that Defendants remove any and all of the "All Natural" representations from labels on the Kashi Products available for purchase, and to prevent Defendants from making the "All Natural" representations on the Kashi Products' labels in the future as long as these food products continue to contain synthetic or artificial ingredients. Likewise, Plaintiffs seek declaratory and injunctive relief to ensure that Defendants remove any and all of the "Nothing Artificial" representations from labels on the Kashi Products available for purchase that are so

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

labeled, and to prevent Defendants from making the "Nothing Artificial" representations on these Kashi Products' labels in the future as long as these food products continue to contain artificial ingredients.

**PARTIES**

8.     Plaintiff Skye Astiana is currently a resident of Mill Valley, California.  Ms. Astiana was previously a resident of Klamath Falls, Oregon, from approximately the end of September 2007 until September 2011.  Prior to moving to Klamath Falls, Ms. Astiana was domiciled in California, residing in Mill Valley, California for all of August and most of September 2007 and prior thereto. Ms. Astiana is and for the past two decades has been, very concerned about and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients. For this reason, Ms. Astiana is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural.  While Ms. Astiana was a California resident up until 2007, including the period from August 24, 2007 until her move to Oregon at the end of September 2007, she purchased on average a package of six Kashi's GoLean® Peanut Butter & Chocolate Protein & Fiber Bars approximately twice per month at the Safeway on Market Street in San Francisco, the Whole Foods grocery store on Miller Avenue in Mill Valley, California, the Rite Aid store on Blithedale Avenue in Mill Valley, California, and/or the Trader Joe's in San Rafael, California.  She also purchased at those same stores Kashi's TLC Baked Apple Spice Soft-Baked Cereal Bars 1 to 2 times a year, Kashi's TLC Roasted Almond Crunch Crunchy Granola Bars 1 to 2 times a year, Kashi 7 Grain waffles 1 to 2 times a year, and Kashi TLC Original 7 Grain Snack Crackers 1 to 2 times a year while residing in California prior to moving to Oregon. From the end of September 2007 until September 2011, while Ms. Astiana was an Oregon resident, she purchased on average: a) one Kashi's GoLean® Peanut Butter & Chocolate Protein & Fiber Bar per month in 2007, 2008, 2009 and 2010 at Whole Foods and Trader Joe's grocery stores in Bend, Oregon and Sherms Thunderbird Market and Safeway in Klamath Falls, Oregon, near her residence; b) one box of Kashi's TLC Original 7 Grain Snack Crackers per month in 2007, 2008, 2009 and 2010 at Whole Foods and Trader Joe's grocery stores in Bend Oregon and Sherms Thunderbird Market and Safeway in Klamath Falls, Oregon, near her residence; c) 12 to 15 times a year in 2007

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

and 2008, and 1 time a year in 2009 and 2010 Kashi's TLC Baked Apple Spice Soft-Baked Cereal Bars and Kashi's TLC Roasted Almond Crunch Crunchy Granola Bars, at Sherms Thunderbird and Safeway stores near her residence in Klamath Falls, Oregon; and d) Kashi's 7 Grain Waffles 2-3 times per year in 2007, 2008, 2009, 2010 at Sherms Thunderbird and Safeway stores near her residence in Klamath Falls, Oregon.   Ms. Astiana has not purchased any Kashi products since learning of the mislabeling at issue herein in early 2011.  Based on the "All Natural" representation on Kashi's labels, Ms. Astiana believed that the Kashi products she purchased were all natural and relied on this representation in making her purchases.  However, the food products that Ms. Astiana purchased contained synthetic and/or artificial ingredients.   While touting the products as "All Natural," the labels Ms. Astiana relied on did not disclose that synthetic and/or artificial ingredients were used in the products.  Ms. Astiana not only purchased Kashi's products because the label said they were "All Natural," but she paid more money for the products than she would have had to pay for other products that were not all natural in that they contained synthetic or artificial ingredients. Had Ms. Astiana known the truth that Kashi's products were not all natural, she would not have purchased Kashi products, but would have purchased another brand of food products that was truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than the Kashi products.  Ms. Astiana did not receive the "All Natural" food products bargained for when she purchased the "All Natural" Kashi food products, and has lost money as a result in the form of paying a premium for Kashi's products because they were purportedly all natural rather than paying the lesser amount for non-natural alternatives.

9.     Plaintiff Milan Babic resides in Los Angeles, California.  He has been a resident of California since October 23, 1965.  From approximately mid-2009 to the early fall of 2011 prior to learning of the mislabeling at issue herein, he purchased Kashi food products.  During this period, Mr. Babic purchased Kashi's TLC Baked Apple Spice Soft-Baked Cereal Bars at least 20 times from the Ralphs located at 645 West 9th Street Los Angeles, California 90015.  The cereal bars were labeled as "All Natural."   Plaintiff Babic read and relied on the statement on the cereal bar's packaging that the product was "All Natural" and reasonably believed the cereal bars were "All Natural."   Mr. Babic would not have purchased the cereal bars if the products were not labeled "All

1   Natural."  Based on the "All Natural" representation on Kashi's labels, Mr. Babic believed that the

2   Kashi products he purchased were all natural and relied on this representation in making his

3   purchases.  However, the Kashi food products that Mr. Babic purchased contained synthetic and/or

4   artificial ingredients.  While touting the products as "All Natural," the labels Mr. Babic relied on did

5   not disclose that synthetic and/or artificial ingredients were used in the products.  Mr. Babic not only

6   purchased Kashi's products because the labels said they were "All Natural," but he paid more money

7   for the products than he would have had to pay for other products that were not all natural in that

8   they contained synthetic or artificial ingredients.  Had Mr. Babic known the truth that the Kashi

9   products he purchased were not all natural, he would not have purchased the Kashi products, but

10  would have purchased another brand of food products that was truly all natural or, if one was not

11  available, would have purchased other non-natural products that were less expensive than the Kashi

12  products.  Mr. Babic did not receive the "All Natural" food products bargained for when he

13  purchased the "All Natural" Kashi products, and has lost money as a result in the form of paying a

14  premium for the Kashi products because they were purportedly all natural rather than paying the

15  lesser amount for non-natural alternatives.

16          10.    Plaintiff Timothy Bolick is currently a resident of Oakland, California.  He has been

17  domiciled in California and a resident of either San Francisco or Oakland, California since at least

18  2007.   Mr. Bolick bought Kashi's Chicken Pasta Pomodoro Entrée and Kashi's Pesto Pasta

19  Primavera Entrée about 10 times each in 2009, and purchased Kashi's 7 Grain Waffles and Kashi's

20  Blueberry Waffles several times in 2009.  Mr. Bolick also purchased Kashi's GoLean® Crunch

21  Cereal once or twice during 2011.  All of these purchases were made at the Whole Foods, Safeway

22  or Target in San Francisco.  Based on the "All Natural" representation on Kashi's labels, Mr. Bolick

23  believed that the Kashi food products were all natural, which fit with his desire to try to eat healthier

24  foods, and he relied on this representation in purchasing Kashi's entrees, waffles and cereal specified

25  herein.  However, the Kashi food products that Mr. Bolick purchased contained synthetic or artificial

26  ingredients.  While the labels touted the Kashi products as "All Natural," the labels Mr. Bolick relied

27  on did not disclose that synthetic or artificial ingredients were used in the products.  Mr. Bolick not

28  only purchased the Kashi products because the labels said they were "All Natural," but he paid more

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

money to purchase these Kashi products than he would have had to pay for other food products that were not all natural in that they contained synthetic or artificial ingredients.  Had Mr. Bolick known the truth that the Kashi products were not all natural, he would not have purchased the Kashi products, but would have instead purchased another brand of products that was truly all natural or, if one was not available, he would have purchased other non-natural products that were less expensive than the Kashi products.  Mr. Bolick did not receive the "All Natural" products he bargained for when he purchased the Kashi products, and has lost money as a result in the form of paying a premium for Kashi's food products because they were purportedly all natural rather than paying the lesser amount for non-natural alternatives.

11.     Plaintiff Joe Chatham is currently a resident of Wellesley, Massachusetts and has been a resident of Wellesley, Massachusetts since July 2009.  Between 2008 and 2011 prior to learning of the mislabeling at issue herein, Mr. Chatham purchased Kashi's GOLEAN® Chewy Oatmeal Raisin Cookie Protein & Fiber Bars at least 3 times a year, Kashi GOLEAN® Chewy Cookies 'N Cream Protein & Fiber Bars at least 3 times a year, and GOLEAN® Hearty Instant Hot Cereal with Clusters Honey & Cinnamon at least 6 times a year.  These purchases were made at the Roche Brothers in Wellesley, Massachusetts.  Based on the "All Natural" representation on the Kashi products' labels, Mr. Chatham believed that the Kashi Products were all natural, which fit with his desire to try to eat healthier foods, and he relied on this representation in purchasing Kashi's products.  However, the Kashi food products that Mr. Chatham purchased contained synthetic or artificial ingredients.  While the labels touted the Kashi products as "All Natural," the labels Mr. Chatham relied on did not disclose that synthetic or artificial ingredients were used in the products. Mr. Chatham not only purchased the Kashi products because the labels said they were "All Natural," but he paid more money to purchase the Kashi products than he would have had to pay for other food products that were not all natural in that they contained synthetic or artificial ingredients.  Had Mr. Chatham known the truth that the Kashi products were not all natural, he would not have purchased the Kashi products, but would have instead purchased another brand of products that was truly all natural or, if one was not available, he would have purchased other non-natural products that were less expensive than the Kashi products.  Mr. Chatham did not receive the "All Natural"

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1   products he bargained for when he purchased the Kashi products, and has lost money as a result in

2   the form of paying a premium for Kashi's food products because they were purportedly all natural

3   rather than paying the lesser amount for non-natural alternatives.

4          12.    Plaintiff James Colucci has been a resident of Windsor, California in Sonoma County

5   since November 2010.  From at least September 7, 2007 through October 2010, Mr. Colucci actively

6   served in the United States Marine Corps and was stationed in Camp Pendleton in San Diego

7   County, California.  From approximately September 2009 through April 2010, Mr. Colucci was

8   deployed abroad as part of his service with the Marine Corps.  During that time, Mr. Colucci asked

9   Plaintiff Sethavanish to purchase Kashi's GoLean® Peanut Butter & Chocolate Protein & Fiber Bars

10  and GoLean® Chewy Cookies 'N Cream Protein & Fiber Bars, to include in the packages that she

11  sent him once or twice per month.  Based on the "All Natural" representation on the Kashi products'

12  labels, Mr. Colucci believed that the Kashi products were all natural, which fit with his desire to try

13  to eat healthier foods, and he relied on this representation in asking Ms. Sethavanish to purchase the

14  products on his behalf.  However, the Kashi food products that Ms. Sethavanish purchased on Mr.

15  Colucci's behalf contained synthetic or artificial ingredients.  While the labels touted the Kashi

16  products as "All Natural," the labels Mr. Colucci relied on did not disclose that synthetic ingredients

17  were used in the products.  Mr. Colucci not only asked Ms. Sethavanish to purchase the Kashi

18  products because the labels said they were "All Natural," but Ms. Sethavanish paid more money to

19  purchase the products on Mr. Colucci's behalf than she would have had to pay for other snack bar

20  products that were not all natural in that they contained synthetic or artificial ingredients.  Had Mr.

21  Colucci known the truth that the Kashi products were not all natural, he would not have asked Ms.

22  Sethavanish to purchase the Kashi products, but would have asked her to purchase another brand of

23  products that was truly all natural or, if one was not available, to purchase other non-natural products

24  that were less expensive than the Kashi products.  Mr. Colucci did not receive the "All Natural"

25  products he bargained for when Ms. Sethavanish purchased Kashi's food products on his behalf, and

26  has lost money as a result in the form of paying a premium for the Kashi products because they were

27  purportedly all natural rather than paying the lesser amount for non-natural alternatives.

28

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

13.     Plaintiff Tamara Diaz is a resident of San Diego County, California, and has been a resident of San Diego County, California since 1967.  Ms. Diaz seeks out healthy food products and often purchases organic and natural products as part of her interest in living a healthy lifestyle.  Ms. Diaz purchased certain Kashi Products regularly between 2006 and 2011 prior to learning of the mislabeling at issue herein. For example, in 2011, Ms. Diaz traveled to a Costco Warehouse store in San Diego County, California, and purchased Kashi TLC Honey Almond Flax Chewy Granola Bars, Kashi's TLC Trail Mix Chewy Granola Bars, and Kashi's TLC Peanut Peanut Butter Chewy Granola Bars.  Ms. Diaz purchased these products at least once, in May 2011.  Ms. Diaz also purchased Kashi GoLean® Creamy Instant Hot Cereal-Truly Vanilla at least once, in August 2011, from a Wal-Mart store in San Diego County, California.  Ms. Diaz also regularly purchased Kashi Lemongrass Coconut Chicken Entrée about twice a month from August 2010 through May 2011. She purchased this product at a Target store in San Diego County, California.  Ms. Diaz is a schoolteacher, so she would often eat the Kashi frozen entrees for lunch during the school year.  Ms. Diaz purchased these Kashi products because they purported to be "All Natural."  Based on the "All Natural" representation on the Kashi products' labels, Ms. Diaz believed that the Kashi products were all natural, and she relied on this representation in purchasing certain Kashi products. However, the Kashi products that Ms. Diaz purchased contained synthetic and/or artificial ingredients.  While the labels touted the Kashi products as "All Natural," the labels Ms. Diaz relied on did not disclose that synthetic or artificial ingredients were used in the products.  Ms. Diaz not only purchased Kashi's products because the labels said they were "All Natural," but she paid more money to purchase the Kashi products than she would have had to pay for other food products that were not all natural in that they contained synthetic or artificial ingredients.  Had Ms. Diaz known the truth that the Kashi products were not all natural, she would not have purchased the Kashi products, but would have instead purchased another brand of products that was truly all natural or, if one was not available, she would have purchased other non-natural products that were less expensive than the Kashi products.  Ms. Diaz did not receive the "All Natural" products she bargained for when she purchased the Kashi products, and has lost money as a result in the form of paying a

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1   premium for the Kashi products because they were purportedly all natural rather than paying the
2   lesser amount for non-natural alternatives.

3       14.   Plaintiff Martha Espinola is and was at all relevant times a resident of San
4   Bernardino, California.  Ms. Espinola is and since at least 2007 has been, very concerned about and
5   tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial
6   chemical ingredients.  For this reason, Ms. Espinola is willing to and has paid a premium for foods
7   that are all natural and non-artificial and has refrained from buying their counterparts that were not
8   all natural or contain artificial ingredients.  In September or October of 2011 prior to learning of
9   Defendants' mislabeling at issue herein, Ms. Espinola purchased Kashi's Golden Goodness Cereal
10  and Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon from the WinCo market in Victorville,
11  California.  Based on the "All Natural" representation on the Kashi Golden Goodness Cereal's label,
12  Ms. Espinola believed that the Kashi food product she purchased was all natural and relied on this
13  representation in making her purchase.  Likewise, based on the "Nothing Artificial" representation
14  on the label of Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon, Ms. Espinola believed that
15  the Kashi Product she purchased contained nothing artificial and relied on this representation in
16  purchasing the Kashi Product.  However, the "All Natural" Kashi food product Ms. Espinola
17  purchased contained synthetic and artificial ingredients, and the "Nothing Artificial" Kashi food
18  product Ms. Espinola purchased contained artificial ingredients.  While Defendants' label touted the
19  Kashi's Golden Goodness Cereal as "All Natural," the label that Ms. Espinola relied on did not
20  disclose that synthetic or artificial ingredients were used in the product.  Similarly, while Defendants
21  touted the Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon as containing "Nothing
22  Artificial," the label that Ms. Espinola relied on did not disclose that artificial ingredients were used
23  in the product.  Ms. Espinola not only purchased the purportedly "All Natural" and "Nothing
24  Artificial" Kashi products because of these representations on their labels, but she paid more money
25  for the "All Natural" and "Nothing Artificial" Kashi food products she purchased than she would
26  have had to pay for other similar products that were not all natural or contained artificial ingredients.
27  Had Ms. Espinola known the truth that Kashi's Golden Goodness Cereal was not "All Natural" and
28  that Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon had artificial ingredients, she would

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1  not have purchased these Kashi products, but would have instead purchased another brand of

2  product that was truly all natural and without artificial ingredients or, if ones were not available, she

3  would have purchased another non-natural or artificial product that was less expensive than the

4  Kashi products.  Ms. Espinola did not receive the "All Natural" product she bargained for when she

5  purchased Kashi's Golden Goodness Cereal, and has lost money as a result in the form of paying a

6  premium for this Kashi product because it was purportedly all natural rather than paying the lesser

7  amount for a non-natural alternative.  Ms. Espinola did not receive the "Nothing Artificial" product

8  she bargained for when she purchased Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon and

9  has lost money as a result in the form of paying a premium for this Kashi product because it

10  purportedly contained "Nothing Artificial" rather than paying the lesser amount for an artificial

11  alternative.

12         15.    Plaintiff Tamar Davis Larsen is currently a resident of Berkeley, California.  From at

13  least 2004 to the present, Ms. Larsen was domiciled in California, residing first in Oakland and then

14  in Berkeley, California.  Ms. Larsen is, and since at least 2007 has been, very concerned about and

15  tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial

16  chemical ingredients.  For this reason, Ms. Larsen is willing to and has paid a premium for foods that

17  are all natural and non-artificial and has refrained from buying their counterparts that were not all

18  natural.  From 2008 to 2011 prior to learning of the mislabeling at issue herein, Ms. Larsen

19  purchased Kashi's TLC Oatmeal Dark Chocolate Chewy Cookies 3 to 4 times a year, Kashi's TLC

20  Oatmeal Raisin Flax Chewy Cookies 3 to 4 times a year, Kashi's TLC Original 7 Grain Snack

21  Crackers at least 3 times a year, Kashi's TLC Fire Roasted Veggie Party Crackers at least 3 times a

22  year, Kashi's GoLean® Crunchy! Chocolate Pretzel Protein & Fiber Bars at least 2 times a year, and

23  Kashi's TLC Dark Chocolate Coconut Layered Granola Bars at least 3 times a year, each from the

24  Berkeley Bowl and sometimes Whole Foods grocery stores near her home in Berkeley, California.

25  Based on the "All Natural" representation on these Kashi products' labels, Ms. Larsen believed that

26  these Kashi food products she purchased were all natural and contained nothing artificial or synthetic

27  and relied on these representations in making her purchases.  However, these "All Natural" Kashi

28  products Ms. Larsen purchased contained synthetic and/or artificial ingredients.  While Defendants'

11

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

labels touted these Kashi products as "All Natural," the labels that Ms. Larsen relied on did not disclose that synthetic and/or artificial ingredients were used in the products.  Ms. Larsen not only purchased the purportedly "All Natural" Kashi products because the labels said these products were "All Natural," but she paid more money for these "All Natural" Kashi food products she purchased than she would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients.  Had Ms. Larsen known the truth that these Kashi products were not all natural, she would not have purchased these Kashi products, but would have instead purchased another brand of products that was truly all natural or, if one was not available, she would have purchased other non-natural products that were less expensive than the Kashi products.  Ms. Larsen did not receive the "All Natural" products she bargained for when she purchased these Kashi products, and has lost money as a result in the form of paying a premium for these Kashi products because they were purportedly all natural rather than paying the lesser amount for non-natural alternatives.

16.     Additionally, from 2008 to 2011 prior to learning of the mislabeling at issue herein, Ms. Larsen purchased Kashi's Heart to Heart Honey Toasted Oat Cereal and Kashi's Heart to Heart Oat Flakes & Blueberry Clusters Cereal at least 4 times a year, each from the Berkeley Bowl and sometimes Whole Foods grocery stores near her home in Berkeley, California.  Based on the "Nothing Artificial" representation on these Kashi products' labels, Ms. Larsen believed that these Kashi food products she purchased contained nothing artificial and relied on these representations in making her purchases.  However, the "Nothing Artificial" Kashi food products Ms. Larsen purchased contained artificial ingredients.  While Defendants' labels touted these Kashi products as containing "Nothing Artificial," the labels that Ms. Larsen relied on did not disclose that artificial ingredients were used in the products.  Ms. Larsen not only purchased the purportedly "Nothing Artificial" Kashi products because the labels said these products contained "Nothing Artificial," but she paid more money for the "Nothing Artificial" Kashi food products she purchased than she would have had to pay for other similar products that contained artificial ingredients.  Had Ms. Larsen known the truth that the Kashi products contained artificial ingredients, she would not have purchased the Kashi products, but would have instead purchased another brand of products that did

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1   not contain artificial ingredients or, if one was not available, she would have purchased other

2   artificial products that were less expensive than the Kashi products.  Ms. Larsen did not receive the

3   "Nothing Artificial" products she bargained for when she purchased these Kashi products, and has

4   lost money as a result in the form of paying a premium for these Kashi products because they

5   purportedly contained "Nothing Artificial" rather than paying the lesser amount artificial

6   alternatives.

7        17.   Plaintiff Mary Littlehale is currently a resident of Cranberry Township, Pennsylvania.

8   Ms. Littlehale is and, since at least 2007, has been very concerned about eating natural foods, and

9   tries to avoid buying foods for herself or her family that contain synthetic or artificial ingredients.

10   For this reason, Ms. Littlehale is willing to and has paid a premium for foods that are all natural and

11   non-artificial, and has refrained from purchasing foods that were not all natural or which contained

12   artificial ingredients.  Between 2008 and 2011 prior to learning of the mislabeling at issue, Ms.

13   Littlehale regularly purchased Kashi products from the Target and Giant Eagle stores near her home

14   in Cranberry Township, Pennsylvania.  In 2008, Ms. Littlehale purchased on two occasions Kashi's

15   Lemongrass Coconut Chicken Entrées.  Once a week in 2008 and 2009, Ms. Littlehale purchased

16   either Kashi's TLC Ripe Strawberry Soft-Baked Cereal Bars or Kashi's TLC Baked Apple Spice

17   Soft-Baked Snack Bars, collectively purchasing over 100 boxes.  From 2008 to 2011 prior to

18   learning of the mislabeling at issue, Ms. Littlehale purchased more than 10 boxes of each of the

19   following Kashi products:  TLC Dark Mocha Almond Chewy Granola Bars, TLC Honey Almond

20   Flax Chewy Granola Bars, and TLC Trail Mix Chewy Granola Bars.  From 2008 to 2011 prior to

21   learning of the mislabeling at issue, Ms. Littlehale purchased approximately 10 boxes of each of the

22   following Kashi products:  TLC Cherry Dark Chocolate Chewy Granola Bars, TLC Pumpkin Spice

23   Flax Crunchy Granola Bars, TLC Roasted Almond Crunch Crunchy Granola Bars, TLC Dark

24   Chocolate Coconut Layered Granola Bars and Blueberry Waffles.  From 2008 to 2011 prior to

25   learning of the mislabeling at issue, Ms. Littlehale purchased less than 10 of each of the following

26   Kashi products:  TLC Oatmeal Dark Chocolate Chewy Cookies, TLC Oatmeal Raisin Flax Chewy

27   Cookies, TLC Country Cheddar Cheese Crackers, TLC Original 7 Grain Snack Crackers, Margherita

28   Stone-Fired Thin Crust Pizza and Roasted Garlic Chicken Stone-Fired Thin Crust Pizza.  Based

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

upon the "All Natural" representation on the labels of these Kashi products that Ms. Littlehale saw before her purchases, Ms. Littlehale believed that these Kashi products she purchased were all natural and relied on this representation in making her purchases.  However, the "All Natural" Kashi products Ms. Littlehale purchased contained synthetic and/or artificial ingredients.  While labels touted these Kashi products as being "All Natural," these Kashi food products labels Ms. Littlehale relied on did not disclose that synthetic and/or artificial ingredients were used in these Kashi products.  Ms. Littlehale not only purchased these Kashi products because the labels stated they were "All Natural," but she paid more money for the Kashi products that she purchased than she would have had to pay for other foods that contained synthetic or artificial ingredients.  Had Ms. Littlehale known the truth that these Kashi products were not entirely natural and contained synthetic or artificial ingredients, she would not have purchased these Kashi products but would have purchased other foods that were truly entirely natural and did not contain synthetic or artificial substances or, if such foods were not available, would have purchased non-natural products or products with synthetic or artificial substances that were less expensive than Kashi's food products.  Ms. Littlehale did not receive the entirely natural, non-synthetic and non-artificial Kashi food products she bargained for when she purchased Kashi's "All Natural" food products, and has lost money as a result in the form of paying a premium for these Kashi products because they were purportedly entirely natural and purportedly contained nothing synthetic or artificial rather than paying the lesser amount for non-natural alternatives.

18.     Additionally, from 2008 to 2009, Ms. Littlehale purchased Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon, at least 3 to 5 times.   Based on the "Nothing Artificial" representation on Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon's labels, Ms. Littlehale believed that this Kashi food product she purchased contained nothing artificial and relied on this representation in making her purchases.  However, the "Nothing Artificial" Kashi food product Ms. Littlehale purchased contained artificial ingredients.  While Defendants' labels touted this Kashi product as containing "Nothing Artificial," the labels that Ms. Littlehale relied on did not disclose that artificial ingredients were used in the products.  Ms. Littlehale not only purchased the purportedly "Nothing Artificial" Kashi Product because the labels said this product contained

1   "Nothing Artificial," but she paid more money for the "Nothing Artificial" Kashi food product she

2   purchased than she would have had to pay for other similar products that contained artificial

3   ingredients.  Had Ms. Littlehale known the truth that Kashi's Heart to Heart Instant Oatmeal Apple

4   Cinnamon product contained artificial ingredients, she would not have purchased it, but would have

5   instead purchased another brand of products that did not contain artificial ingredients or, if one was

6   not available, she would have purchased other artificial products that were less expensive than the

7   Kashi product.  Ms. Littlehale did not receive the "Nothing Artificial" product she bargained for

8   when she purchased Kashi's Heart to Heart Instant Oatmeal Apple Cinnamon, and has lost money as

9   a result in the form of paying a premium for this Kashi product because it purportedly contained

10  "Nothing Artificial" rather than paying the lesser amount artificial alternatives.

11        19.      Plaintiff Kimberley S. Sethavanish has been a resident of Windsor, California in

12  Sonoma County since November 2010.  From at least September 7, 2007 through October 2010, Ms.

13  Sethavanish resided in Orange, California.  Ms. Sethavanish is willing to and has paid a premium for

14  foods that are all natural and has refrained from buying their counterparts that were not all natural.

15  While Ms. Sethavanish was a California resident, she purchased Kashi's GoLean® Peanut Butter &

16  Chocolate Protein & Fiber Bars  and GoLean® Chewy Cookies 'N Cream Protein & Fiber Bars, to

17  send to her fiancé, Plaintiff James Colucci, while he was deployed with the United States Marines

18  Corps from approximately September 2009 through April 2010.  During Mr. Colucci's deployment,

19  Ms. Sethavanish sent him packages one or two times per month that included Kashi food products

20  purchased from Target and Trader Joe's in Orange, California and/or from Whole Foods in Irvine,

21  California.  Based on the "All Natural" representation on Kashi's product labels, Ms. Sethavanish

22  believed that the products she purchased were all natural and relied on this representation in making

23  her purchases.  However, the Kashi products that Ms. Sethavanish purchased contained synthetic

24  ingredients.  While the labels touted the Kashi products as "All Natural," the labels Ms. Sethavanish

25  relied on did not disclose that synthetic or artificial ingredients were used in the products.  Ms.

26  Sethavanish not only purchased the Kashi products because the labels said they were "All Natural,"

27  but she paid more money for the Kashi products than she would have had to pay for other products

28  that were not all natural in that they contained synthetic or artificial ingredients.  Had Ms.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1  Sethavanish known the truth that Kashi's food products were not all natural, she would not have

2  purchased the Kashi products, but would have purchased another brand of products that was truly all

3  natural or, if one was not available, would have purchased other non-natural products that were less

4  expensive than the Kashi products.  Ms. Sethavanish did not receive the "All Natural" products she

5  bargained for when she purchased the "All Natural" Kashi products, and has lost money as a result

6  in the form of paying a premium for Kashi's food products because they were purportedly all natural

7  rather than paying the lesser amount for non-natural alternatives.

8      20.    Defendant Kashi Company was founded by Philip and Gayle Tauber in La Jolla,

9  California in 1984.  In 1999, Kashi launched its GoLean® line of products, which includes many of

10  the food products at issue in this Complaint.  After posting record sales of nearly $25 million in

11  1999, Kashi was bought by Kellogg Company in June 2000, for $32 million, and became a wholly-

12  owned subsidiary of Kellogg Company.  Although Kellogg is headquartered in Battle Creek,

13  Michigan, the Kashi subsidiary is incorporated in the State of California and operates from its

14  headquarters at 4275 Executive Square, Suite 500, La Jolla, California, 92037.  According to a 2009

15  presentation by David DeSouza, then Vice President and General Manager for Kashi, Kashi's 2008

16  net sales in North America totaled more than $600 million.[3]  Moreover, Kashi touts itself as the

17  "leading natural foods company in the US and the largest in the world."[4]  In addition, Kashi is one of

18  the top five Breakfast/Cereal/Snack Bar brands in the United States.[5]

19      21.    Kashi sells, markets, manages and develops a full spectrum of "All Natural" and

20  "Nothing Artificial" cereal and snack food products, and has expanded its offerings to include frozen

21  entrees and pizzas.  From its beginnings in 1984 to the present day, Kashi claims to produce a

22

23

24  [3] *See* Exhibit 3 attached hereto, Presentation by David DeSouza, Vice President & General Manager, 2009    Analyst    Day:    Kashi    2    (2009),    also    available    at

25  http://files.shareholder.com/downloads/K/1289206394x0x330718/9FB4C725-FAD5-487B-B516-3A22BECDF2FC/11_Kashi_DeSouza.pdf.

26  [4] Kashi: Meet Us available at http://www.kashi.com/meet_us/careers (last visited June 14, 2011).

27  [5] *Top Breakfast/Cereal/Snack Bar Brands, 2009*, Market Share Reporter (Robert S. Lazich and

28  Virgil L. Burton, III, eds., 2011).

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1    variety of food products made entirely with natural ingredients and all natural flavors.  Kashi's

2    products are sold and distributed nationwide in grocery stores, natural food stores, and other venues.

3        22.    Defendant Kellogg Company is a Delaware corporation that maintains its principal

4    place of business at One Kellogg Square, P.O. Box 3599, Battle Creek, Michigan 49016-3599.

5    Kellogg is the world's leading producer of cereal and a leading producer of convenience foods.

6    Kellogg, directly and through its agents, has substantial contacts with and receives both benefits and

7    income from and through the State of California.

8        23.    Kellogg wholly-owns Kashi and refers to Kashi's brands and trademarks as its own.

9    Kellogg also has sign-off authority on Kashi's marketing and advertising, and Kellogg has spent

10   millions of dollars of its own funds on advertising and marketing the Kashi brands, including the

11   "All Natural" and "Nothing Artificial" Kashi food products at issue in this Complaint.[6]  Kellogg

12   signed off on Kashi's "real food" campaign, through which Kashi has touted on food labels and

13   advertising that its food products are wholesome, "All Natural," "Nothing Artificial," and "real" in

14   an effort to entice consumers to purchase its products.[7]   Moreover, Kellogg takes credit for

15   leveraging its "All Natural" and "Nothing Artificial" Kashi brand to investors.[8]  In fact, in an

16   earnings call in October 2009, Kellogg's then Chief Executive Officer, David MacKay, stated

17   publicly that: "During the quarter, these brands grew net sales at a strong 8% with Special K, Raisin

18   Bran and Kashi each delivering double-digit growth.  This strong growth from our top brands was

19   driven by double-digit increase in our advertising investment as well as successful promotions."[9]

20   There is also overlap between Kellogg and Kashi personnel (*e.g.*, the current President of Kellogg

21   Asia Pacific at Kellogg, David Denholm, served as General Manager of Kashi from 2004 to 2006),

22

23   [6] *See Kashi GoLean® Goes National*, (Jan. 17, 2005), reported at AllBusiness.com, attached hereto as Exhibit 4.

24   [7] *Family Rivalry: How Kashi's Food is 'Real,' but Kellogg's Isn't* (April 28, 2011), attached hereto

25   as Exhibit 5.

26   [8] Kellogg Company Form 10-K for the fiscal year ended January 2, 2010, excerpts attached hereto as Exhibit 6 at p. 4.

27   [9] Kellogg Company Q3 2009 Earnings Call Transcript (October 29, 2009), attached hereto as Exhibit

28   7; *see also* Exhibit 6 at p. 5.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1  such that Kellogg would necessarily have knowledge of Kashi's false and misleading labeling, even

2  if it was not actively participating in those activities by its sign-off authority and funding of Kashi's

3  marketing and advertising.  Kellogg is also no stranger to misleading labeling campaigns.[10]  Further,

4  it is believed and therefore averred that when Kellogg authorized and participated in the labeling,

5  marketing, advertising and distribution of the purportedly "All Natural" and "Nothing Artificial"

6  Kashi Products, Kellogg knew or recklessly ignored that the ingredients in the purportedly "All

7  Natural" Kashi Products contained non-natural, synthetic and/or artificial substances and that the

8  purportedly "Nothing Artificial" Kashi Products contained artificial substances.   Kellogg has

9  profited from these deceptive acts.

10      24.     Defendant Kashi Sales, LLC ("Kashi Sales") is a privately held limited liability

11  company established under the laws of Delaware, which maintains its headquarters in La Jolla,

12  California, 92038.  Kashi Sales is a direct subsidiary of "Kellogg Sales Company," a Delaware

13  corporation, an indirect subsidiary of Defendant Kellogg, and an affiliate of Defendant Kashi.  Kashi

14  Sales is the distributor of the Kashi Products, and is identified on the Kashi Products' labels as

15  distributing the Kashi Products from La Jolla, California.  While Kashi Products' labels through the

16  date of the filing of this Complaint have and continue to identify "Kashi Sales, LLC" as the

17  distributor of the Kashi Products, Defendant Kellogg's 10-k filings since fiscal year 2009 have

18  identified "Kashi Sales, LLC" as "DORMANT".[11]  In the event Kashi Sales, LLC is a dormant

---

20  [10] Kellogg has a history of making false, misleading and exaggerated claims in regard to its food
21  products.  *See FTC Charges Kellogg with False Advertising*, AllGov News (Aug. 6, 2009) attached
    hereto as Exhibit 8 and available at
22  www.allgov.com/ViewNews/FTC_Charges_Kellogg_With_False_Advertising_90806; *FTC Cracks
    Down On Another Dubious Claim By Kellogg*, AllGov News (June 11, 2010) attached hereto as
23  Exhibit 9; In *re Kellogg Co.*, FTC Docket No. C-4262 (Compl. Apr. 20, 2009); *In re Matter of
    Kellogg Company*, FTC Docket No. C-4262, Decision and Order (July 27, 2009) available at
24  http://www.ftc.gov/os/caselist/0823145/09073kelloggdo.pdf and attached hereto as Exhibit 10; and
    *In re Matter of Kellogg Company*, FTC Docket No. C-4262, Concurring Statement of Commissioner
25  Julie Brill and Chairman Jon Leibowitz (June 3, 2010) attached hereto as Exhibit 11 and available at
26  http://www.ftc.gov/os/caselist/0823145/100602kelloggstatement.pdf.

27  [11] Kellogg Company Form 10-K for the fiscal year ended January 2, 2010, excerpts attached hereto
    as Exhibit 6 at p. 7; Kellogg Company Form 10-K for the fiscal year ended January 3, 2009, excerpts
28  attached hereto as Exhibit 12 at p. 10; Kellogg Company Form 10-K for the fiscal year ended
    January 1, 2011, excerpts attached hereto as Exhibit 13 at p. 6.

18

1  corporate entity, then Defendants Kellogg or Kashi have been, since at least 2009, distributing Kashi

2  Products using Kashi Sales, LLC as a fictitious name.  Indeed, this may be why in its 2009 year book

3  Kashi credits its products' increased distribution as "due in part to Kellogg Company's nationwide

4  distribution network."[12]

5      25.     To the extent Kashi Sales operated as a separate entity, it is believed to have earned

6  considerable revenue from its activities distributing the false and misleadingly labeled Kashi

7  Products to retailers and wholesalers for sale to consumers in California and across the United

8  States.  Kashi Sales is liable for each Count of this Consolidated Amended Complaint as the

9  distributor of the Kashi Products and a participant in the marketing and sale of the mislabeled Kashi

10  Products.  Moreover, as a commercial distributor of food products and especially given Kashi Sales'

11  relationship to Kashi and Kellogg, Kashi Sales knew, recklessly disregarded or should have known

12  that the Kashi Products labeled "All Natural" that it was distributing were not all natural and, in fact,

13  contained synthetic or artificial ingredients, and that the Kashi Products labeled "Nothing Artificial"

14  it was distributing contained artificial substances.

15  ## JURISDICTION AND VENUE

16      26.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2).  Diversity

17  jurisdiction exists as Plaintiffs Astiana, Babick, Bolick, Colucci, Diaz, Espinola, Larsen, and

18  Sethavanish are California residents, Plaintiff Littlehale is a Pennsylvania resident, and Plaintiff

19  Chatham is a Massachusetts resident.  In addition, Defendant Kashi is incorporated in California and

20  maintains its principal place of business in California, Defendant Kellogg is incorporated in

21  Delaware and maintains its principal place of business in Michigan, and Defendant Kashi Sales is

22  incorporated under the laws of Delaware and maintains its principal place of business in California.

23  The nationwide classes ("Classes") consist of citizens and residents of states across the country.[13]

24  The amount in controversy exceeds $5,000,000 for Representative Plaintiffs and members of the

25

26  [12] Kashi 2009 Year Book, attached hereto as Exhibit 14 at p.7

27  [13] If a national class is not certified for any claim, Plaintiffs reserve the right, in the alternative, to
28  seek class certification of one or more multi-state Class (the "Multi-State Class") as well as a
California-wide or other statewide sub-class (the "Sub-Class") against Defendants.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1  Classes collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid

2  by Plaintiffs and the Classes, and the profits reaped by Defendants from their transactions with

3  Plaintiffs and the Classes, as a direct and proximate result of the wrongful conduct alleged herein,

4  and by virtue of the injunctive and equitable relief sought.

5  27.   Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a

6  substantial portion of the underlying transactions and events complained of herein occurred and

7  affected persons and entities are located in this judicial district, and Defendants have received

8  substantial compensation from such transactions and business activity in this judicial district,

9  including as the result of purchases of the "All Natural" and "Nothing Artificial" Kashi Products

10  from retail locations herein.  Further, Kashi and Kashi Sales inhabit and/or may be found in this

11  judicial district, and the interstate trade and commerce described herein is and has been carried out in

12  part within this judicial district.

13  **BACKGROUND**

14  28.   Webster's New World Dictionary defines "natural" as "produced or existing in

15  nature; not artificial or manufactured."[14]   "All" is defined as "the whole extent or quantity of."  *Id.*,

16  "all," definition no. 1 at p. 36.  Thus, the combined use of "All Natural" on the labels of the Kashi

17  Products indicate to the average reasonable person that "the whole extent or quantity of" the

18  ingredients contained in the Kashi Products are "produced or existing in nature; not artificial or

19  manufactured."

20  29.   Defendants made a far broader and more encompassing representation by labeling

21  their Kashi Products as "All Natural" as opposed to simply saying they were "natural."  While

22  federal regulators have established policies or regulations addressing the meaning of "natural" when

23  used in food labeling, no regulations have specifically addressed the broader representation made by

24  labeling the product as "All Natural," and the only policy to address "All Natural" labeling requires

25  disclosure of any synthetic or artificial ingredients so as to indicate they are not natural.  However, it

26

27
28  [14] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

is noteworthy that although the broader "All Natural" representation was made on Kashi Products' labeling, the presence of the synthetic and artificial ingredients in them also violates the federal regulators' policy and regulations for the narrower "natural" representation.

30.    The United States Food and Drug Administration ("FDA") -- which has responsibility for regulating the labeling of the Kashi Products at issue in this case as well as many other foods -- has not promulgated a regulation defining the term "natural" or "All Natural."  However, the agency has established a policy defining the outer boundaries of the use of the term "natural" by clarifying that a product is ***not*** natural if it contains color, artificial flavors, or synthetic substances. http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm[15]                        and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.[16]    Specifically, the FDA states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).  Although this definition is not a regulation, it is the "most definitive statement of the agency's view."[17]

31.    Courts and trade members have requested that the FDA provide a regulatory definition of "natural," however, the FDA has declined to provide a determination because the time required to conduct a public hearing "would take two to three years to complete," and the agency's resources are currently devoted to other, higher priorities.[18]

32.    Similar to the FDA, the United States Department of Agriculture ("USDA"), which regulates the labeling of meat and poultry, has also set limits on the use of the term "natural."   The USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling

---

[15] Attached hereto as Exhibit 15.

[16] Attached hereto as Exhibit 16.

[17] *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54, attached hereto as Exhibit 17.

[18] *See id.* (Letter to Judge Simandle).

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 11-CV-1967-H (BGS)

of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."[19]

33.     According to the USDA, "[m]inimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices."[20] However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[21]

34.     Under the USDA's guidelines, if a product is severely processed, the product can be labeled "All Natural" if the ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product.  However, even in that case, ***"the natural claim must be qualified to clearly and conspicuously identify the ingredient, e.g., all natural or all natural ingredients except dextrose, modified food starch, etc."***[22] (emphasis added).

35.     The terms "synthetic" and "artificial" closely resemble each other and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas a "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[23]  In the scientific community, "synthetic" includes substances that

---

[19] See the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited February 3, 2012), excerpts also attached hereto as Exhibit 18 at p. 5.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ and attached hereto as Exhibit 19.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 11-CV-1967-H (BGS)

are also "artificial," but a synthetic substance also can be artificial or non-artificial.[24]  However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic." Indeed, Webster's New World Dictionary defines "artificial" as "anything made by human work, especially if in intimation of something natural," whereas "synthetic" is defined as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[25]

36.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 U.S.C. § 6502(21).  *See also* 7 C.F.R. § 205.1, *et seq*. (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

37.    In addition to defining "synthetic," federal authorities have also expressly recognized numerous chemicals as synthetics, as discussed in the following paragraphs.  Some of these synthetics are also artificial substances.

38.    **Ascorbic Acid**.  Ascorbic acid is a chemically modified form of vitamin C used in foods as a chemical preservative (21 C.F.R. § 182.3013) that is a recognized synthetic by federal regulation.  7 C.F.R. 205.605(b).  Unlike natural vitamin C, synthetic Ascorbic Acid is generally produced from corn or wheat starch being converted to glucose, then to sorbitol and then to Ascorbic Acid through a series of chemical processes and purification steps.

39.    **Calcium Pantothenate.**  Calcium Pantothenate is a synthetic form of one of the vitamins in the B complex, vitamin B5, pantothenic acid.  Calcium Pantothenate is often used in dietary supplements because, as a salt, it is more shelf-stable than natural vitamin B5.  In

---

[24] *Id.*

[25] Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

23

1   commercial food production, Calcium Pantothenate is "prepared synthetically from isobutyraldehyde

2   and formaldehyde" pursuant to federal regulation.  21 C.F.R. 184.1212.

3        40.   **Calcium Phosphate.**  Calcium Phosphate is an insoluble, non-acid calcium salt of

4   phosphoric acid.  It is a colorless powder used as in agricultural fertilizers, as a plastic stabilizer, and

5   sometimes in baking powders.  Calcium Phosphate in any of three forms (mono-, di- or tribasic) is a

6   recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. 205.605(b).

7        41.   **Glycerin.**  Glycerine (a/k/a Glycerine, Glycerol or Vegetable Glycerin) is a synthetic

8   alcohol that rarely exists in its free form in nature.  It is used in some food products as a sweetener,

9   as a preservative, or as a thickening agent.  Glycerin is commonly manufactured for commercial use

10  through the hydrolysis of fats and oils during the manufacturing of soap products, or synthesized

11  from the hydrogenolysis of carbohydrates or from petrochemicals.  Glycerin could, alternatively, be

12  produced through a fermentation process using yeast; however, due to the resulting low yields and

13  presence of byproducts formed through the fermentation process, commercial manufacturers use the

14  synthetic processes above to produce Glycerin rather than the more natural fermentation method.

15  Commercial glycerin used in food products manufactured by either of the two commonly used

16  methods is a recognized synthetic product.  21 CFR 172.866; 7 CFR 205.605(b); 7 CFR 205.603; 21

17  CFR 178.3500.   It is believed, and therefore averred, that the Glycerin in Kashi's products is

18  synthesized using one or both of the two commonly used manufactured methods – hydrolysis of fats

19  and oils or hydrogenolysis of carbohydrates or propylene – and not derived naturally.

20       42.   **Hexane-Processed Soy Ingredients.**  Many Kashi Products contain different types of

21  soy products produced through the use of a volatile synthetic solvent, hexane.  Hexane is a

22  constituent of gasoline obtained from crude oil, natural gas liquids, or petroleum refinery processing.

23  40 C.F.R. § 99.2155.   According to the United States Occupational Safety and Health

24  Administration ("OSHA"), hexane is a narcotic and neurotoxic agent which can cause irritation to

25  the eyes and upper respiratory tract.[26]   Commercial hexane also contains benzene, a known

26  

---

27  [26] *See* OSHA's Occupational Safety and Health Guideline for n-Hexane available at

28  http://www.osha.gov/SLTC/healthguidelines/n-hexane/recognition.html and attached hereto as
    Exhibit 20.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1  hematologic poison linked to chronic leukemia.  The Hexane-Processed Soy Ingredients in Kashi's
2  Products include soy lecithin,[27] soy proteins, soy grits, soy flour, soybean oil and soybean fiber.

3       43.    Kashi touts its use of highly-processed soy in certain Kashi Products for its nutritional
4  advantages and environmental impact, but admits that these Kashi Products containing processed
5  soy products also contain hexane.[28]  Kashi justifies its use of hexane laden Hexane-Processed Soy
6  Ingredients by suggesting that the only commercially available method of isolating soy products is
7  through the use of hexane.[29]  However, the Soyfoods Association of America indicates there are
8  other ways to extract soy products for use in commercial foods without the use of hexane.[30]

9       44.    **Potassium Bicarbonate.**  Potassium Bicarbonate (a/k/a potassium hydrogen
10  carbonate or carbonic acid) is a recognized synthetic compound by regulation.  7 C.F.R.
11  205.601(i)(9).  While it is often used in baked goods as a leavening agent or as a foaming/fizzing
12  agent in beverages, it is more commonly used as a chemical agent in dry fire extinguishers, as a
13  fertilizer, as an anti-fungal agent, and as a feed supplement for live stock.  It is produced by reacting
14  potassium carbonate (also a synthetic substance) with carbon dioxide and crystallizing the final
15  product.

16       45.    **Potassium Carbonate** (also listed as "cocoa (processed with alkali)" or "Cocoa
17  Treated with Alkali").  Unsweetened baking cocoa is typically rendered in one of two forms:
18  Unalkalized cocoa or a version known as Dutch-process or alkalized cocoa.  Unalkalized cocoa is
19  light in color and somewhat acidic with a strong chocolate flavor.  Alkalized cocoa is processed with
20  an alkali to neutralize its acidity making it slightly milder in taste, with a deeper and warmer color
21  than unalkalized cocoa.  In order for cocoa to be used in its alkalized form, a dutching or alkalization
22  takes place during the processing of the cocoa beans.  During this process an alkali—usually either

---

[27] In addition to being processed with hexane which remains in certain Kashi Products, lecithin itself is considered synthetic by federal regulators.  *See* 721 C.F.R. §  205.605(b).

[28] *See* http://www.kashi.com/real_food/values_journey also attached hereto as Exhibit 21.

[29] *Id.*

[30] *See* http://www.soyfoods.org/soy-information/faq#answer-14 also attached hereto as Exhibit 22.

Potassium Carbonate or sodium carbonate[31] — is suspended in water to neutralize acids and alter the pH level of the beans.  This alkalizing agent darkens the cocoa, makes it milder in flavor and increases its ability to be dispersed.  The FDA requires that "when any optional alkali ingredient" is used, "the name of the food shall be accompanied by the statement 'Processed with alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the specific alkali ingredient used in the food."  21 C.F.R. § 163.112(c)(1).

46.    At least three of the Kashi Products labeled as being "All Natural," Kashi's GoLean® Crunchy! Chocolate Almond Protein & Fiber Bar, Kashi's GoLean® Crunchy! Chocolate Pretzel Protein & Fiber Bar, and Kashi's GoLean® Roll Chocolate Turtle Protein & Fiber Bar, specifically list Potassium Carbonate as the alkalizing agent used for the cocoa, a recognized synthetic ingredient by regulation.  7 C.F.R. § 205.605(b).  Others of the Kashi Products list the ingredient as "cocoa (processed with alkali)" or "Cocoa Treated with Alkali" without identifying that the alkalizing agent Kashi used in their products is Potassium Carbonate.[32]

47.    **Pyridoxine Hydrochloride.**  Pyridoxine Hydrochloride is an artificial form of one component of the vitamin B complex, vitamin B6 (a/k/a pyridoxine).  Natural vitamin B6 works as a coenzyme to assist other enzymes function properly and as an enzyme for the production of amino acids through three components, pyrodixine, pyridoxal, and pyridoxamine.  Although the principal form of vitamin B6 with the most importance in human metabolism is pyridoxal, many companies utilize pyridoxine to make artificial vitamin B6 supplements because it is the least expensive to produce commercially.  Pyridoxine is required by the body for utilization of energy in the foods you

---

[31]  Besides the commonly used Potassium Carbonate and sodium carbonate, there are other less commonly used alkali substances approved for use in processing cocoa not listed herein that are identified at 21 C.F.R. § 163.112(b)(1).  Significantly, sodium carbonate and sodium bicarbonate appear to be the only "safe and suitable" non-synthetic alkali substances approved for use in alkalizing cocoa.  *Id.*  Compare 7 C.F.R. § 205.605.

[32]  To the extent Defendants may claim some of their products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiffs that certain Kashi Products did not contain alkalized cocoa processed with one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

eat, production of red blood cells, and proper functioning of nerves.  Commercially prepared pyridoxine according to federal regulation is "prepared by chemical synthesis" as Pyridoxine Hydrochloride to help make the chemical more water-soluble.  21 C.F.R. § 184.1676.

48.   **Sodium Acid Pyrophosphate.**   Sodium Acid Pyrophosphate (also frequently known as SAPP, disodium dihydrogen pyrophosphate, or disodium dihydrogen diphosphate)[33] is a recognized synthetic chemical by federal regulation.   7 C.F.R. § 205.605(b).   Sodium Acid Pyrophosphate is a chemical preservative often used as a leavening agent in baked goods, in canning seafood to prevent grit from forming, and to prevent discoloration of potatoes and sugar syrups.  The FDA recently issued a warning letter to another company indicating that the use of the term "All Natural" on the label of a food product containing Sodium Acid Pyrophosphate renders the product's label false and misleading.[34]

49.   **Sodium Citrate.**   Sodium Citrate, the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, is often used as an anticoagulant or blood thinner.  It is a recognized synthetic chemical under federal regulation (7 C.F.R. § 205.605(b)) that is sometimes used in food as a preservative or to provide a tart flavor in soft drinks, club soda, juices, and in some sausages.

50.   **Sodium Phosphate.**   Sodium Phosphate is a generic term for any sodium salts of phosphoric acid.  Various Sodium Phosphates are manufactured by treating phosphoric acid with a source of sodium, such as sodium bicarbonate, and are recognized to be synthetic by federal regulation.  7 C.F.R. § 205.605(b).  Three common Sodium Phosphates can be found in commercial products, monosodium phosphate, disodium phosphate, and trisodium phosphate.  Monosodium

---

[33] For full list of synonyms of sodium acid pyrophosphate from the National Institute of Health, *see* http://pubchem.ncbi.nlm.nih.gov/summary/summary.cgi?cid=24451 also attached hereto as Exhibit 23.

[34] *See* November 16, 2011 Warning Letter to Alexia Foods, Inc. online at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm ("[b]ecause your products contain this synthetic ingredient [disodium dihydrogen pyrophosphate], the use of the claim 'All Natural' on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act") attached hereto as Exhibit 24.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

phosphate is often used as a laxative, disodium phosphate is often used in food as an emulsifier or as a leavening agent, and trisodium phosphate is often used as a strong chemical detergent.

51.    **Tocopherols.**  Natural vitamin E is an essential vitamin complex of eight components – four different tocopherols and four different tocotrienols – that functions best when in the proper ratio of components.  Tocopherols in isolation, sometimes called mixed Tocopherols, are a class of chemical compounds with some vitamin E properties often used as a chemical food preservative (21 C.F.R. § 182.3890) and are recognized to be synthetic by federal regulation. *See* 7 C.F.R. § 205.605(b).  To provide some health benefits of vitamin E, companies often use synthetic or artificial Tocopherols in lieu of natural vitamin E due to their lower cost.  One example of an artificial vitamin E used by Defendants, alpha tocopherol acetate, is created from the condensation of the petrochemical racemic isophytol with trimethyl hydroquinone, followed by treatment using acetic acid.  21 C.F.R. § 184.1890.

52.    **Xanthan Gum.**  Xanthan Gum is a polysaccharide derived from the bacterial coat of the *Xanthomonas campesris* bacterium.  Although derived from a natural bacterium, Xanthan Gum is commercially manufactured as a sodium, potassium or calcium salt and is considered to be synthetic by federal regulation.  7 C.F.R. § 205.605(b).  Xanthan Gum is used in food products such as beverages as a thickening or stabilizing agent, and as an emulsifier in salad dressings.  Although used in many of the Kashi Products, Kashi criticizes the use of this ingredient as "[p]rocessed using petrochemicials" much like the hexane processed soy products also in many Kashi Products.[35]

53.    Unfortunately, as explained in the next section of this Complaint, the Kashi Products labeled "All Natural" never disclosed that the ingredients used were synthetic or artificial, despite the "All Natural" representations on the products' labels, and the Kashi Products labeled "Nothing Artificial" never disclosed that the ingredients used were artificial, despite the "Nothing Artificial" representations on the products' labels.

---

[35] Kashi Online Ingredient Decoder, available at www.kashi.com/real_food/ingredients; Kashi PDF Ingredient Decoder, available at www.kashi.com/pdf/Kashi_Ingredient_Decoder.pdf; Kashi Ingredient Decoder, as appearing in the May 2011 issue of Real Simple, pp. 264-265, attached as Exhibit 25.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 11-CV-1967-H (BGS)

## DEFENDANTS' USE OF NON-NATURAL INGREDIENTS

54.     American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet so they frequently take nutrition information into consideration in selecting and purchasing food items.  Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions.  As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

55.     The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of a recent FDA Food Label and Package Survey found that approximately 4.8% of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

56.     American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase.  Although this segment of the health food market was once a niche market, natural foods are increasingly becoming part of the mainstream food landscape.  According to *Natural Foods Merchandiser*, a leading information provider for the natural, organic and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.[36]  The market for all natural and organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[37]  Consumer demand for all natural and organic

---

[36] *See Natural and Organic Products Industry Sales Hit $81 Billion*, Natural Foods Merchandiser, (June 1, 2011), available at: http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-saleshit-81-billion-122958763.html and attached hereto as Exhibit 26.

[37] http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited February 9, 2012) attached hereto as Exhibit 27.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[38]

57.    Consumers desire "All Natural" ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food. The "All Natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.  As a result, consumers are willing to pay a higher price for "All Natural" and organic food and beverages.

58.    According to an article in *The Economist*, "natural" products are a fast growing market because of the power of "mother nature" in the hands of marketers, which conjures up images of heart-warming wholesomeness and rustic simplicity.  According to this publication, a chief selling point of the organic-food industry is that no man-made chemicals are used in the production process.[39]

59.    Kashi knows that consumer demand for all natural products is increasing, and encourages retailers to "Offer Natural Products in Your Operation -- and Watch Your Profits Grow."[40]  Kashi also understands that Kashi consumers are purchasing Kashi's food products for their perceived health benefits.  For instance, Kashi states that "Kashi offers simple foods that taste great and provide true sustenance for those on a journey toward a healthier life."[41]

---

[38] *Id.*

[39] *Chemical Blessings: What Rousseau got Wrong*, The Economist, (February 4, 2008) available at: http://www.economist.com/node/10633398 and attached hereto as Exhibit 28.

[40] http://www.fafh.com/resources/All-Natural-Brochure.pdf (last visited February 9, 2012) and attached hereto as Exhibit 29.

[41] *Id.* at 4.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1    60.    In order to capture and tap into this growing market and the hunger of consumers for

2  the perceived healthier, chemical free benefits of "All Natural" foods, Defendants label and advertise

3  the Kashi Products as "All Natural" and "Nothing Artificial."

4    61.    A reasonable consumer's understanding of the term "natural" comports with federal

5  regulators and common meaning.  That is, a reasonable consumer understands the term "natural" to

6  mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the

7  term "natural" is broadened to "All Natural" as Kashi Products did, there is no question that a

8  reasonable consumer understands the term "All Natural" to mean that none of the ingredients are

9  synthetic and none of the ingredients are artificial.  In other words, by claiming that Kashi Products

10  are "All Natural," Defendants have raised the bar and both warranted and represented to consumers

11  that these Kashi Products contain only natural ingredients, and that none of the components of these

12  Kashi Products is artificial or synthetic.

13    62.    Likewise, a reasonable consumer's understanding of "Nothing Artificial" comports

14  with common meaning.  That is, a reasonable consumer understands the term "artificial" to mean

15  something that is man-made, and the term "nothing" to mean none.  By combining these terms and

16  claiming Kashi Products contain "Nothing Artificial," Defendants have warranted and represented to

17  consumers that none of the components of these Kashi Products is artificial, *i.e.,* nothing is man-

18  made.

19    63.    In using the terms "All Natural" and "Nothing Artificial," Defendants are well aware

20  of their common meaning.  For instance, in a set of "answers to common questions about" "natural

21  and organic foods" available on Kellogg's website during 2011, Kellogg used and adopted the FDA

22  and USDA's definitions to answer the question, "What are 'natural' foods?'"[42]

---

[42] *See* Exhibit 30 attached hereto, previously available at www.kelloggsnutrition.com/eat-well/natural-organic-foods.aspx.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)



Kashi is also aware of these definitions, and has stated that "[n]atural food is made without artificial ingredients like colors, flavors or preservatives and is minimally processed" and that "[a] natural ingredient is one that comes from or is made from a renewable resource found in nature."[43]

64.     Defendants have also reinforced their "All Natural" and "Nothing Artificial" claims by making other statements to consumers directly on the Kashi Products.  For instance, the Kashi Products include reinforcing statements such as "No Artificial Ingredients Only Minimally Processed," "No Artificial Sweeteners, Flavors, Colors or Preservatives," and "At Kashi, The Seven Whole Grain Company, we believe everyone has the power to make positive, healthy lifestyle changes.  So for 20 years it's been our mission to provide great tasting, all natural whole grain foods to help you live longer and live well."

---

[43] Kashi 2009 Yearbook, www.kashi.com/meet_us/yearbook, attached as Exhibit 14 at p.10.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

65.     Defendants have further reinforced these "All Natural" and "Nothing Artificial" claims through their websites, advertising campaigns, and Kashi brand marketing generally. Defendants market Kashi as providing "Real Food Values" and being "7 Whole Grains on a Mission™."[44]  Kashi has made statements on its website such as "We can't say it enough -- We're passionate about good, all-natural foods."[45]  The website also espouses values including to "Find simple, natural ingredients and don't mess them up."[46]  Defendants also market Kashi as an expert in environmental programming and information, offering advice on sustainability, organic farming, and broadcasting environmental videos.  As part of this message, Kashi also cultivates a "local" persona, emphasizing that the company is small, local, and eco-conscious, in order to tap into the "locally grown" movement that is popular with health conscious consumers.

66.     Defendants Kellogg and Kashi have also held themselves out as trusted leaders who are attempting to assist consumers in having access to the information necessary to make informed choices.  Kashi touts itself as being "a leading natural brand focused on positive nutrition."[47] On the Kashi website, in magazine ads, and in other marketing materials, Kashi also showcases its all-natural real-food image, offering consumers the "Kashi Ingredient Decoder™," which Defendants describe as a "handy tool [that] will help you figure out what's real on ingredient labels" and as a "list of ingredients we'd use at Kashi … and which we'd avoid."[48] Kellogg has also described itself

---

[44] *See* Kashi's "Real Food Values," available at http://www.kashi.com/real_food/values and attached hereto as Exhibit 31.

[45] *See* Kashi's "Our Foods," available at http://www.kashi.com/our_foods and attached hereto as Exhibit 32.

[46] Kashi's "Real Food Values," available at http://www.kashi.com/real_food/values

[47] http://www.kashi.com/meet_us/history (last visited February 9, 2012 and attached hereto as Exhibit 33.

[48] Kashi Online Ingredient Decoder, available at www.kashi.com/real_food/ingredients; Kashi PDF Ingredient Decoder, available at www.kashi.com/pdf/Kashi_Ingredient_Decoder.pdf; Kashi Ingredient Decoder, as appearing in the May 2011 issue of Real Simple, attached hereto as Exhibit 25.  Notably, despite indicating in the Decoder that Kashi wouldn't use "Xanthan Gum", *see id.*, certain of the Kashi Products do use this ingredient.  *See* Paragraph 71 below.

as a "trusted leader in creating ethical and responsible marketing standards and ensure that our consumers have access to the information necessary to make informed choices."[49]

67.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "All Natural" and "Nothing Artificial," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must and do rely on food companies such as Defendants to honestly report the nature of a food's ingredients, and food companies such as Defendants intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

68.    While Defendants labeled and advertised their products as "All Natural," the Kashi Products labeled as "All Natural" contained synthetic and artificial ingredients, including but not limited to the ingredients identified above in paragraphs 38 through 52.  Likewise, while Defendants labeled and advertised their products as "Nothing Artificial," the Kashi Products labeled as "Nothing Artificial" contained artificial ingredients, including but not limited to the Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate ingredients identified above in paragraphs 42, 47, and 51.   While the Kashi Products' labels did disclose that these products contained many of the synthetic and artificial substances, the labels did ***not*** disclose that these ingredients were synthetic or artificial, and in some cases did not identify that these components existed in the Kashi Products at all (e.g., Hexane, and Potassium Carbonate).  These omissions are significant and material given the Kashi Products' "All Natural" and "Nothing Artificial" representations on the Kashi Products' labels, and numerous reinforcing statements.  Based on the "All Natural" representations, one would normally expect that none of the ingredients in "All Natural" Kashi Products would be synthetic or artificial.   Similarly, based on the "Nothing

---

[49] *See* 2009 Kellogg Corporate Responsibility Report, attached hereto as Exhibit 34, at p.10.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1    Artificial" representations, one would normally expect that none of the ingredients in "Nothing

2    Artificial" Kashi Products would be artificial.

3        69.    Defendants knew that they made the "All Natural" and "Nothing Artificial"

4    representations in regard to the Kashi Products, as those statements appear on the products'

5    packaging.  Defendants also knew that these claims were false and misleading, because they knew

6    what ingredients were contained in each of the Kashi Products.  Defendants also retain expert

7    nutritionists, food chemists, other scientists, regulatory compliance personnel, and attorneys, and

8    thus had the ability to know, and did know, that many of the ingredients in the Kashi Products were

9    synthetic and artificial.   Indeed, all but one of the synthetic or artificial ingredients at issue in the

10   Kashi Products labeled "All Natural" and "Nothing Artificial" are recognized as synthetic chemicals

11   by federal regulations.

12       70.    Defendants Kashi and Kellogg know that the Kashi Products "All Natural" and

13   "Nothing Artificial" claims are false and misleading to consumers.  As Kellogg stated in its 2009

14   Corporate Responsibility Report[50]:

15           EXPLORING A NATURAL DEFINITION: As consumers grow increasingly
             interested in healthful foods, more and more food companies are marketing their
16           products as "natural." Yet this term lacks clear definition from the U.S. Food and
             Drug Administration, leaving consumers understandably confused about what it
17           actually means.  Kashi, a natural food company that operates as a wholly owned
             subsidiary of Kellogg Company, has been working with external leaders and
18           advocacy groups within the natural products industry to create a "natural" standard
19           for food.

20   In making this statement, Kellogg essentially admits that it knows that consumers are "confused" by

21   Kashi's "All Natural" claims (i.e., consumers reasonably expect that products with "All Natural"

22   representations will comply with the FDA's definition, which comports with common

23   understanding, as explained herein, yet companies such as Kashi are including ingredients in their

24   purportedly "All Natural" products that are inconsistent with the express claims on their products

25   because the FDA has not promulgated a regulation defining "natural" or "All Natural").

26

27   _____

28   [50] Exhibit 34, Kellogg Company 2009 Corporate Responsibility Report at p.29.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

71.     According to ingredient lists on the Kashi Products' labels, and in direct contrast to Defendants' promises on those labels, the Kashi Products labeled as "All Natural" each contain between one (1) and seven (7) of the recognized synthetic and artificial ingredients identified herein, including 71 of the 91 Kashi Products containing Hexane-Processed Soy Ingredients, as follows: [51]

a.      7 Grain Waffles:  Hexane-Processed Soy Ingredients, Monocalcium Phosphate, and Sodium Acid Pyrophosphate

b.      7 Whole Grain Nuggets Cereal: Tocopherols.

c.      Berry Blossoms Cereal: Hexane-Processed Soy Ingredients and Tocopherols.

d.      Black Bean Mango Entrée: Ascorbic Acid.

e.      Blueberry Waffles: Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

f.      Caribbean Carnival Stone-Fired Thin Crust Pizza: Highly-Processed Soy Products and Xanthan Gum

g.      Chicken Florentine Entrée: Hexane-Processed Soy Ingredients.

h.      Chicken Pasta Pomodoro Entrée: Hexane-Processed Soy Ingredients.

i.      Cocoa Beach Granola: Hexane-Processed Soy Ingredients and Tocopherols.

j.      Five Cheese & Tomato Stone-Fired Thin Crust Pizza: Xanthan Gum.

k.      Golden Goodness Cereal: Tocopherols.

l.      GOLEAN® Blueberry Waffles: Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

m.      GOLEAN® Chewy Chocolate Almond Toffee Protein & Fiber Bars: Glycerin and Hexane-Processed Soy Ingredients.

n.      GOLEAN® Chewy Cookies 'N Cream Protein & Fiber Bars: Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

o.      GOLEAN® Chewy Malted Chocolate Crisp Protein & Fiber Bars: Hexane-Processed Soy Ingredients and Tocopherols.

---

[51]     A chart listing each of the Kashi "All Natural" Products, and the identified non-natural ingredients contained therein, is attached to this Complaint as Exhibit 1.  A copy of the Kashi "All Natural" Products' labels and ingredients is attached hereto as Exhibit 35.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 11-CV-1967-H (BGS)

p.    GOLEAN® Chewy Oatmeal Raisin Cookie Protein & Fiber Bars: Hexane-Processed Soy Ingredients.

q.    GOLEAN® Chewy Peanut Butter & Chocolate Protein & Fiber Bars: Hexane-Processed Soy Ingredients.

r.    GOLEAN® Chocolate Malted Crisp Protein & Fiber Bars: Glycerin, Hexane-Processed Soy Ingredients and Potassium Carbonate.

s.    GOLEAN® Chocolate Shake: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Hexane-Processed Soy Ingredients, Potassium Carbonate, Pyridoxine Hydrochloride and Tocopherols.

t.    GOLEAN® Creamy Instant Hot Cereal Truly Vanilla:  Hexane-Processed Soy Ingredients.

u.    GOLEAN® Crisp! Toasted Berry Crumble Cereal:  Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

v.    GOLEAN® Crunch! Cereal:  Tocopherols.

w.    GOLEAN® Crunch! Honey Almond Flax Cereal:  Hexane-Processed Soy Ingredients and Tocopherols.

x.    GOLEAN® Crunchy! Chocolate Almond Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Potassium Carbonate, Pyridoxine Hydrochloride and Tocopherols.

y.    GOLEAN® Crunchy! Chocolate Caramel Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

z.    GOLEAN® Crunchy! Chocolate Peanut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

aa.    GOLEAN® Crunchy! Chocolate Pretzel Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Potassium Carbonate, Pyridoxine Hydrochloride and Tocopherols.

bb.    GOLEAN® Crunchy! Cinnamon Coffee Cake Protein & Fiber Bars: Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

cc.    GOLEAN® Hearty Instant Hot Cereal with Clusters Honey & Cinnamon: Hexane-Processed Soy Ingredients and Tocopherols.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

dd.     GOLEAN® Oatmeal Raisin Protein & Fiber Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ee.     GOLEAN® Original 7 Grain Waffles:  Hexane-Processed Soy Ingredients and Monocalcium Phosphate.

ff.     GOLEAN® Peanut Butter & Chocolate Protein & Fiber Bars:  Glycerin, Hexane-Processed Soy Ingredients and Potassium Carbonate.

gg.     GOLEAN® Roll! Caramel Peanut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

hh.     GOLEAN® Roll! Chocolate Peanut Protein & Fiber Bars: Ascorbic Acid, Glycerin, Pyridoxine Hydrochloride, Hexane-Processed Soy Ingredients and Tocopherols.

ii.     GOLEAN® Roll! Chocolate Turtle Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Potassium Carbonate, Pyridoxine Hydrochloride and Tocopherols.

jj.     GOLEAN® Roll! Fudge Sundae Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

kk.     GOLEAN® Roll! Oatmeal Walnut Protein & Fiber Bars:  Ascorbic Acid, Glycerin, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

ll.     GOLEAN® Strawberry Flax Waffles:  Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Sodium Acid Pyrophosphate.

mm.     GOLEAN® Vanilla Shake Mix:  Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Tocopherols.

nn.     Honey Sunshine Cereal:  Hexane-Processed Soy Ingredients and Tocopherols.

oo.     Lemongrass Coconut Chicken Entrée:  Hexane-Processed Soy Ingredients and Xanthan Gum.

pp.     Margherita Stone-Fired Thin Crust Pizza:   Xanthan Gum.

qq.     Mayan Harvest Bake Entrée:  Hexane-Processed Soy Ingredients.

rr.     Mexicali Black Bean Stone-Fired Thin Crust Pizza:  Xanthan Gum

ss.     Mountain Medley Granola:  Glycerin, Hexane-Processed Soy Ingredients and Tocopherols.

tt.     Mushroom Trio & Spinach Stone-Fired Thin Crust Pizza:  Xanthan Gum

uu.     Pesto Pasta Primavera Entrée:  Hexane-Processed Soy Ingredients.

vv.     Pesto Stone-Fired Thin Crust Pizza:  Xanthan Gum

ww.     Red Curry Chicken Entrée:  Xanthan Gum.

xx.     Roasted Garlic Chicken Stone-Fired Thin Crust Pizza:  Xanthan Gum

yy.     Roasted Vegetable Stone-Fired Thin Crust Pizza:  Xanthan Gum

zz.     Southwest Style Chicken Entrée:  Hexane-Processed Soy Ingredients and Potassium Carbonate.

aaa.     Spicy Black Bean Enchilada Entrée:  Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

bbb.     Summer Berry Granola:  Hexane-Processed Soy Ingredients and Tocopherols.

ccc.     Sweet & Sour Chicken Entrée:  Ascorbic Acid.

ddd.     TLC Baked Apple Spice Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

eee.     TLC Blackberry Graham Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate, Sodium Citrate and Xanthan Gum.

fff.     TLC Cherry Dark Chocolate Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ggg.     TLC Cherry Vanilla Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

hhh.     TLC Country Cheddar Cheese Crackers:  Hexane-Processed Soy Ingredients, Sodium Phosphates and Potassium Bicarbonate.

iii.     TLC Toasted Asiago Snack Crackers:  Monocalcium Phosphate, Sodium Phosphate, Potassium Bicarbonate, Sodium Acid Pyrophosphate and Tocopherols.

jjj.     TLC Cranberry Walnut Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

kkk.    TLC Dark Chocolate Coconut Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

lll.    TLC Dark Chocolate Coconut Layered Granola Bar:  Glycerin and Hexane-Processed Soy Ingredients.

mmm.    TLC Dark Mocha Almond Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

nnn.    TLC Fire Roasted Veggie Party Crackers:  Monocalcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

ooo.    TLC Happy Trail Mix Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

ppp.    TLC Honey Almond Flax Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

qqq.    TLC Honey Sesame Snack Crackers:  Monocalcium Phosphate, Hexane-Processed Soy Ingredients and Sodium Acid Pyrophosphate.

rrr.    TLC Honey Toasted 7 Grain Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

sss.    TLC Mediterranean Bruschetta Snack Crackers:  Potassium Bicarbonate.

ttt.    TLC Natural Ranch Snack Crackers:  Calcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

uuu.    TLC Oatmeal Dark Chocolate Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

vvv.    TLC Oatmeal Raisin Flax Chewy Cookies:  Glycerin, Hexane-Processed Soy Ingredients, Monocalcium Phosphate and Tocopherols.

www.    TLC Original 7 Grain Snack Crackers:  Monocalcium Phosphate, Potassium Bicarbonate and Sodium Acid Pyrophosphate.

xxx.    TLC Original 7 Grain With Sea Salt Pita Crisps:  Hexane-Processed Soy Ingredients and Tocopherols.

yyy.    TLC Peanut Peanut Butter Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

zzz.    TLC Peanutty Dark Chocolate Layered Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

aaaa.    TLC Pumpkin Pecan Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

bbbb.    TLC Pumpkin Pecan Layered Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

cccc.    TLC Pumpkin Pie Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

dddd.    TLC Pumpkin Spice Flax Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

eeee.    TLC Raspberry Chocolate Fruit & Grain Bars:  Glycerin and Hexane-Processed Soy Ingredients.

ffff.    TLC Ripe Strawberry Soft-Baked Cereal Bars:  Glycerin, Hexane-Processed Soy Ingredients, Sodium Acid Pyrophosphate and Xanthan Gum.

gggg.    TLC Roasted Almond Crunch Crunchy Granola Bars:  Hexane-Processed Soy Ingredients and Tocopherols.

hhhh.    TLC Roasted Garlic & Thyme Party Crackers:  Potassium Bicarbonate and Tocopherols.

iiii.    TLC Stoneground 7 Grain Party Crackers:  Potassium Bicarbonate and Tocopherols.

jjjj.    TLC Trail Mix Chewy Granola Bars:  Glycerin and Hexane-Processed Soy Ingredients.

kkkk.    TLC Zesty Salsa Pita Crisps:  Hexane-Processed Soy Ingredients and Tocopherols.

llll.    Tomato Garlic Cheese Stone-Fired Thin Crust Pizza:  Xanthan Gum

mmmm.    Tuscan Veggie Bake Entrée:  Hexane-Processed Soy Ingredients.

72.    According to their labels, the Kashi Products below are labeled as "Nothing Artificial" (but do not include an "All Natural" claim) yet contain between one (1) and three (3) of the recognized artificial ingredients identified herein, as follows:[52]

---

[52] A chart listing each of the Kashi "Nothing Artificial" Products, and the identified artificial ingredients contained therein, is attached hereto as Exhibit 2.  A copy of the Kashi "Nothing Artificial" Products' labels and ingredients is attached hereto as Exhibit 36.

41

a.    Heart to Heart Honey Oat Waffles:  Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

b.    Heart to Heart Honey Toasted Oat Cereal:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

c.    Heart to Heart Instant Oatmeal Apple Cinnamon:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

d.    Heart to Heart Instant Oatmeal Golden Maple:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

e.    Heart to Heart Instant Oatmeal Raisin Spice:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

f.    Heart to Heart Oat Flakes & Blueberry Clusters Cereal:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

g.    Heart to Heart Oat Flakes & Wild Blueberry Clusters Cereal:  Pyridoxine Hydrochloride.

h.    Heart to Heart Roasted Garlic Whole Grain Crackers:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

i.    Heart to Heart Warm Cinnamon Oat Cereal:  Pyridoxine Hydrochloride.

j.    Heart to Heart Original Whole Grain Crackers:  Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

73.    The labeling of products as "All Natural" or "Nothing Artificial" carries implicit health benefits valued by consumers – benefits that consumers are often willing to pay a premium for – over comparable products that are not "All Natural" or with artificial ingredients.  Over the past twenty-seven years, Kashi has cultivated and reinforced a corporate image that has catered to this "All Natural" and "Nothing Artificial" theme and has boldly emblazoned one or more of these claims on the labels of each and every one of the food products identified above, despite the fact that these Kashi Products contain synthetic and/or artificial ingredients.

74.    Defendants have used the "All Natural" and "Nothing Artificial" labels to shape and market the Kashi brand and subsequently sell the Kashi Products.  Yet, the existence of synthetic and artificial ingredients in the Kashi Products renders the use of the label "All Natural," false and misleading, as does the use of artificial ingredients in the Kashi Products labeled "Nothing

1    Artificial."  In manufacturing the Kashi Products, Defendants had a choice between using natural or

2    synthetic and artificial ingredients.  They chose to use synthetic and artificial ingredients, but

3    nonetheless labeled the Kashi Products as "All Natural" or "Nothing Artificial."  As a matter of their

4    self-characterized socially conscious corporate morality, and as matter of law, Defendants must now

5    reconcile their labeling with the true content of Kashi's food products.

6                    **DEFENDANTS HAVE REFUSED TO CEASE THEIR WRONGDOING**

7            75.    Kashi and Kellogg have repeatedly been notified by counsel for Plaintiffs on behalf

8    of themselves and all members of the Classes that the Kashi Products have been falsely and

9    misleadingly sold as "All Natural" or "Nothing Artificial" when they in fact contain synthetic and

10   artificial substances in violation of the CLRA and other laws.  For instance, Defendants were sent

11   notice by letters from counsel for Plaintiff Astiana dated March 22, 2011 and April 1, 2011 to

12   Defendant Kashi; by letter from counsel for Plaintiffs Astiana, Sethavanish and Colucci dated

13   September 12, 2011 to Defendant Kashi; by letter from counsel for Rosaclaire Baisinger to Kashi

14   dated September 15, 2011; by letters from counsel for Plaintiff Diaz to Defendants Kashi and

15   Kellogg dated September 27, 2011; by letter from counsel for Plaintiff Espinola to Defendant Kashi

16   dated October 20, 2011; by letters from counsel for Plaintiff Chatham to Defendants Kashi and

17   Kellogg dated October 31, 2011; and by letter from counsel for Plaintiff Babic dated January 27,

18   2011 to Defendant Kashi.  These letters requested that Defendants cure or otherwise remedy the

19   harm to Plaintiffs and all members of the Classes.

20           76.    Although Defendants have received ample notice that the Kashi Products were falsely

21   and misleadingly labeled "All Natural" and "Nothing Artificial" when the products contained

22   synthetic and/or artificial substances, and although Defendants have had reasonable opportunity to

23   cure or otherwise remedy the harms to Plaintiffs and members of the Classes caused by these

24   defects, they have failed to do so.

25                    **DEFENDANTS FRAUDULENTLY CONCEALED THEIR WRONGS,**

26                       **TOLLING THE STATUTE OF LIMITATIONS**

27           77.    Kashi Products labeled as "All Natural" contain synthetic and artificial ingredients as

28   identified above.  Moreover, Kashi Products labeled as "Nothing Artificial" contain artificial

ingredients as identified above.  Defendants did not disclose the identity of at least two of those artificial and/or synthetic ingredients: potassium carbonate and hexane, on the Kashi Products labels. Rather, the potassium carbonate in the Kashi Products is not listed as an ingredient by name on the Kashi Products in most cases, and the hexane in the highly processed soy products is not listed as an ingredient or otherwise disclosed on the packages at all.  A reasonably prudent consumer buying Defendants' food products would have no reason to suspect that the "All Natural" labeled Kashi Products contained synthetic ingredients or artificial ingredients, including petroleum products such as hexane.  Nor would a reasonably prudent consumer buying Defendants' food products have any reason to suspect that the "Nothing Artificial" labeled Kashi Products contained artificial ingredients, including petroleum products such as hexane.

78.     Moreover, while Defendants "All Natural" food products' labels did include the following in the ingredient list: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Soy Products (albeit without reference to the hexane), Potassium Bicarbonate, Potassium Carbonate (in a few cases), Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum, those labels did not disclose that any of these ingredients were synthetic or artificial, and therefore not natural.  Nor did Defendants otherwise disclose this information to Plaintiffs and members of the Classes.  Indeed, whether Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Potassium Carbonate, Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum are synthetic or natural, is not something Plaintiffs or any other average reasonable consumer buying Defendants "All Natural" food products would know since that information is not common knowledge.  That combined with Defendants' active concealment in representing the Kashi Products as "All Natural," together with their numerous reinforcing statements described herein, and not disclosing otherwise gave the average reasonable consumer no reason to suspect that Defendants' representations on the packages that the food products are "All Natural" were not true, and therefore consumers had no reason to investigate whether these ingredients are synthetic and artificial or natural.

79.     Similarly, while Defendants "Nothing Artificial" food products' labels did include the following in the ingredient list: Pyridoxine Hydrochloride, Alpha-tocopherol Acetate and Soy Products, those labels did not disclose that any of these ingredients were artificial, or that the soy products were processed with hexane, an artificial substance.  Nor did Defendants otherwise disclose this information to Plaintiffs and members of the Classes.    Indeed, whether Pyridoxine Hydrochloride, Alpha-tocopherol Acetate and Soy Products are artificial, is not something Plaintiffs or any other average reasonable consumer buying Defendants "Nothing Artificial" food products would know since that information is not common knowledge.  That combined with Defendants' active concealment in representing the Kashi Products as "Nothing Artificial," together with their numerous reinforcing statements described herein, and not disclosing otherwise gave the average reasonable consumer no reason to suspect that Defendants' representations on the packages that the food products contain "Nothing Artificial" were not true, and therefore consumers had no reason to investigate whether these ingredients are artificial.

80.     As such, Defendants' concealment of the non-natural nature of the ingredients in the Kashi Products tolls the applicable statute of limitations.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action on behalf of themselves and on behalf of all other members of the "All-Natural" Class, and Plaintiffs Espinola, Larsen and Littlehale bring this action on behalf of themselves and on behalf of all other members of the "Nothing Artificial" Class (collectively, the "Classes"), defined as follows:[53]

a)   "All Natural" Class: all persons who purchased Kashi's food products in the United States that were labeled "All Natural" but which contained non-natural ingredients, as identified in this Complaint.

---

[53] Plaintiffs have amassed sufficient labels to believe that their allegations are supported with respect to those Kashi Products that have been identified in the Complaint; however, discovery will confirm which ingredients were included in each of the Kashi Products.  As discovery reveals additional information, the list of synthetic and/or artificial ingredients in the Kashi Products and/or the list of Kashi Products at issue may change.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

b) <u>"Nothing Artificial" Class</u>: all persons who purchased Kashi's food products in the United States that were labeled "Nothing Artificial" but which contained artificial ingredients, as identified in this Complaint.

Plaintiffs bring these Classes pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

82.    Excluded from the Classes are: (i) Kashi, Kellogg and Kashi Sales and their employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

83.    Upon information and belief, there are tens of thousands of members of each Class, who are geographically dispersed throughout the United States.  Therefore, individual joinder of all members of the Classes would be impracticable.

84.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

85.    Common questions of law or fact exist as to all members of the All Natural Class. These questions predominate over the questions affecting only individual Class members.  These common legal or factual questions include:

a.    Whether Kashi and/or Kellogg labeled certain Kashi Products as "All Natural;"

b.    Whether Kellogg exercised control over or otherwise participated in the marketing, advertising or labeling of these Kashi Products;

c.    Whether Kashi Sales participated in the sales and distribution of the Kashi Products labeled "All Natural;"

d.    Whether products that contain Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Potassium Carbonate (a/k/a Cocoa processed with Alkali), Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and/or Xanthan Gum are "All Natural;"

e.    Whether Defendants' "All Natural" labeling of certain Kashi Products is and was likely to deceive Class members or the general public;

f.    Whether Defendants' representations are unlawful; and

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

g.  The appropriate measure of damages, resitutionary disgorgement and/or restitution.

86.   Common questions of law or fact exist as to all members of the Nothing Artificial Class.   These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include:

a.  Whether Kashi and Kellogg labeled certain Kashi Products as "Nothing Artificial;"

b.  Whether Kellogg exercised control over or otherwise participated in the marketing, advertising or labeling of these Kashi Products;

c.  Whether Kashi Sales participated in the sales and distribution of the Kashi Products labeled "Nothing Artificial;"

d.  Whether Kashi's products labeled "Nothing Artificial" contained one or more artificial substances;

e.  Whether Defendants' "Nothing Artificial" labeling of the Kashi Products is likely to deceive class members or the general public;

f.  Whether Defendants' representations are unlawful; and

g.  The appropriate measure of damages, restitutionary disgorgement and/or restitution.

87.   Plaintiffs' claims are typical of the claims of the All Natural Class, in that Plaintiffs were consumers who purchased Kashi's "All Natural" food products in the United States that contained non-natural, synthetic and/or artificial ingredients during the relevant period.   Plaintiffs, therefore, are no different in any relevant respect from any other All Natural Class member, and the relief sought is common to the All Natural Class.

88.   Plaintiffs Espinola's, Larsen's and Littlehale's claims are also typical of the claims of the Nothing Artificial Class, in that these Plaintiffs were consumers who purchased Kashi's "Nothing Artificial" food products in the United States that contained artificial ingredients during the relevant period.   These Plaintiffs, therefore, are no different in any relevant respect from any other Nothing Artificial Class member, and the relief sought is common to the Nothing Artificial Class.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

89.     Plaintiffs are adequate representatives of the All Natural Class because their interests do not conflict with the interests of the members of the All Natural Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the All Natural Class.

90.     Plaintiffs Espinola, Larsen and Littlehale are adequate representatives of the Nothing Artificial Class because their interests do not conflict with the interests of the members of the Nothing Artificial Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation.  These Plaintiffs and their counsel will adequately protect the interests of the Nothing Artificial Class.

91.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member of each of the Classes likely will be relatively small, especially given the relatively small cost of the Kashi Products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct.  Thus, it would be virtually impossible for members of the Classes individually to effectively redress the wrongs done to them.  Moreover, even if members of the Classes could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

92.     In the alternative, the Classes may be certified because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate preliminary and final equitable relief with respect to each Classes.

93.     Plaintiffs bring their claims on behalf of the nationwide All Natural Class, and Plaintiffs Espinola, Larsen and Littlehale on behalf of the nationwide Nothing Artificial Class.  In the alternative, Plaintiffs reserve their right to bring claims on behalf of appropriate sub-Classes or multi-state Classes or a statewide Class, as indicated, *supra*, at paragraph 26 n. 13.  Plaintiffs Astiana, Babick, Bolick, Colucci, Diaz, Espinola, Larsen, and Sethavanish purchased the Kashi Products during the relevant period in California; Plaintiff Chatham purchased the Kashi Products

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

during the relevant period in Massachusetts; Plaintiff Astiana purchased many of the Kashi Products during the relevant period in Oregon; and Plaintiff Littlehale purchased the Kashi Products during the relevant period in Pennsylvania.  Should the Court find that any of the Plaintiffs who made purchases outside of California may not raise California consumer fraud claims based upon those purchases, those Plaintiffs each have standing to bring consumer fraud claims under the laws in the states in which those purchases were made (*e.g.*, Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq*.,[54] Or. Rev. Stat. Ann. § 646.605, *et seq.*,[55] 73 Pa. Stat. Ann. § 201-1, *et seq.*[56]).  The same is also true for the express warranty claim based on state law (Third Cause of Action),[57] and for their common law claims based on state law.

### FIRST CAUSE OF ACTION
**(Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq***
**Violation of Written Warranty Under Federal Law)**

94.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class solely for breach of federal law.  This claim is brought by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class solely for breach of federal law.  This claim is not based on any violation of state law.

95.     The MMWA, 15 U.S.C. §§ 2301, *et seq*, creates a private federal cause of action for breach of "written warranty" as defined by the Act.  15 U.S.C. § 2301(6) and § 2310(d)(1).

---

[54] Mass. Gen. Laws Ann. ch. 93A, § 2 states that deceptive trade practices are unlawful, and Mass. Gen. Laws Ann. ch. 93A, § 9 provides a private right of action.

[55] Or. Rev. Stat. Ann. § 646.608 sets forth the definitions of unlawful practices, and Or. Rev. Stat. Ann. § 646.638 provides for a private right of action.

[56] 73 Pa. Stat. Ann. § 201-2 defines deceptive practices, 73 Pa. Stat. Ann. § 201-3 declares them unlawful, and 73 Pa. Stat. Ann. § 201-9.2 provides for a private right of action.

[57] California: Oregon: Or. Rev. Stat. Ann. § 72.3130 (2011); Massachusetts: Mass. Gen. Laws Ann. Ch. 106, § 2-313 (2011); Pennsylvania: 13 Pa. Cons. Stat. Ann. § 2313 (2011).

96.     The Kashi Products are "consumer products" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

97.     Plaintiffs and members of the Classes are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Kashi products for purposes other than resale.

98.     Defendants are entities engaged in the business of making the Kashi Products available, either directly or indirectly, to consumers such as Plaintiffs and the Classes.  As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

99.     Through their labeling, Defendants gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the Kashi Products.  As a result, Defendants are "warrantors" within the meaning of 15 U.S.C. § 2301(5).

100.    Defendants provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Kashi Products by identifying ingredients in the ingredients list on each of the Kashi Products, and then prominently affirming and promising in writing on the labeling of the Kashi Products that the Kashi Products were "All Natural" or "Nothing Artificial" as described in this Complaint.  These affirmations of fact regarding the nature and qualities of the ingredients in the Kashi Products constituted, and were intended to convey to purchasers, a written promise that:  a) the ingredients in the Kashi Products labeled "All Natural" were free of a particular type of defect (*i.e.,* that they were not synthetic or artificial), and b) the ingredients in the Kashi Products labeled "Nothing Artificial" were free of a particular type of defect (*i.e.,* that they were not artificial).  As such, these written promises and affirmations were part of the basis of Plaintiffs' and Classes' bargains with Defendants in purchasing the Kashi Products.

101.    Defendants breached the written warranty to the All Natural Class by failing to provide and supply Kashi Products that contained only non-synthetic, non-artificial ingredients. Likewise, Defendants breached the written warranty to the Nothing Artificial Class by failing to provide and supply Kashi Products free from any artificial ingredients.  Since the ingredients in the Kashi Products did not have the requisite qualities and character promised by Defendants written warranty, the Kashi Products were therefore not defect free, and did not comply with Defendants'

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

obligations under the written warranty to supply an "All Natural" product to Plaintiffs and the All Natural Class, or to supply a "Nothing Artificial" product to Plaintiffs Espinola, Larsen, Littlehale and the Nothing Artificial Class.

102.   Defendants were provided notice and a reasonable opportunity to cure the defects in the Kashi Products and remedy the harm to Plaintiffs and the Classes, but failed to do so, as set forth above in paragraphs 75-76.

103.   Plaintiffs and members of the Classes were injured by Defendants' failure to comply with their obligations under the written warranty, since Plaintiffs and members of the Classes paid for a product that did not have the promised qualities and nature, did not receive the non-synthetic, non-artificial defect-free food that was promised to them and that they bargained for, paid a premium for the Kashi Products when they could have instead purchased other less expensive alternative food products, and lost the opportunity to purchase and consume other, truly all-natural or non-artificial foods that would provide the type of non-synthetic and non-artificial ingredients promised and warranted by Defendants but which the Kashi Products failed to provide or were incapable of providing.

104.   Plaintiffs and the Classes therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

**SECOND CAUSE OF ACTION**
**(Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301,** *et seq.*
**Violation of Implied Warranty of Merchantability Under California State Law)**

105.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.  This claim is brought in the alternative to Counts I and III, in the event the Court finds that the statement "All Natural" or "Nothing Artificial" is not an express written warranty within the meaning of the MMWA.  This claim is based on the MMWA and state law.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

106.    The MMWA creates a federal cause of action for breach of an implied warranty of merchantability.  15 U.S.C. § 2310(d)(1).   Unlike a "written warranty," the term "implied warranty" under the MMWA is defined by reference to state law.  15 U.S.C. § 2301(7) ("The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.")  Thus, the MMWA creates a federal cause of action for breach of an implied warranty of merchantability arising under state law.

107.    The elements of the breach of implied warranty of merchantability claim under California law are met.

108.    Defendants made promises and affirmations of fact on the labels of the Kashi Products that the products were "All Natural" or "Nothing Artificial."

109.    As the manufacturers and distributors of the Kashi Products, Defendants are merchants with respect to the Kashi Products, and are, therefore, sellers of the Kashi Products.

110.    Plaintiffs and the Classes purchased the Kashi Products, and in the sale of the Kashi Products from Defendants to Plaintiffs and the Classes there arose an implied warranty that the products were merchantable.

111.    In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or label.

112.    Defendants breached that implied warranty of merchantability to Plaintiffs and the All Natural Class in that the labels of the Kashi Products promised that these products were "All Natural," but, contrary to that affirmation of fact, the Kashi Products contained ingredients which are synthetic and/or artificial.

113.    Defendants breached that implied warranty of merchantability to Plaintiffs and the Nothing Artificial Class in that the labels of the Kashi Products promised that these products contained "Nothing Artificial," but, contrary to that affirmation of fact, the Kashi Products contained ingredients which are artificial.

114.    As a result of Defendants' conduct, Plaintiffs did not receive merchantable goods as impliedly warranted by Defendants.

115.    As a proximate result of Defendants' breach of the implied warranty, Plaintiffs and the members of the Classes incurred damages.  Plaintiffs and members of the Classes were damaged as a result of Defendants' failure to comply with their obligations under the implied warranty, since Plaintiffs and members of the Classes paid for a product that did have the promised qualities and nature, did not receive the "All Natural" or "Nothing Artificial" foods that they bargained for, paid a premium for the Kashi Products when they could have instead purchased other less expensive alternative food products, and lost the opportunity to purchase and consume other, truly all-natural or non-artificial foods.

116.    Additionally, the remaining requirements of the MMWA are met.

117.    The Kashi Products are "consumer products" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

118.    Plaintiffs and the members of the Classes are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Kashi Products for purposes other than resale.

119.    Defendants are entities engaged in the business of making the Kashi Products available, either directly or indirectly, to consumers such as Plaintiffs and the Classes.  As such, Defendants are "suppliers" as defined in 15 U.S.C. § 2301(4).

120.    Defendants knew of, and caused, the Kashi Products to state on the product labels that the Kashi Products were "All Natural" or "Nothing Artificial."  These statements created an implied warranty of merchantability under state law in connection with the sales of the Kashi Products to Plaintiffs and the Classes.  As such, Defendants were obligated under an implied warranty of merchantability, and, accordingly, Defendants are "warrantors" as that term is defined at 15 U.S.C. § 2301(5).

121.    Defendants were provided notice and a reasonable opportunity to cure the defects in the Kashi Products and remedy the harm to Plaintiffs and the Classes, but failed to do so, as set forth above in paragraphs 75-76.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 11-CV-1967-H (BGS)

122.    Plaintiffs and the Classes therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d) and as available under state law.

### THIRD CAUSE OF ACTION
### (Breach of Express Warranty, Cal. Com. Code § 2313)

123.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.  This claim is brought in the alternative to Count I under state law.

124.    Defendants made express warranties to Plaintiffs and members of the Classes that the food products they were purchasing were "All Natural" or contained "Nothing Artificial."

125.    The "All Natural" express warranty made to Plaintiffs and the All Natural Class appear on every package of the Kashi Products labeled "All Natural" and were also reinforced by appearing in numerous other forms of advertising commissioned by Defendants Kashi and Kellogg. Likewise, the "Nothing Artificial" express warranty made to Plaintiffs and the Nothing Artificial Class appear on every package of the Kashi Products labeled "Nothing Artificial" and were also reinforced by appearing in numerous other forms of advertising commissioned by Defendants. These promises regarding the nature of the products marketed by Kashi and Kellogg, and distributed by Kashi Sales, specifically relate to the goods being purchased and became the basis of the bargain.

126.    Plaintiffs and the Classes purchased the Kashi Products in the belief that they conformed to the express warranties that were made on the Kashi Products' packaging.

127.    Defendants breached the express warranties made to Plaintiffs and members of the Classes by failing to supply goods that conformed to the warranties they made.  As a result, Plaintiffs and the members of the Classes suffered injury and deserve to be compensated for the damages they suffered.

128.    Plaintiffs and the members of the Classes paid money for the Kashi Products. However, Plaintiffs and the members of the Classes did not obtain the full value of the advertised products.  If Plaintiffs and other members of the Classes had known of the true nature of the

products, they would not have purchased the Kashi Products, would have purchased less of the Kashi Products or would not have been willing to pay the premium price associated with products that were truly "All Natural" or "Nothing Artificial."  Accordingly, Plaintiffs and members of the Classes have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

129.    Plaintiffs and the Classes are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**FOURTH CAUSE OF ACTION**
**("Unlawful" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*.)**

130.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.

131.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

132.    A business act or practice is "unlawful" if it violates any established state or federal law.

133.    California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, § 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

134.    Defendants violated, and continue to violate the Sherman Law, Article 6, Section 110660 and hence have also violated and continue to violate the "unlawful" prong of the UCL through their use of the term "All Natural" on the labels of food products that contained synthetic ingredients or artificial ingredients, including but not limited to Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Potassium Carbonate (a/k/a Cocoa processed with Alkali), Pyridoxine Hydrochloride,

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1   Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum.

2   Similarly, Defendants violated, and continue to violate the Sherman Law, Article 6, § 110660 and

3   hence have also violated and continue to violate the "unlawful" prong of the UCL through their use

4   of the term "Nothing Artificial" on the labels of food products that contained artificial ingredients,

5   including but not limited to Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and

6   Alpha-Tocopherol Acetate.   Defendants' identical conduct that violates the Sherman Law, also

7   violates FDCA § 403(a)(1), 21 U.S.C. § 343(a)(1), which declares food misbranded under federal

8   law if its "labeling is false and misleading in any particular."   This identical conduct serves as the

9   sole factual basis of each cause of action brought by this Complaint, and Plaintiffs do not seek to

10  enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that

11  which would violate FDCA § 403(a)(1).

12      135.   The MMWA also makes the breach of either a "written warranty" or an "implied

13  warranty" of merchantability a violation of federal law.   15 U.S.C. § 2310(d).   Defendants violated,

14  and continue to violate the MMWA as alleged in Counts I and II, and hence have also violated and

15  continue to violate the "unlawful" prong of the UCL, through their use of the term "All Natural" on

16  the labels of food products that contained synthetic or artificial ingredients, including but not limited

17  to Ascorbic Acid, Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy

18  Ingredients, Potassium Bicarbonate, Potassium Carbonate (a/k/a Cocoa processed with Alkali),

19  Pyridoxine Hydrochloride, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates,

20  Tocopherols, and Xanthan Gum.   Similarly, Defendants violated, and continue to violate the

21  MMWA as alleged in Counts I and II, and hence have also violated and continue to violate the

22  "unlawful" prong of the UCL, through their use of the term "Nothing Artificial" on the labels of

23  food products that contained artificial ingredients, including but not limited to Hexane-Processed

24  Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.

25      136.   By committing the unlawful acts and practices alleged above, Defendants have

26  engaged, and continue to be engaged, in unlawful business practices within the meaning of

27  California Business and Professions Code §§ 17200, *et seq.*

28

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

137.   Through their unlawful acts and practices, Defendants have obtained, and continue to unfairly obtain, money from members of the Classes.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all members of the Classes, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FIFTH CAUSE OF ACTION
### ("Unfair" Business Practices in Violation of
### The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)

138.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.

139.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code § 17200.

140.   A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

141.   Defendants have and continue to violate the "unfair" prong of the UCL through their misleading description of the Kashi Products as "All Natural," when indeed one or more ingredients in each of the Kashi Products are synthetic and/or artificial.  Likewise, Defendants have and continue to violate the "unfair" prong of the UCL through their misleading description of the Kashi Products as "Nothing Artificial," when indeed one or more ingredients in each of the Kashi Products are artificial.  The gravity of the harm to members of the Classes resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Defendants for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above,

Defendants have engaged, and continue to engage in unfair business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

142.    Through their unfair acts and practices, Defendants have obtained, and continue to unfairly obtain, money from members of the Classes.  As such, Plaintiffs have been injured and request that this Court cause Defendants to restore this money to Plaintiffs and the members of the Classes, to disgorge the profits Defendants have made on the Kashi Products and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

### SIXTH CAUSE OF ACTION
**("Fraudulent" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*)**

143.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.

144.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

145.    A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

146.    Defendants' acts and practices of mislabeling the Kashi Products as "All Natural" despite the fact that these products contain synthetic and artificial ingredients has the effect of misleading consumers into believing the products are something they are not.    Similarly, Defendants' acts and practices of mislabeling the Kashi Products as "Nothing Artificial" despite the fact that these products contain artificial ingredients has the effect of misleading consumers into believing the products are something they are not.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

147.   As a result of the conduct described above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiffs and members of the proposed Classes. Specifically, Defendants have been unjustly enriched by the profits they have obtained from Plaintiffs and the Classes from the purchases of the Kashi Products made by them.

148.   Through their unfair acts and practices, Defendants have improperly obtained, and continue to improperly obtain, money from members of the Classes.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and the Classes, to disgorge the profits Defendants have made on the Kashi Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein.  Otherwise, the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

**SEVENTH CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code §§ 17500, *et seq*.)**

149.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This cause of action is brought by Plaintiffs on behalf of themselves, the All Natural Class and the general public, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves, the Nothing Artificial Class and the general public.

150.   Defendants use advertising on the packaging to sell the Kashi Products.  Defendants are disseminating advertising concerning the Kashi Products which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500, *et seq.* because those advertising statements contained on Kashi Products' labels are misleading and likely to deceive, and continue to deceive, members of the putative Classes and the general public.

151.   In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500, *et seq.*

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

152.     The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500, *et seq.*

153.     Through their deceptive acts and practices, Defendants have improperly and illegally obtained money from Plaintiffs and the members of the Classes.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and the members of the Classes, and to enjoin Defendants from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above.  Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendants' false and/or misleading advertising.

154.     Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an Order of this Court ordering Defendants to fully disclose the true nature of their misrepresentations. Plaintiffs additionally request an Order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interest and attorneys' fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendants.  Plaintiffs and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

155.     Defendants' conduct is ongoing and continues to this date.  Plaintiffs and the Classes are therefore entitled to the relief sought.

**EIGHTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.*)**

156.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This Count is brought by Plaintiffs on behalf of themselves, the Class and the general public, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves, the Nothing Artificial Class and the general public.

157.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

158.   Plaintiffs and each member of the proposed Classes are "consumers" within the meaning of Civil Code § 1761(d).

159.   The purchases of the Kashi Products by consumers constitute "transactions" within the meaning of Civil Code § 1761(e) and the Kashi Products offered by Defendants constitute "goods" within the meaning of Civil Code § 1761(a).

160.   Defendants have violated, and continue to violate, the CLRA in at least the following respects:

> a.  in violation of Civil Code § 1770(a)(5), Defendants represented that the transaction had characteristics which it did not have;
>
> b.  in violation of Civil Code § 1770(a)(7), Defendants represented that their goods (*i.e*., the Kashi Products) were of a particular standard, quality or grade, which they were not; and
>
> c.  in violation of Civil Code § 1770(a)(9), Defendants advertised their goods (*i.e*., the Kashi Products) with the intent not to provide what it advertised.

161.   Defendants knew or should have known that their "All Natural" and "Nothing Artificial" representations in the context of the Kashi Products violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Classes.

162.   The "All Natural" representations were made to Plaintiffs and all members of the All Natural Class.  The "Nothing Artificial" representations were made to Plaintiffs Espinola, Larsen and Littlehale and all members of the Nothing Artificial Class.  As set forth in paragraphs 8-19 of this Complaint, Plaintiffs relied on the "All Natural" representations on Kashi's food product labels as a material basis for their decisions to purchase the "All Natural" Kashi Products.  As set forth in paragraphs 14-18 of this Complaint, Plaintiffs Espinola, Larsen and Littlehale relied on the "Nothing Artificial" representations on Kashi's food product labels as a material basis for their decisions to purchase the "Nothing Artificial" Kashi Products.  Moreover, based on the very materiality of Defendants' misrepresentations, concealments and omissions uniformly made on or omitted from its food product labels, reliance on those misrepresentations, concealments and omissions as a material

1    basis for the decision to purchase Kashi's food products may be presumed or inferred for all

2    members of the Classes.

3         163.   Defendants carried out the scheme set forth in this Complaint willfully, wantonly and

4    with reckless disregard for the interests of Plaintiffs and the Classes, and as a result, Plaintiffs and

5    the Classes have suffered an ascertainable loss of money or property.

6         164.   Plaintiffs and the members of the Classes request that this Court enjoin Defendants

7    from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above,

8    pursuant to California Civil Code § 1780(a)(2).  Unless Defendants are permanently enjoined from

9    continuing to engage in such violations of the CLRA, future consumers of Kashi's food products

10   will be damaged by its acts and practices in the same way as have Plaintiffs and the members of the

11   proposed Classes.

12        165.   On March 22, 2011, Plaintiff Astiana, through her counsel and pursuant to Civil Code

13   § 1782, sent Kashi a certified letter notifying Kashi of particular violations of Civil Code § 1770,

14   and demanding that Kashi repair, or otherwise rectify, problems associated with its illegal behavior

15   which are in violation of Civil Code § 1770.   Kashi accepted service of this letter, and then returned

16   it to Plaintiff Astiana unopened.  On April 5, 2011, through her counsel and pursuant to Civil Code §

17   1782, Kashi received and accepted a second notice in writing of particular violations of Civil Code §

18   1770 from Plaintiff Astiana, demanding that Kashi repair, or otherwise rectify, problems associated

19   with its illegal behavior which are in violation of Civil Code § 1770.  On September 12, 2011,

20   Plaintiffs Astiana, Colucci, and Sethavanish sent a third, supplemental letter to Kashi, through their

21   counsel and pursuant to Civil Code § 1782, notifying Kashi in writing of the particular violations of

22   Civil Code § 1770 and demanding that Kashi repair, or otherwise rectify problems associated with

23   its illegal behavior detailed above, which actions are in violation of Civil Code § 1770.   On

24   September 15, 2011, Rosaclaire Baisinger sent a letter by certified mail with return receipt requested

25   to Kashi, through her counsel and pursuant to Civil Code § 1782, notifying Kashi in writing of the

26   particular violations of Civil Code § 1770, and demanding that Kashi repair or otherwise rectify

27   problems associated with its illegal behavior detailed above.  On September 27, 2011, Plaintiff Diaz,

28   through her counsel and pursuant to Civil Code § 1782, sent separate letters by certified mail, return

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

receipt requested, to Defendants Kashi and Kellogg, notifying them in writing of the particular violations of Civil Code § 1770, and demanding that they repair or otherwise rectify the problems associated with their illegal behavior.  On October 20, 2011, Plaintiff Espinola, through her counsel and pursuant to Civil Code § 1782, sent a letter addressed to Kashi in both La Jolla, California and Battle Creek, Michigan, notifying Kashi in writing of the particular violations of Civil Code § 1770 and demanding that Kashi repair, or otherwise rectify the problems associated with its illegal behavior detailed above.  On October 31, 2011, Plaintiff Chatham, through his counsel and pursuant to Civil Code § 1782, sent separate letters by certified mail, return receipt requested, to Defendants Kashi and Kellogg, notifying them in writing of the particular violations of Civil Code § 1770, and demanding that they repair or otherwise rectify the problems associated with their illegal behavior.  On January 27, 2012, Plaintiff Babic, through his counsel and pursuant to Civil Code § 1782, sent a letter *via* certified mail to Kashi, pursuant to Civil Code § 1782, notifying Kashi in writing of the particular violations of Civil Code § 1770, and demanding that Kashi repair or otherwise rectify the problems associated with its illegal behavior.

166.   With respect to those violations of Civil Code § 1770 as to which notification was received and accepted by Defendants Kashi and Kellogg on or before January 20, 2012, Defendants Kashi and Kellogg failed to respond to Plaintiffs' demands within 30 days of Plaintiffs' notices.  As Defendants Kashi and Kellogg failed to respond to Plaintiffs' notices, Plaintiffs hereby request damages from Defendants as provided for in Civil Code § 1780:

a.     Actual damages in excess of the jurisdictional limits of this Court;

b.     statutory damages allowable under Civil Code § 1780;

c.     punitive damages; and

d.     any other relief which the Court deems proper; and court costs and attorneys' fees.

## NINTH CAUSE OF ACTION
### (Common Law Fraud)

167.   Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if they were fully written herein.  This claim is brought by Plaintiffs on behalf of themselves and

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1   the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and

2   the Nothing Artificial Class.

3       168.   Defendants' labels for the Kashi Products labeled "All Natural" uniformly

4   misrepresented that the Kashi Products were "All Natural" when in fact they contain synthetic or

5   artificial ingredients, including but not limited to Ascorbic Acid, Calcium Pantothenate, Calcium

6   Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium Bicarbonate, Potassium

7   Carbonate (a/k/a Cocoa processed with Alkali), Pyridoxine Hydrochloride, Sodium Acid

8   Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum.  While these

9   Kashi Products' labels did uniformly disclose that the purportedly "All Natural" Kashi Products

10   contained these ingredients,[58] the labels uniformly did not disclose that these ingredients were

11   synthetic or artificial.

12       169.   Thus, the claim on the Kashi Products' labels that these food products were "All

13   Natural" constitutes an affirmative act of concealment and non-disclosure since Ascorbic Acid,

14   Calcium Pantothenate, Calcium Phosphates, Glycerin, Hexane-Processed Soy Ingredients, Potassium

15   Bicarbonate, Potassium Carbonate (a/k/a Cocoa processed with Alkali), Pyridoxine Hydrochloride,

16   Sodium Acid Pyrophosphate, Sodium Citrate, Sodium Phosphates, Tocopherols, and Xanthan Gum

17   are all synthetic and/or artificial, non-natural ingredients.  Kashi had a duty to disclose this material

18   information in light of its representation on its labels that the food products were "All Natural."

19       170.   Likewise, Defendants' labels for the Kashi Products labeled "Nothing Artificial"

20   uniformly misrepresented that the Kashi Products contained "Nothing Artificial" when in fact they

21   contain artificial ingredients, including but not limited to Hexane-Processed Soy Ingredients,

22   Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate.  While the Kashi Products' labels did

23   uniformly disclose that the purportedly "Nothing Artificial" Kashi Products contained these

24   ingredients, the labels uniformly did not disclose that these ingredients were artificial.

25

26   _____

[58] The Potassium Carbonate contained in the alkalized cocoa as described herein was not separately

27   listed in all of Kashi's products that contain Potassium Carbonate, but was instead identified on the
labels as cocoa processed with alkali in most cases.  The hexane in the Soy Products was also not

28   disclosed on the packages.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

171.     Thus, the claim on the Kashi Products' labels that these food products contained "Nothing Artificial" constitutes an affirmative act of concealment and non-disclosure since Hexane-Processed Soy Ingredients, Pyridoxine Hydrochloride and Alpha-Tocopherol Acetate are all artificial ingredients.   Kashi had a duty to disclose this material information in light of its representation on its labels that the food products contained "Nothing Artificial."

172.     Defendants' "All Natural" and "Nothing Artificial" statements and representations and their affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of the Kashi Products would have considered them important when deciding whether or not to purchase the products.

173.     Defendants knew or recklessly disregarded that the Kashi Products were not "All Natural" or "Nothing Artificial," and Defendants uniformly misrepresented these food products as "All Natural" and "Nothing Artificial" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers (*i.e.,* Plaintiffs and the Classes) to purchase Kashi's food products.

174.     Defendants failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiffs and the Classes knowing that these facts may have justifiably induced them to refrain from purchasing the Kashi Products and instead purchase another manufacturer's products that were actually all natural or free of artificial ingredients, or to purchase a less expensive non-natural or artificial substitute product.

175.     As set forth in paragraphs 8-19 of this Complaint, Plaintiffs relied on Defendants' "All Natural" representations on the Kashi Products' labels as a material basis for their decisions to purchase the Kashi Products labeled "All Natural."   As set forth in paragraphs 14-18 of this Complaint, Plaintiffs Espinola, Larsen and Littlehale relied on Defendants' "Nothing Artificial" representations on the Kashi Products' labels as a material basis for their decisions to purchase the Kashi products labeled "Nothing Artificial."   Moreover, based on the very materiality of Defendants' misrepresentations, concealments and omissions uniformly made on or omitted from the Kashi products' labels, reliance on those misrepresentations, concealments and omissions as a

material basis for the decision to purchase Kashi's food products may be presumed or inferred for all members of the Classes.

176.    Defendants carried out the scheme set forth in this Complaint willfully, wantonly and with reckless disregard for the interests of Plaintiffs and the Classes.

177.    By reason of the foregoing, Plaintiffs and members of the All Natural Class have been injured by purchasing Kashi's food products represented to be "All Natural" which they were not, and/or by paying a premium for the supposedly "All Natural" food products over less expensive non-natural alternatives, and have suffered an ascertainable loss of money or property.  By reason of the foregoing, Plaintiffs Espinola, Larsen and Littlehale and members of the Nothing Artificial Class have been injured by purchasing Kashi's food products represented to contain "Nothing Artificial" which they were not, and/or by paying a premium for the supposedly "Nothing Artificial" food products over less expensive non-natural alternatives, and have suffered an ascertainable loss of money or property.  Plaintiffs and the Classes are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

### TENTH CAUSE OF ACTION
**(Restitution Based On Quasi-Contract/Unjust Enrichment)**

178.    Plaintiffs hereby incorporate by reference all other paragraphs of this Complaint and restate them as if fully rewritten herein.  Plaintiffs bring this Count on behalf of themselves and the All Natural Class, and by Plaintiffs Espinola, Larsen and Littlehale on behalf of themselves and the Nothing Artificial Class.  Plaintiffs plead this Count in the alternative.

179.    Defendants' conduct in enticing Plaintiffs and the Classes to purchase Kashi's food products through the use of false and misleading packaging as described throughout this Complaint is unlawful because the statements contained on the Kashi food products' labels are untrue. Defendants took monies from Plaintiffs and the All Natural Class for products promised to be "All Natural," even though the products they sold are not natural as specified throughout this Complaint, and contain artificial or synthetic ingredients as specified throughout this Complaint.  Likewise, Defendants took monies from Plaintiffs Espinola, Larsen and Littlehale and the Nothing Artificial

1   Class for products promised to contain "Nothing Artificial," even though the products they sold are

2   not natural as specified throughout this Complaint, and contain artificial ingredients as specified

3   throughout this Complaint.  Defendants have been unjustly enriched at the expense of Plaintiffs and

4   the Classes as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual

5   obligation on Defendants to restore these ill-gotten gains to Plaintiffs and the Classes.

6        180.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the

7   Classes are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

8   **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the

10   Classes and for the Counts so applicable on behalf of the general public request an award and relief

11   as follows:

12       A.    An order certifying that this action is properly brought and may be maintained as a

13   class action, that Plaintiffs be appointed All Natural Class Representatives, Plaintiffs Espinola,

14   Larsen and Littlehale be appointed Nothing Artificial Class Representatives and Interim Co-Lead

15   Class Counsel be appointed Co-Lead Counsel for the Classes.

16       B.    Restitution in such amount that Plaintiffs and all members of the All Natural Class

17   paid to purchase Kashi's "All Natural" food products or paid as a premium over non-natural

18   alternatives, or restitutionary disgorgement of the profits Kashi obtained from those transactions, for

19   Causes of Action for which they are available.

20       C.    Restitution in such amount that Plaintiffs Espinola, Larsen and Littlehale and all

21   members of the Nothing Artificial Class paid to purchase Kashi's "Nothing Artificial" food products

22   or paid as a premium over non-natural alternatives, or restitutionary disgorgement of the profits

23   Kashi obtained from those transactions, for Causes of Action for which they are available.

24       D.    Compensatory damages for Causes of Action for which they are available.

25       E.    Statutory damages allowable under Civil Code § 1780.

26       F.    Other statutory penalties for Causes of Action for which they are available.

27       G.    Punitive Damages for Causes of Action for which they are available.

28

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

1    H.    A declaration and Order enjoining Defendants from advertising the Kashi Products

2  misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other

3  applicable laws and regulations as specified in this Complaint.

4    I.    An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees

5  and pre- and post-judgment interest.

6    J.    An Order requiring an accounting for, and imposition of, a constructive trust upon all

7  monies received by Defendants as a result of the unfair, misleading, fraudulent and unlawful conduct

8  alleged herein.

9    K.    The prayers for relief requested herein as they pertain to First Cause of Action (¶¶ 94-

10  104, herein) do not and shall not be read to exceed the "[d]amages and other legal and equitable

11  relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as

12  provided in 15 U.S.C. § 2310(d).

13    L.    Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

15    Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

16  DATED:  February 21, 2012

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

**STEMBER FEINSTEIN DOYLE**
    **PAYNE & KRAVEC, LLC**

By: _ s/Joseph N. Kravec, Jr. _____
      Joseph N. Kravec, Jr. (*pro hac vice*)

Wyatt A. Lison (*pro hac vice*)
Maureen Davidson-Welling (*pro hac vice*)
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Phone:  (412) 281-8400
Fax:  (412) 281-1007
jkravec@stemberfeinstein.com
wlison@stemberfeinstein.com
mdavidsonwelling@stemberfeinstein.com

**FARUQI & FARUQI, LLP**

By: _ s/Vahn Alexander via consent _____
      Vahn Alexander (#167373)

Christopher B Hayes (#277000)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA  90024
Phone:  (424) 256-2884
Fax:  (424) 256-2885
Email: valexander@faruqilaw.com
       chayes@faruqilaw.com

Nadeem Faruqi (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331
nfaruqi@faruqilaw.com

*INTERIM CO-LEAD CLASS COUNSEL*


*ADDITIONAL PLAINTIFFS' COUNSEL:*

Michael D. Braun (#167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax:    (310) 836-6010
service@braunlawgroup.com

Janet Lindner Spielberg (#221926)
**LAW OFFICE OF JANET LINDNER
SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax:    (310) 278-5938
jlspielberg@jlslp.com

Rosemary M. Rivas (#209147)
Danielle A. Stoumbos (#264784)
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Phone: (415) 398-8700
Fax: (415) 398-8704
rrivas@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com

Jason S. Hartley (#192514)
**STUEVE SIEGEL HANSON LLP**
550 West C Street, Suite 610
San Diego, CA 92101
Phone:  (619) 400-5822
Fax:  (619) 400-5832
hartley@stuevesiegel.com

Bruce D. Greenberg (*pro hac vice*)
**LITE DePALMA GREENBERG, LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

Michael Louis Kelly (#82063)
Behram V. Parekh (#180361)
Heather M. Petersen (#261303)
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue
Fourth Floor
El Segundo, CA 90245
Phone: (310) 536-1000
Fax: (310) 536-1001
mlk@kirtlandpackard.com
byp@kirtlandpackard.com
hmp@kirtlandpackard.com

69

Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Marc L. Godino (#182689)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Phone: (310) 201-9150
Fax:: (310) 201-9160
info@glancylaw.com

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA    )
               )  ss.:
COUNTY OF ALLEGHENY   )

    I am employed in the County of Allegheny, Commonwealth of Pennsylvania.  I am over the age of 18 and not a party to the within action.  My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, Pennsylvania 15219.

    On February 21, 2012, I served the document(s) described as:

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES,
EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**

**[ X ] BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**
I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

    Executed on February 21, 2012, at Pittsburgh, Pennsylvania.

                s/Joseph N. Kravec, Jr.
                Joseph N. Kravec, Jr.

CONSOLIDATED AMENDED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief;
Case No. 11-CV-1967-H (BGS)