**FARUQI & FARUQI, LLP**
Vahn Alexander (167373)
Christopher B. Hayes (277000)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA  90024
Phone: (424) 256-2884
Fax: (424) 256-2885
Email:  valexander@faruqilaw.com
          chayes@faruqilaw.com

**STEMBER FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC**
Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
Maureen Davidson-Welling (admitted *pro hac vice*)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA  15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
          wlison@stemberfeinstein.com
          mdavidsonwelling@stemberfeinstein.com

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BATES, VANESSA GIBSON, on behalf of themselves and all others similarly situated, | Case Number: 11-cv-1967-H (BGS) |
| | CLASS ACTION |
| Plaintiffs, | **JOINT PLAINTIFFS' OPPOSITION TO THE BATES PLAINTIFFS' MOTION TO RECONSIDER APPOINTMENT OF THE STEMBER/FARUQI GROUP AS INTERIM CO-LEAD COUNSEL** |
| v. | |
| KASHI COMPANY, a California corporation, KELLOGG COMPANY, a Delaware corporation, DAVID DENHOLM, DAVID DESOUZA, and DOES 1-100, | Judge: Hon. Marilyn Huff<br>Date:   March 26, 2012<br>Time:  10:30 a.m.<br>Ctrm:  13 |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.   The Bates Plaintiffs Fail To Address Why They Are Entitled To Reconsideration As A
     Matter Of Law......................................................................................................................... 4

     A.   Legal Standard .............................................................................................................. 4

     B.   CSPI And The F&M Firm Were Involved In This Litigation *Before* The Bates Plaintiffs
          Filed Their Motion For Appointment Of Interim Lead Counsel ..................................... 5

     C.   Any Allegations Regarding Similarities Between The *Bates* Complaint And The Initial
          Complaints Filed By The Stember/Faruqi Group Have Already Been Considered And
          Rejected By The Court.................................................................................................... 6

II.  The Stember/Faruqi Group Remains The Best Choice To Represent The Class As Interim
     Co-Lead Counsel Pursuant To Rule 23(g) ............................................................................. 6

     A.   The Rule 23(g) Standard ................................................................................................ 6

     B.   This Court Should Not Allow The Bates Plaintiffs To Re-Litigate The Appropriateness
          of Assigning An Executive Committee Structure In This Case ...................................... 7

     C.   CSPI And The F&M Firm Are Not The Best Choice To Represent The Class ............... 8

          1.   Center For Science In The Public Interest (CSPI)............................................... 9

          2.   Francis & Mailman, P.C. ...................................................................................... 10

          3.   The Golan Firm And Flashpoint Law.................................................................... 11

III. The Stember/Faruqi Group's Consolidated Complaint Moots Any Challenges To Any Initial
     Pleadings .............................................................................................................................. 12

     A.   The *Diaz* Complaint Differs In Significant Ways From the *Bates* Complaint ............... 12

     B.   The Stember Firm's Complaint Was Not "Skeletal"..................................................... 14

     C.   The Bates Plaintiffs' "First-Filed" Argument Has Already Been Rejected By This Court
          *And* The Court In The Naked Juice Action.................................................................... 16

CONCLUSION ...................................................................................................................... 18

i

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                           **PAGE(S)**

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  Case No. 10-cv-4387-PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .............................14

*Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc.*,
  Case No. 4:10-cv-307-BLW, 2010 U.S. Dist. LEXIS 106443 (D. Idaho October 4, 2010) .....7

*Carlin v. Dairy America, Inc.*,
  2009 U.S. Dist. LEXIS 50493 (E.D. Cal. May 29, 2009)....................................................8, 17

*Doyle v. Rich*,
  Case No. CA. NO. 5570, 1978 Del. Ch. LEXIS 541 (Del. Ch. June 21, 1978) .....................16

*In re Auction Houses Antitrust Litig.*,
  Case No. 00CIV.0648 (LAK), 2001 U.S. Dist. LEXIS 1989 (S.D.N.Y. Feb. 23, 2001) ........13

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)........................................................................................................12

*In re Century Bus. Servs. Sec. Litig*,
  202 F.R.D. 532 (N.D. Ohio 2001) .............................................................................................16

*In re Chase Bank USA, N.A., "Check Loan" Contract Litig.*,
  MDL No. 2032, No. 09-2032 MMC (N.D. Cal. June 26, 2009) ..................................................8

*In re Goodyear Tire & Rubber Co. ERISA Litig.*,
  Case No. 5:03-cv-02182, 2004 U.S. Dist. LEXIS 26706 (N.D. Ohio Apr. 22, 2004)..............16

*In re Oclaro, Inc. Deriv. Litig.*,
  Case No. C-11-3176, 2011 U.S. Dist. LEXIS 103967 (N.D. Cal. Sept. 14, 2011) ................12

*In re Rail Freight Fuel Surcharge Antitrust L*itig,
  MDL Docket No. 1869, 2008 U.S. Dist. LEXIS 34229 (D.D.C. Apr. 28, 2008).................... 8

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
  No. 3:11-md-02258-AJB-MDD (S.D. Cal. November 30, 2011) ..............................................8

*Kaminske v. JP Morgan Chase Bank, N.A., et al.*,
  Case No. SACV09-00918 JVS, 2011 U.S. Dist. LEXIS 16764 (C.D. Cal. Jan. 3, 2011) .16, 17

*King v. VeriFone Holdings, Inc.*,
  12 A.3d 1140 (Del. 2011) .......................................................................................................15

*Parker v. United States*,
  Case No. CV 96-984, 1996 U.S. Dist. LEXIS 16557 (S.D. Cal. Oct. 24, 1996).....................5

ii

*Sandys v. Naked Juice Co. et al.,*
    Case No. 11-08007 JAK (PLA) (C.D. Cal.) ................................................................. *passim*

*Sexton ex rel. Jones Soda Co. v. Van Stolk,*
    Case No. 07-1782RSL, 2008 U.S. Dist. LEXIS 32986 (W.D. Wash. Apr. 10, 2008) ............13

*Walker v. Discover Financial Servs., et al.,*
    Case No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803 (N.D. Ill. May 26, 2011) .....................17

*Whitaker v. Health Net of California,*
    Case No. 11-cv-00910-KJM-DAD (E.D. Cal. July 22, 2011) ....................................................8

*Yearous v. Pacificare of Cal.,*
    554 F. Supp. 2d 1132 (S.D. Cal. 2007) ................................................................................4, 5

**STATUTES**

California Civil Code §1780(d) ...........................................................................................................15

California Civil Code §1782 ................................................................................................................15

Fed. R. Civ. P. 23(g) ..................................................................................................................... *passim*

1    Plaintiffs Skye Astiana, Milan Babic, Timothy Bolick, Joe Chatham, James Colucci, Tamara

2  Diaz, Martha Espinola, Tamar Larsen, Mary Littlehale, and Kimberly S. Sethavanish (collectively

3  "Joint Plaintiffs"), by and through their attorneys, hereby submit this memorandum in opposition to

4  plaintiffs Michael Bates' and Vanessa Gibson's (collectively the "Bates Plaintiffs") "Motion to

5  Reconsider Appointment of the Stember/Faruqi Group as Interim Co-Lead Counsel" (the "Bates

6  Motion").[1]

7                                    **INTRODUCTION**

8    In a transparent attempt to take another bite at the apple, the Bates Plaintiffs seek to replace

9  Faruqi & Faruqi, LLP (the "Faruqi Firm") and Stember Feinstein Doyle Payne & Kravec, LLC (the

10  "Stember Firm") (collectively the "Stember/Faruqi Group") as Interim Co-Lead Counsel with

11  purportedly "new" counsel consisting of Francis & Mailman, P.C. (the "F&M Firm") and the

12  Center for Science in the Public Interest ("CSPI") (together with The Golan Firm ("Golan Firm"),

13  the "Bates Group").  In the alternative, the Bates Group request to be named as Interim Co-Lead

14  Counsel with the Stember/Faruqi Group.

15    On its face, it is apparent that the Bates Motion is *not* a motion for reconsideration, but

16  rather a renewed motion for interim lead counsel which must be denied for numerous reasons.  At

17  the outset, the Joint Plaintiffs note that the Bates Motion is *not* timely.  Pursuant to Civil Local Rule

18  7.1(i)(2), any motion for reconsideration must be filed within twenty-eight (28) days after entry of

19  the order sought to be reconsidered.  This Court's Order appointing the Stember/Faruqi Group as

20  Interim Co-Lead Counsel was entered on January 18, 2012.  *See* Docket Entry #41 (the "Interim

21  Co-Lead Counsel Order").  However, the Bates' Motion was filed late, on February 17, 2012, two

22  days *after* the twenty-eight (28) day deadline indicated by Civil Local Rule 7.1(i)(2).

23

24  _____

[1] On February 21, 2012, pursuant to this Court's Order dated January 18, 2012 (Docket Entry #41),
25  the Joint Plaintiffs filed their "Consolidated Amended Complaint for Damages, Equitable,
Declaratory and Injunctive Relief" (the "Consolidated Complaint").  *See* Docket Entry #49.  The
26  Consolidated Complaint is the operative pleading in this consolidated action and added certain
named plaintiffs which are included in the Joint Plaintiffs group.
27

28
JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1    The Bates Motion should also be denied because the Bates Plaintiffs do not satisfy the legal

2    standard for filing a motion for reconsideration pursuant to Civil Local Rule 7.1(i).  For example,

3    "highly unusual" circumstances do not exist in this case.  In addition, the Bates Plaintiffs have not

4    provided the Court with *any* newly discovered evidence.  Nor do the Bates Plaintiffs argue that the

5    Court committed clear error, that the Interim Co-Lead Counsel Order was manifestly unjust, or that

6    there has been an intervening change in controlling law.

7    On the contrary, as to the belated inclusion of CSPI and F&M in these proceedings, the

8    Bates Plaintiffs admit that "CSPI has been a key voice in the litigation *almost from the beginning* –

9    advising and working with Ms. Golan shortly after she filed the *Bates* suit."[2]  *See* Bates Motion,

10   page 2.  The Bates Plaintiffs also admit that Ms. Golan had numerous discussions and meetings

11   with the F&M Firm as early as November of 2011, which was *prior* to the filing of their motion for

12   appointment of interim lead counsel on December 30, 2011.  *See* Declaration of Yvette Golan filed

13   in Support of Bates Motion ("Golan Decl."), Docket Entry #48-8, ¶¶10, 18-24.  Thus, since CSPI

14   *and* the F&M Firm could have joined Ms. Golan in the Bates Plaintiffs' initial motion for interim

15   lead counsel, there is no reason to consider this untimely request.  *See* Docket Entry #23 (proposing

16   that the Golan Firm and Berg & Androphy ("B&A Firm") (collectively the "B&A Group")) be

17   appointed interim lead counsel).

18   The foregoing arguments, standing alone, are more than enough to warrant denial of the

19   Bates Motion.  Nevertheless, the following facts further weigh in favor of Joint Plaintiffs' position.

20   After the Court denied the B&A Group's Motion, the B&A Firm – the firm that the Golan Firm

21   aligned itself with ahead of the F&M Firm or CSPI – clearly abandoned this litigation.  *See* Docket

22   Entry #46 (Bates Plaintiffs' motion to substitute counsel).  Moreover, the B&A Firm *also*

23   abandoned another action, *Sandys v. Naked Juice Co. et al.,* Case No. 11-08007 JAK (PLA) (C.D.

24   Cal.) (the "Naked Juice Action").

25

26

27   _____

[2] At all times, emphasis is added and internal citations are omitted unless otherwise indicated.

28   
JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1    As in this case, the Golan Firm realigned itself with its second choices for co-lead counsel,

2  CSPI and the F&M Firm, in the Naked Juice Action in a last minute attempt to gain a leadership

3  position in that litigation.  Unfortunately for the Bates Group, on March 5, 2012, and for essentially

4  the same reasons that the initial B&A Group's motion was denied in this case, the motion for

5  appointment as interim lead counsel by the Bates Group in the Naked Juice Action was denied.  In

6  that case, the court found that the competing application for appointment of interim lead counsel

7  was superior (which included the law firms of Glancy Binkow & Goldberg, LLP and Finkelstein

8  Thompson, LLP – proposed executive committee members in this case).  The court in the Naked

9  Juice Action also rejected the Bates Group's "first-filed" and "copycat" arguments, and also

10  recognized the lack of experience of the Golan Firm in litigating plaintiff class actions.  Further, the

11  court in that case appeared to question the inclusion of certain causes of action in the Golan Firm's

12  complaint such as assault and battery and conspiracy.

13    As in the Naked Juice Action, none of the firms constituting the Bates Group are more

14  experienced or qualified than the Stember/Faruqi Group to be interim lead counsel in this case.

15  This Court has already rejected the Golan Firm's petition for an interim lead counsel role as Ms.

16  Golan lacks the experience and resources of the Stember/Faruqi Group.  Likewise, the F&M Firm

17  does not have food labeling or other relevant consumer class action experience, and has no

18  experience litigating cases under California's consumer protection laws.  Similarly, while CSPI may

19  have food labeling experience, it is not better suited to be interim lead counsel.  As noted above, the

20  Naked Juice Action court rejected its petition to be appointed interim lead counsel.  Moreover,

21  CSPI's politically activist agenda may not sufficiently ally with the interest of the proposed class in

22  this case, which would be better served by private counsel who are primarily concerned with

23  promoting the interests of this particular class, and not some broad political agenda which may be

24  adverse to the interests of the proposed class.

25    Under these circumstances, there is no reason to grant the Bates Motion.  In rejecting the

26  Bates Plaintiffs' original motion for appointment of interim lead counsel, the Court found that the

27  only factor slightly weighing in their favor concerned the work done by counsel in identifying or

28

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

investigating the action.  *See* Interim Co-Lead Counsel Order, pages 3-4; *see also* Rule 23(g)(i). However, with the filing of the Consolidated Complaint by the Joint Plaintiffs, this factor now weighs in favor of the Stember/Faruqi Group.  *See* Consolidated Complaint, Docket Entry #49 (operative complaint of approximately 470 pages which includes 36 exhibits, ten causes of action, and ten named plaintiffs).  Thus, it is undeniable that the Stember/Faruqi Group has filed the superior pleading in this action.  For these reasons and those discussed more thoroughly below, the Bates Motion should be denied in its entirety and with prejudice.

## ARGUMENT

### I.   The Bates Plaintiffs Fail To Address Why They Are Entitled To Reconsideration As A Matter Of Law

#### A.  Legal Standard

In their untimely request, the Bates Plaintiffs *never* address the legal standards regarding a motion for reconsideration.  In order to properly bring a motion to reconsider an order of the Court, the appropriate standard is set forth in Civil Local Rule 7.1(i) which states in pertinent part:

> Whenever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part, or has been granted conditionally or on terms, and a subsequent motion or application or petition is made for the same relief in whole or in part upon the same or any alleged different state of facts, it will be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) *what new or different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application.*

*See* Civil Local Rule 7.1(i)(1).  "Absent 'highly unusual circumstances,' reconsideration is appropriate only where (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, (3) there is an intervening change in controlling law."  *Yearous v. Pacificare of Cal.*, 554 F. Supp. 2d 1132, 1140 (S.D. Cal. 2007).  "A motion for reconsideration cannot be based on evidence that could reasonably have been discovered *prior* to the court's ruling on the original motion."  *Id.* "Whether to grant or deny a

4

motion for reconsideration is in the sound discretion of the district courts." *Id.*  Furthermore, "Local Rule 7.1(i)(1) requires that a motion for reconsideration identify what **new or different facts and circumstances** are claimed to exist which did not exist upon prior application." *Parker v. United States,* Case No. CV 96-984, 1996 U.S. Dist. LEXIS 16557 at *21 (S.D. Cal. Oct. 24, 1996).

The Bates Plaintiffs fail to address **any** of the foregoing factors.  There is certainly nothing "highly unusual" about these proceedings.  Moreover, the Bates Plaintiffs cannot allege: (1) that this Court committed a clear error or reached an "unjust" result; (2) that there has been a change in the applicable law governing the appointment of interim lead counsel; or that (3) there is newly discovered evidence that did not exist before entry of the Interim Co-Lead Counsel Order.  *See* Docket Entry #41.

> **B.**     **CSPI And The F&M Firm Were Involved In This Litigation *Before* The Bates Plaintiffs Filed Their Motion For Appointment Of Interim Lead Counsel**

As noted above, the Bates Plaintiffs admit that CSPI has been involved in this litigation from the outset, and as early as mid-September 2011.  *See* Bates Motion at 2; *see also* Golan Decl., Docket Entry #48-8, ¶¶10, 18-24.  The Bates Plaintiffs also admit that Ms. Golan had numerous discussions and meetings with the F&M Firm concerning this case, as early as November of 2011. *Id.* at ¶¶21-22.  Therefore CSPI's and the F&M Firm's involvement in this case was known well **before** the Bates Plaintiffs filed their initial motion for appointment of interim lead counsel on December 30, 2011.  *See* Docket Entry #23.  In fact, CSPI's involvement in the case was **first** mentioned in Ms. Golan's declaration in support of the Bates Plaintiffs' original motion for appointment of interim lead counsel.  *See* Docket Entry #23-3, ¶16.  Hence, the fact that the Bates Plaintiffs **chose** not to include CSPI or the F&M Firm in their interim lead counsel motion hardly satisfies the requirements for filing a motion for reconsideration.  In other words, these are not "newly discovered facts or circumstances" under the auspices of Civil Local Rule 7.1(i)(1).

**C.**   **Any Allegations Regarding Similarities Between The *Bates* Complaint And The Initial Complaints Filed By The Stember/Faruqi Group Have Already Been Considered And Rejected By The Court**

The parties have already briefed and argued any issues concerning purported similarities between the Stember/Faruqi Group's initial complaints and the *Bates* Complaint.   Furthermore, these arguments have already been considered and rejected by the Court by way of the Interim Co-Lead Counsel Order.   Thus, the Bates Plaintiffs' reiteration of the same arguments does not warrant reconsideration of the Interim Co-Lead Counsel Order.   All pleadings at issue were available to the Court and all parties before the interim lead counsel issue was decided.   As such, the content of these pleadings can hardly be considered "newly discovered fact[s] or circumstance[s]" pursuant to Civil Local Rule 7.1(i)(1).   Moreover, with the filing of the Consolidated Complaint, it is clear that this operative pleading is far superior to the complaint filed by the Bates Plaintiffs.   Therefore, there is no basis to consider the Bates Motion in this regard and it should be denied with prejudice.

**II.**   **The Stember/Faruqi Group Remains The Best Choice To Represent The Class As Interim Co-Lead Counsel Pursuant To Rule 23(g)**

**A.**   **The Rule 23(g) Standard**

Under Rule 23(g)(3), a "court may designate interim counsel to act on behalf of a putative class *before* determining whether to certify the action as a class action."   Rule 23(g)(1)(A) provides that the court must consider the following factors when appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class."   *See* Fed. R. Civ. P. 23(g)(1)(A).

Pursuant to the Interim Co-Lead Counsel Order issued by this Court, the Stember/Faruqi Group, in comparison to the B&A Group, was found to be "best able to represent the interests of the potential class" under the requirements of Rule 23(g).   *See* Interim Co-Lead Counsel Order, Docket Entry #41, page 6.   In making this determination, the Court stated that the Stember/Faruqi Group

1  was (1) more experienced in handling class actions, particularly food labeling cases; and (2) was

2  able to commit more resources to the representation of the class.  *Id.* at pages 5-6.

3      The Stember/Faruqi Group still brings the most experience and resources to this litigation,

4  despite the substitution of CSPI and the F&M Firm as counsel for the Bates Plaintiffs.  Moreover,

5  while the B&A Group may have believed that the work they did in investigating the claims at issue

6  "strongly" favored the appointment of their group as interim class counsel, this Court stated that it

7  only weighed ***slightly*** in favor of the B&A Group.  *Id.* at page 4.  Furthermore, even though the

8  B&A Firm abandoned this litigation, the substitution of the F&M Firm and CSPI does not alter the

9  analysis.

10      The Stember/Faruqi Group, as Interim Co-Lead Counsel for the proposed class, has

11  proceeded to carry out further investigation, committing significant resources towards researching

12  the allegations contained within the new Consolidated Complaint.  *See, e.g.,* Consolidated

13  Complaint, Docket Entry #49.  As evidenced by the Consolidated Complaint, it is clear that the

14  Stember/Faruqi Group has far surpassed the Bates Group in this regard.  Thus, entry of the Interim

15  Co-Lead Counsel Order is even more appropriate than before.

16      **B.    This Court Should Not Allow The Bates Plaintiffs To Re-Litigate The**

17          **Appropriateness of Assigning An Executive Committee Structure In This Case**

18      Despite the Bates Plaintiffs' arguments to the contrary, the appointment of an Executive

19  Committee is a common practice in complex class action litigation and provides the class with the

20  expertise and resources that can match those available to large corporations, such as defendants in

21  this action. *See Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of*

22  *Idaho, Inc.*, Case No. 4:10-cv-307-BLW, 2010 U.S. Dist. LEXIS 106443, *6 (D. Idaho October 4,

23  2010) (appointing plaintiffs' executive committee of nine members and one chair where counsel

24  assured the court that there would be no unnecessary duplication of work).  Moreover, numerous

25  courts have appointed a similar co-lead and executive committee structure in complex class actions

26

27

28

7

1    such as the case at bar.[3]  *In re Rail Freight Fuel Surcharge Antitrust L*itig, MDL Docket No. 1869,

2    2008 U.S. Dist. LEXIS 34229 at *14 (D.D.C. Apr. 28, 2008) ("The Court concludes that the five

3    firms proposed for membership on the Executive Committee have earned their nominations based

4    on their experience on the work they already have done, that they are eminently qualified to serve as

5    Executive Committee members, and that they would best serve the interests of the class.").

6        Although the Bates Plaintiffs may argue that the formation of the Stember/Faruqi Group and

7    its accompanying Executive Committee was the result of some sort of "back-room deal" – this is

8    not the case.  See Bates Motion, page 8.  Courts have recognized that just because firms seconded to

9    an Executive Committee position support firms vying for Interim Co-Lead Counsel, this does not

10   mean that the recommendation that they be appointed to an Executive Committee was the result of

11   an "inappropriate quid pro quo" in the absence of other corroborating evidence.  *In re Rail Freight*

12   *Fuel Surcharge Antitrust Litig.*, 2008 U.S. Dist. LEXIS 34229 at *11.  Moreover, no such evidence

13   has been presented in this case.  Hence, rearguing the Executive Committee matter is unwarranted.

14   The parties' position has already been fully briefed and argued and the parties are awaiting a ruling

15   on the Executive Committee issue from the Court.  S*ee* Docket Entry ##42, 45.

16       **C.    CSPI And The F&M Firm Are Not The Best Choice To Represent The Class**

17       Substituting CSPI and the F&M Firm for the B&A Firm, which abandoned this action, does

18   not warrant granting the Bates Motion.  On the contrary, a review of each of the firms constituting

19   the Bates Group weighs in favor of denying the motion.

20

21

22   [3] *See e.g., Carlin v. Dairy America, Inc.*, 2009 U.S. Dist. LEXIS 50493 (E.D. Cal. May 29, 2009)
     (appointing interim class, executive committee, and liaison counsel); *In re Sony Gaming Networks*
23   *and Customer Data Security Breach Litigation*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.
     November 30, 2011) (Docket Entry #60) (appointing five firms to plaintiffs' steering committee and
24   two firms as liaison counsel); *Whitaker v. Health Net of California*, Case No. 11-cv-00910-KJM-
     DAD (E.D. Cal. July 22, 2011) (Docket Entry #33) (appointing three firms as co-lead interim
25   counsel, one firm as liaison counsel and seven firms to executive committee); *In re: Chase Bank*
     *USA, N.A., "Check Loan" Contract Litig.*, MDL No. 2032, No. 09-2032 MMC (N.D. Cal. June 26,
26   2009) (Docket Entry #22) (appointing attorneys from six firms to executive committee, one firm as
27   liaison counsel, and a member of each firm to the steering committee).

28
JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1        **1.        Center For Science In The Public Interest (CSPI)**

2        CSPI, a public interest organization, declares in its mission statement that it is a "consumer

3    advocacy organization whose twin missions are to conduct innovative research and advocacy

4    programs in health and nutrition and to provide consumers with current, useful information about

5    their health and well-being."[4]   While this mission is laudable, CSPI's agenda as a public interest

6    group, which undoubtedly represents many special interests, may not parallel what is best for the

7    class in any given litigation.   Thus, if CSPI is appointed Interim Co-Lead Counsel, it may well

8    advocate the agenda of certain special interests to the detriment of the class.   In other words, a lead

9    counsel role should not be a policy platform or a place to pursue a political agenda.

10       Moreover, CSPI and the F&M Firm have not hesitated to use CSPI's role as a nonprofit

11   "public interest" group to their advantage in other food related litigation.   In the Naked Juice

12   Action, evidence of CSPI's willingness to play "hardball" has been disclosed.   According to a

13   declaration submitted in that case, on February 6, 2012, James Francis of the F&M Firm

14   approached Ms. Tina Wolfson and solicited her to join CSPI, the F&M Firm and the Golan Firm in

15   vying for a co-lead counsel position.   *See* Declaration of Vahn Alexander ("Alexander Decl.") filed

16   herewith, *Exhibit A*.   However, Ms. Wolfson had already agreed to join with other counsel in a

17   leadership structure, *i.e.,* the "Pappas Group."  *Id.*   Mr. Francis further stated that "...unless Sandys'

18   counsel [CSPI, the Golan Firm and the F&M Firm] get a leadership position, CSPI would object to

19   any settlement that the Pappas Group may reach on behalf of the class in the future."   Thus, Mr.

20   Francis argued, "it behooves the Pappas Group to have CSPI 'on your side.'"   *Id.* at ¶3.   This

21   exchange questions whether CSPI will act in the best interests of the class if it were named lead

22   counsel, and also illustrates that the F&M Firm appears to only be concerned with their leadership

23   position, as opposed to what's best for the proposed class.

24       The Bates Motion further states that CSPI "has been a key voice in the litigation from the

25   very beginning - advising and working with Ms. Golan…"  *See* Bates Motion, page 2.   If this is

26

27   [4]  *See* Center for Science in the Public Interest Mission Statement, *available at:*
     http://www.cspinet.org/about/mission.html.

28

9

1   true, then one must ask why the B&A Firm was originally chosen as counsel for the Bates

2   Plaintiffs' *over* CSPI.   Thus, it is questionable that CSPI's representation would be in the best

3   interest of the class since they were ***not*** the Bates Plaintiffs' first choice to represent them in this

4   action.

5               **2.      Francis & Mailman, P.C.**

6         Although the F&M Firm does have some experience in class action cases, these cases appear

7   to primarily deal with debt collection and unlawful credit reporting.[5]   It is also apparent that the

8   F&M Firm lacks any experience in food labeling class actions.   Moreover, Mr. David A. Searles

9   and Mr. James A. Francis, the two attorneys from the F&M Firm appearing in this case, have never

10  served as class counsel in California.   A review of their declarations indicates that most of the cases

11  in which they have been certified as class counsel have been litigated in Pennsylvania, which is

12  where their firm is located.   *See, e.g.,* Declaration of James A. Francis in Support of Bates Motion

13  ("Francis Decl."), Docket Entry #48-5; *see also* Declaration of David A. Searles in Support of Bates

14  Motion ("Searles Decl."), Docket Entry #48-4.   Furthermore, the F&M Firm consists of only six

15  attorneys, in contrast to the exceptional resources that the Stember/Faruqi Group can contribute to

16  this consolidated action.

17        As such, the addition of the F&M Firm to this litigation contributes no additional value for

18  the proposed class.   As with CSPI, the F&M Firm was not the Bates Plaintiffs' first choice for

19  counsel in this case.   Further, the F&M Firm does not have experience litigating in California

20  courts, does not have food labeling or other relevant consumer class action experience, and adds an

21  insignificant amount of resources to this litigation, all from attorneys who are not licensed to

22  practice in California.   Thus, the F&M Firm seems to suffer from the same lack of consumer class

23  action experience as the B&A Firm.

24

25

26  _____

27  [5]    *See*   Francis   &   Mailman,   P.C.   Firm   Website,   *available   at:*
    http://www.consumerlawfirm.com/class_action.html.

28

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

### 3.      The Golan Firm And Flashpoint Law

The Stember/Faruqi Group has already extensively briefed the Golan Firm's lack of qualifications and experience in plaintiff's class action litigation, therefore, it will refrain from doing so once again in the interest of judicial efficiency.  *See* Joint Plaintiffs' Opposition to Plaintiffs Bates' and Gibson's Motion for Appointment of the B&A Group as Interim Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(2), Docket Entry #33, pages 9-11.  Further, this Court has already determined that the Stember/Faruqi Group has superior experience and greater resources to commit to this litigation.  *See* Interim Co-Lead Counsel Order, Docket Entry #41, pages 5-6.  Nothing has changed in this regard.

In addition, Ms. Golan confirmed her inexperience regarding plaintiffs' class action litigation in the Naked Juice Action.  In that case, Ms. Golan sent an email to another firm in the course of that litigation stating that she had "botched up a great deal" in both the Naked Juice Action and in the instant case while representing the Bates Plaintiffs.  *See, e.g.,* Alexander Decl., *Exhibit B*, ¶2.  Ms. Golan also stated that her class action "experience plaintiff-side is zip."  *Id.*  In short, by her own admission, the Golan Firm does not have the requisite knowledge, experience or resources to prosecute this action.

Similarly, Mr. Shirish Gupta, Bates Plaintiffs' local counsel, also lacks the relevant experience, knowledge and resources to take a leadership role in this case.  Mr. Gupta is a sole practitioner and although he has been "counsel of record in numerous class actions involving California law," it appears that he has never served as lead counsel.  *See, e.g.,* Declaration of Shirish Gupta in Support of Bates Motion ("Gupta Decl."), Docket Entry #48-7.  Moreover, Mr. Gupta, as local counsel for the Bates Plaintiffs, did not appear at this Court's January 17, 2012 hearing regarding the Bates Plaintiffs' motion for appointment of interim lead counsel, illustrating his overall lack of commitment to this case.

### III.   The Stember/Faruqi Group's Consolidated Complaint Moots Any Challenges To Any Initial Pleadings

The Bates Plaintiffs reiteration of their "copycat," "skeletal," and "first-filed," arguments are unconvincing and without merit.  As the Bates Plaintiffs are well aware, these arguments have already been considered and rejected not only in this case, but in the Naked Juice Action as well. Nevertheless, the Bates Plaintiffs cite certain authority in support of these arguments which are inapposite at best.[6]

Moreover, this Court has already recognized that the Stember/Faruqi Group completed substantial work towards identifying and investigating potential claims in this action.  *See* Interim Co-Lead Counsel Order, Docket Entry #41, page 4.  In any event, any arguments in this regard in the Bates Motion are now moot with the filing of the Consolidated Complaint.  *See e.g.* Consolidated Complaint, Docket Entry #49 (operative pleading of 471 pages which includes 36 exhibits, 10 causes of action, and 10 plaintiffs).

### A.   The *Diaz* Complaint Differs In Significant Ways From the *Bates* Complaint

Even if the Court were to compare, once again, the complaint in *Diaz* with the complaint in *Bates,* it is readily apparent that the pleadings differ in significant ways.  Although elements of the *Bates* Complaint are included within the *Diaz* Complaint, considerable facts and allegations are excluded.  First and foremost, the *Diaz* Complaint is hardly a "copycat" complaint because there were **numerous errors** in the *Bates* Complaint, errors that were omitted in the *Diaz* Complaint.[7]

---

[6] In *Cendant,* the Third Circuit was considering an appeal of fee applications which were denied for firms that were **not** designated lead counsel.  *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 180-181 (3rd. Cir. 2005).  The court in that case denied fees to those firms which had merely filed a complaint, had not been designated lead counsel, and had contributed nothing else to the action.  *Id.* at 181.  The circumstances here are completely dissimilar as the Stember/Faruqi Group has been named Interim Co-Lead Counsel, and has done significantly more than file an initial complaint – as the Court has already recognized.  *See* Interim Co-Lead Counsel Order, Docket Entry #41, pages 3-4, 7.

[7] Additional cases cited by the Bates Plaintiffs are also easily distinguishable.  *In re Oclaro, Inc. Deriv. Litig.,* Case No. C-11-3176, 2011 U.S. Dist. LEXIS 103967 at *2 (N.D. Cal. Sept. 14, 2011), involved a derivative case, not a consumer class action.  Furthermore, the Court found that the "copycat" factor was just one **minor** factor to consider in a lead counsel dispute and that neither firm in the case was found to be a "copycat" despite tracking another complaint filed in a similar 10(b) action.  *Id.* at **8-9.  Therefore the fact that some facts and allegations were similar between

12

1    The *Bates* Complaint also asserts causes of action for Assault and Battery (Twelfth Claim) and

2    Conspiracy (Thirteenth Claim) which have no basis in a class action.  *See Bates* Complaint, Docket

3    Entry #1, ¶¶208-217.  The *Diaz* Complaint certainly did not include these causes of action because

4    it was extremely questionable that class certification could ever be achieved on these claims.

5    Additionally, the *Bates* Complaint also included claims for Unjust Enrichment (Sixth Claim) and

6    Negligence and Negligent Misrepresentation (Eleventh Claim) – claims not asserted in the *Diaz*

7    Complaint.  *Id.* ¶¶168-171, 197-200.

8            Second, the factual elements within the *Diaz* Complaint are different.  The *Diaz* Complaint

9    included allegations noting Kellogg Company's history of making false, misleading and

10   exaggerated health claims in regard to its food products – a history that led to a number of

11   investigations by the Federal Trade Commission.  These allegations are extensively detailed within

12   the *Diaz* Complaint.  *See Diaz* Complaint, ¶¶6-10.  These facts do not appear ***anywhere*** in the *Bates*

13   Complaint.

14           Third, certain ingredients contested in each complaint are different.  The *Diaz* Complaint

15   focused on four in-depth examples of unnatural ingredients: Hexane (soy byproducts), Xanthan

16   Gum, Potassium Carbonate and Ascorbic Acid.  *See Diaz* Complaint, ¶¶39-51.  The *Diaz* Complaint

17   then includes a number of other Unnatural Ingredients that she could definitively establish were

18   synthetic or unnatural.  *Id.* ¶¶51-53.  While the Faruqi Firm reviewed the ingredients in the *Bates*

19   Complaint, as any attorney should do when preparing a pleading, a number of ingredients were not

20   _____

21   the original 10(b) complaint and the derivative complaints was not enough to show it had copied the
     other.  *Id.* at *9.  In *Auction Houses,* the court made the claim about "finding a pot of gold" in
22   reference to a newspaper article in the New York Times that an auction house, Christie's, had
     disclosed to a government agency that it had engaged in a conspiracy with another auction house,
     Sotheby's.  *In re Auction Houses Antitrust Litig.,* Case No. 00CIV.0648 (LAK), 2001 U.S. Dist.
23   LEXIS 1989 at *8 (S.D.N.Y. Feb. 23, 2001).  Nothing of the sort is evident in this case.  Further,
24   counsel in *Auction Houses* still received fees, just not a multiplier of those fees.  *Id.* at *10.  The
     *Jones Soda* case is also a derivative case.  In that case, the plaintiff that filed the "copycat"
25   complaint was found by the court to have apparently no interest in the case, did not verify or review
     the complaint before filing and that plaintiff's counsel repeatedly failed to comply with local civil
26   rules.  *Sexton ex rel. Jones Soda Co. v. Van Stolk,* Case No. 07-1782RSL, 2008 U.S. Dist. LEXIS
     32986 at **4-5 (W.D. Wash. Apr. 10, 2008).  In contrast, the Stember/Faruqi Group has brought
27   new allegations to light with a Consolidated Complaint and has vigorously prosecuted this action.

28   _____

13

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1   included in the *Diaz* Complaint because it could not be definitively established that they were

2   unnatural or synthetic.  *See Diaz* Complaint, ¶¶51-53; *Bates* Complaint, Docket Entry #1, ¶¶39-77.

3   In short, the *Diaz* Complaint is hardly a verbatim "copycat" complaint and includes significant

4   differences from the *Bates* Complaint.  The Bates Plaintiffs want to have it both ways – they try to

5   accuse the Stember/Faruqi Group of "copying" their complaint, yet claim that the Stember/Faruqi

6   Group did not conduct a sufficiently thorough investigation.  None of the foregoing arguments

7   supports granting the Bates Motion.

8   **B.     The Stember Firm's Complaint Was Not "Skeletal"**

9   As this Court noted in the Interim Co-Lead Counsel Order, the Stember Firm "vetted each of

10  Kashi's products, researched federal statutes and regulations and investigated potential claims to be

11  brought against Kashi."  *See* Interim Co-Lead Counsel Order, Docket Entry #41, page 3.  As such,

12  the Court has already addressed the Bates Plaintiffs' "skeletal" arguments and found that overall the

13  Stember and Faruqi Firms completed substantial work in identifying and investigating potential

14  claims in this case.  *Id.* at page 4.  Further, the Stember/Faruqi Group has already addressed issues

15  relating to the *Sethavanish* Complaint in extensive briefing and in oral argument.  *See* Joint

16  Plaintiffs' Reply in Support of Their Motion to Appoint Interim Co-Lead Counsel Pursuant to Fed.

17  R. Civ. P. 23(g) and for Entry of Pretrial Order No. 1, Docket Entry #28, pages 7-9.  The same form

18  of complaint the Bates Plaintiffs characterize as "skeletal" has overcome highly contentious

19  motions to dismiss in other food mislabeling actions where counsel faced nearly every conceivable

20  argument why the use of a synthetic ingredient included in a food product labeled "All Natural"

21  fails to state a cause of action under California law, including: (a) that the use of a synthetic

22  ingredient does not violate U.S. Food and Drug Administration ("FDA") policies; (b) that the court

23  should abstain from deciding the case in deference to the FDA; (c) that plaintiffs in those cases

24  lacked standing to bring a claim; (d) that these same claims are preempted by federal law; (e) that

25  the allegations failed to meet Rule 9(b)'s pleading standards; and (f) attempts to strike their class

26  allegations.  *See Astiana v. Ben & Jerry's Homemade, Inc.*, Case No. 10-cv-4387-PJH, 2011 WL

27  2111796 (N.D. Cal. May 26, 2011).

28

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1    The Stember Firm also directly addressed allegations raised by the Bates Plaintiffs about

2 their Consumers Legal Remedies Act ("CLRA") letter in prior briefing.  *See* Joint Plaintiffs' Reply

3 in Support of Their Motion to Appoint Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)

4 and for Entry of Pretrial Order No. 1, Docket Entry #28, page 7 ("Stember investigated Kashi's

5 products and conduct for months before sending Kashi a CLRA letter on March 22, 2011 (some 5

6 months before *Bates* was filed or Bates Counsel sent their own CLRA letter.")).  Hence, to the

7 extent the Bates Plaintiffs state that the Stember Group only challenged three ingredients in their

8 CLRA letter, well before the Bates Complaint challenged "more than fifty ingredients," the

9 argument is of no consequence.  *See* Bates Motion, page 11.  What is of greater significance is

10 whether or not the Bates Plaintiffs' *ever* sent a CLRA letter as required by statute pursuant to

11 California Civil Code §1782.  Nor is it evident that the Bates Plaintiffs executed and filed the

12 appropriate CLRA affidavit(s) as required pursuant to California Civil Code §1780(d).  *See Bates*

13 Complaint, Docket Entry #1.  Neither of these items has ever been filed with the Court.

14    Indeed, the Bates Plaintiffs' latest representations about the Stember Group illustrate the

15 Bates Group's lack of ***basic investigation*** into Kashi's products.  The Bates Plaintiffs claim none of

16 Kashi's products contain citric acid.  Bates Motion, page 11.  Yet, citric acid is listed as an

17 ingredient in Kashi's Mexicali Black Bean Thin Crust Pizza (Docket Entry #49-36, page 44), a

18 product identified in the *Bates* First Amended Complaint as being falsely labeled.  Docket Entry

19 #13, page 10.  Likewise, the Bates Plaintiff claims Kashi's Mountain Medley Granola is not labeled

20 "all natural."  Bates Motion, pages 11-12.  This exemplifies the Bates Group's failure to do even the

21 simplest of investigations – *i.e.*, reading Kashi's packages – as the product is clearly labeled:  "Al̲l̲

22 Natural.  No preservatives or artificial sweeteners & flavors."  *See* Alexander Decl., *Exhibit C*.

23    In sum, the Bates Motion continues to attack the investigation carried out by the

24 Stember/Faruqi Group, despite the fact that their criticisms highlight their own lack of investigation,

25 and that these issues have already been considered and rejected by the Court.

26

27

28

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

**C.     The Bates Plaintiffs' "First-Filed" Argument Has Already Been Rejected By This Court *And* The Court In The Naked Juice Action**

The Bates Plaintiffs argue, once again, that since they won the "race to the courthouse," they should be named interim lead counsel.  *See* Bates Motion, page 14.  Of course, the Court has already considered and rejected this argument.  Moreover, the court in the Naked Juice Action similarly rejected the Bates Plaintiffs' "first-filed" argument on March 5, 2012.  In addition, and as the Bates Plaintiffs are well aware, the majority of case law has held that the "first-filed" complaint does ***not*** entitle counsel to a lead position.  *See e.g. In re Goodyear Tire & Rubber Co. ERISA Litig.*, Case No. 5:03-cv-02182, 2004 U.S. Dist. LEXIS 26706 (N.D. Ohio Apr. 22, 2004); *see also King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1151, f.n. 65 (Del. 2011) ("Being 'the first to file' does not automatically confer lead-plaintiff status…Both Delaware and federal courts generally consider various factors when selecting lead plaintiff (and lead counsel), the goal being to appoint the representative who will best serve the corporation and its shareholders and most effectively prosecute the litigation."); *Doyle v. Rich*, Case No. CA. NO. 5570, 1978 Del. Ch. LEXIS 541 at *2-3 (Del. Ch. June 21, 1978) ("a determination as to lead counsel in an action brought for the benefit of others should not be controlled by the winner of a race to the courthouse."); *In re Century Bus. Servs. Sec. Litig,* 202 F.R.D. 532, 536-537 (N.D. Ohio 2001) ("Counsel's first-to-file logic is precisely what the [P.S.L.R.A] sought to eradicate").  Further, Rule 23(g) fails to mention the issue of "first-filed" as a factor to consider when appointing lead counsel.

As for the cases relied upon in the Bates Motion, they are simply inapposite and have already been distinguished for the Court.  *See* Joint Plaintiffs' Opposition to Plaintiffs Bates' and Gibson's Motion for Appointment of the B&A Group as Interim Lead Counsel Pursuant to Fed. R. Civ. P. 23(g)(2), Docket Entry #33, pages 6-8.  For example, in *Kaminske*, the court noted the "extensive amount of research and discovery conducted" by the first-filed firm, including the fact that the first-filed firm in that case:

> ha[d] propounded eight sets of discovery requests and six sets of interrogatories, prevailed on two motions to compel and obtained various other forms of discovery from three meet and confer sessions with opposing counsel. [The first-filed firm] ha[d] also taken seven depositions, interviewed over 50 putative class

16

1
2

> members and reviewed thousands of documents. [The first filed firm] already ha[d] retained three consultants for [the] action and commissioned a company to conduct a survey on how loan officers perform their jobs, ultimately spending over $50,000 out of its own pocket thus far.

3   *See Kaminske v. JP Morgan Chase Bank, N.A., et al.,* Case No. SACV09-00918 JVS, 2011 U.S.

4   Dist. LEXIS 16764 at **7-8 (C.D. Cal. Jan 3, 2011).  In contrast to the first-filed firm in *Kaminske*,

5   the competing firm had not "conducted any meaningful discovery."  *Id.* at 8.  Additionally, the

6   Court found that the first filed firm in *Kaminske* had extensive experience litigating class action

7   suits.  *Id.* at 7.  For the reasons stated herein, this case is dramatically different from the facts in

8   *Kaminske.*

9        The other cases cited by the Bates Plaintiffs also fail to support their position.  In *Carlin v.*

10  *Dairy America, Inc.,* the two firms vying for Interim Co-Lead Counsel both had "adequate

11  experience in class actions and complex litigation, adequate knowledge of the applicable law and

12  abundant resources."  *See Carlin*, 2009 U.S. Dist. LEXIS 50493, at *7. Furthermore, the court

13  compared the complaints in the *Carlin* action and found them to be "almost identical."  *Id.*

14       *Walker* is also inapposite.  The court in *Walker* found that the two law firms in question,

15  Nagel Rice and Murray Frank, had "performed the most work in identifying and investigating

16  potential claims."  *Walker v. Discover Financial Servs., et al*., Case No. 10-cv-6994, 2011 U.S.

17  Dist. LEXIS 58803, at *11 (N.D. Ill. May 26, 2011).  Nagel Rice, the first-filed firm, engaged in

18  work including: "filing a consolidated class-action complaint," "drafting discovery that was served

19  on Discover and third-party vendors," "conducting meet-and-confer conferences with Discover's

20  counsel regarding discovery," "retaining an expert that specializes in claims" and "engaging in

21  negotiation with Discover regarding a potential class-wide settlement."  *Id.* at **12-13.  The *Walker*

22  court felt that the most relevant of that first-filing firm's efforts was coordination with another firm

23  and the filing of a consolidated class action complaint.  *Id.* at *13.  In this case, the Bates Group

24  carried out none of the things listed in *Walker*, and never coordinated with other firms that filed

25  actions in this consolidated litigation.  In contrast, the Stember/Faruqi Group has coordinated the

26  ongoing litigation, filed a Consolidated Complaint as the firms did in *Walker*, negotiated a briefing

27  schedule with defendants concerning a response to the Consolidated Complaint, and is moving

28

17

1  forward in the best interests of the proposed class pursuant to this Court's Interim Co-Lead Counsel

2  Order.

3  **<u>CONCLUSION</u>**

4          For all the reasons stated herein, the Joint Plaintiffs respectfully request that this Court deny

5  the Bates Motion in its entirety with prejudice.

6  Dated: March 12, 2012                    **FARUQI & FARUQI, LLP**

7

8                                           By:   ___/s/Vahn Alexander_____
                                                  VAHN ALEXANDER (#167373)

9                                           Christopher B. Hayes  (#277000)

10                                          10866 Wilshire Blvd., Suite 1470
                                            Los Angeles, CA 90024

11                                          Phone: (424) 256-2884
                                            Fax: (424) 256-2885

12                                          Email: valexander@faruqilaw.com
                                                   chayes@faruqilaw.com

13

14                                          **STEMBER FEINSTEIN DOYLE
                                            PAYNE & KRAVEC, LLC**

15                                          Joseph N. Kravec, Jr. (admitted *pro hac vice*)
                                            Wyatt A. Lison (admitted *pro hac vice*)

16                                          Maureen Davidson-Welling (admitted *pro hac vice*)
                                            429 Forbes Avenue

17                                          Allegheny Building, 17th Floor
                                            Pittsburgh, PA 15219

18                                          Phone: (412) 281-8400
                                            Fax: (412) 281-1007

19                                          Email: jkravec@stemberfeinstein.com
                                                   wlison@stemberfeinstein.com

20                                                 mdavidsonwelling@stemberfeinstein.com

21                                          *Interim Co-Lead Class Counsel*

22

23

24

25

26

27

28
JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI
GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document *via* the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

*/s/Vahn Alexander*
Vahn Alexander

JOINT PLAINTIFFS' OPP. TO BATES PLAINTIFFS' MOTION TO RECONSIDER APPT. OF STEMBER/FARUQI GROUP AS INTERIM CO-LEAD COUNSEL – Case No. 11-cv-1967-H (BGS)

## Mailing Information for a Case 3:11-cv-01967-H-BGS

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Vahn Alexander**
  valexander@faruqilaw.com,ecf@faruqilaw.com,ecfca@faruqilaw.com

- **Michael David Braun**
  service@braunlawgroup.com,mdb@braunlawgroup.com

- **Maureen Davidson-Welling**
  mdavidsonwelling@stemberfeinstein.com

- **Marc L. Godino**
  mgodino@glancylaw.com,info@glancylaw.com

- **Yvette Golan**
  ygolan@tgfirm.com

- **Shirish Gupta**
  sgupta@flashpointlaw.com,admin@flashpointlaw.com

- **Jason S Hartley**
  hartley@stuevesiegel.com,glover@stuevesiegel.com,BGreenberg@litedepalma.com

- **Michael L Kelly**
  mlk@kirtlandpackard.com,mfc@KirtlandPackard.com

- **Joseph N. Kravec , Jr**
  jkravec@stemberfeinstein.com,filings@stemberfeinstein.com

- **Kenneth Kiyul Lee**
  klee@jenner.com,edockets@jenner.com,docketing@jenner.com

- **Wyatt Lison**
  wlison@stemberfeinstein.com

- **Dean Nicholas Panos**
  dpanos@jenner.com

- **Behram Viraf Parekh**
  bvp@kirtlandpackard.com,mfc@kirtlandpackard.com,ks@kirtlandpackard.com

- **Heather Marie Peterson**
  hmp@kirtlandpackard.com

- **Rosemary M Rivas**
  rrivas@finkelsteinthompson.com,bassad@finkelsteinthompson.com,dthompson@finkelsteinthompson.com,mpunzalan@finkelsteinthompson.co

- **David A. Searles**
  dsearles@consumerlawfirm.com,dspang@consumerlawfirm.com

- **Kate Spelman**
  kspelman@jenner.com,docketing@jenner.com

- **Janet Lindner Spielberg**
  jlspielberg@jlslp.com

- **David Joshua Staub**
  djstaub@hotmail.com,djstaub@gmail.com

- **Richard P. Steinken**
  rsteinken@jenner.com,edockets@jenner.com,docketing@jenner.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Nadeem                    Faruqi
Faruqi and Faruqi
369 Lexington Avenue
10th Floor
```

New York, NY 10017

**James            A. Francis**
Francis & Mailman, PC
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110