**FARUQI & FARUQI, LLP**
Vahn Alexander (167373)
Christopher B. Hayes (277000)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA  90024
Phone: (424) 256-2884
Fax: (424) 256-2885
Email:  valexander@faruqilaw.com
       chayes@faruqilaw.com

**STEMBER FEINSTEIN DOYLE**
   **PAYNE & KRAVEC, LLC**
Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
Maureen Davidson-Welling (admitted *pro hac vice*)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA  15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
      wlison@stemberfeinstein.com
      mdavidsonwelling@stemberfeinstein.com

*Interim Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL BATES, VANESSA GIBSON, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>KASHI COMPANY, a California corporation, KELLOGG COMPANY, a Delaware corporation, DAVID DENHOLM, DAVID DESOUZA, and DOES 1-100,<br><br>          Defendants. | Case Number: 11-cv-1967-H (BGS)<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge: Hon. Marilyn Huff<br>Date:  July 9, 2012<br>Time:  10:30 a.m.<br>Ctrm:  13 |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     Legal Standards For A Motion To Dismiss .......................................................2

II.     Plaintiffs' Warranty Claims Should Be Permitted To Go Forward..................3

    A.     Plaintiffs Have Sufficiently Pled A Violation Of The MMWA Based Upon Breach Of An Express "Written Warranty".........................3

    B.     Plaintiffs Have Sufficiently Pled A Violation Of The MMWA Based Upon Breach Of An Implied Warranty of Merchantability....................6

    C.     Plaintiffs Have Sufficiently Pled Breach of Express Warranty Under California Law ......................................................................................8

III.    Plaintiffs' "All Natural" Claims Are Not Expressly Preempted By The FDA's "Natural" Policy..........................................................................................8

IV.    Whether a Reasonable Consumer Was Deceived by the All Natural Labels is a Question of Fact...........................................................................................13

V.     Plaintiffs' "All Natural" Claims Are Not Puffery............................................15

VI.    Defendants' Primary Jurisdiction Arguments Should Be Rejected...................17

VII.    Kellogg and Kashi Sales Should Remain As Defendants In This Action .........19

    A.     Kashi Operates as an Agent or Instrumentality of Kellogg .........................20

    B.     Kashi Sales Operates as the Agent or Alter Ego of Kashi...........................22

VIII.   Plaintiffs Properly State a Cause of Action for Unjust Enrichment ..................22

IX.    Plaintiffs' Fraud-Based Claims Satisfy Rule 9(b) ...........................................23

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Company*, 2010 WL 2925955 (E.D.N.Y. July 21, 2011) .......................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 3, 13

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796 (N.D.Cal., May 26, 2011) ....... *passim*

*Baas v. Dollar Tree Stores, Inc.*, 2007 WL 2462150 (N.D.Cal. Aug. 29, 2007).............................. 24

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011)................................................... 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 2, 13

*Brooks v. ComUnity Lending, Inc.*, 2010 WL 2680265 (N.D.Cal. Jul. 6, 2010) ............................ 24

*Browne v. Kline Tysons Imports, Inc.*, 190 F.Supp.2d 827 (E.D.VA. 2002) ...................................... 4

*Bruno v. Eckhart Corp.*, --- F.R.D. ----, 2012 WL 752090 (C.D.Cal. Mar. 6, 2012) ...................... 25

*Chacanaca v. Quaker Oats Co.*, 2010 WL 4055954 (N.D.Cal. Oct. 14, 2010) ........................... 9, 18

*Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359 (9th Cir. 2009) ............. 3, 13, 19, 25

*Chicago M. & S. P. R. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490 (1918)............ 20

*Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008)........................................................ 17

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) .................... 16

*Comerica Bank v. McDonald*, 2006 WL 3365599 (N.D.Cal. Nov. 17, 2006).................................. 24

*Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011)...................... 10, 11, 12

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) .................................................................... 20

*Eclectic Prop. East, LLC v. The Marcus & Millichap Co.*, 2012 WL 713289
   (N.D.Cal, Mar. 5, 2012)............................................................................................... 19

*Edmunson v. Proctor & Gamble Co.*, 2011 WL 1897625 (S.D.Cal. May 17, 2011) ...................... 16

*Eisinger v. Fed. Labor Relations Auth.*, 218 F.3d 1097 (9th Cir. 2000) .......................................... 5

*Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987)...................................................................... 25

*Fong v. United States*, 300 F.2d 400 (9th Cir. 1962) .................................................................. 24

*Fraker v. KFC Corp.*, 2007 WL 1296571 (S.D.Cal. April 30, 2007)............................................. 16

*Ghirardo v. Antonioli*, 14 Cal.4th 39 (Cal. 1996) ..................................................................... 23

*Goodman v. Perlstein*, 1989 WL 83452 (E.D.Pa. July 21, 1989).................................................... 4

*Hauter v. Zogarts*, 14 Cal.3d 104 (Cal. 1975) ............................................................... 7

*Henderson v. Gruma Corporation*, 2011 WL 1362188 (C.D.Cal. April 11, 2011) ..................... 8, 16

*Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 449190 (S.D.Cal. Feb. 4, 2009) ..................................... 9

*Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009) .............................................. 10

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................... *passim*

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 993 (S.D.Cal. 2011) ................. 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435 (N.D.Cal. Feb. 15, 2012) ........... 23

*Kelley v. Microsoft Corp.*, Case No. C-07-0475MJP, 2007 U.S. Dist. LEXIS 66721
     (W.D. Wash. Sept. 7, 2007) ............................................................................................. 5

*Kowalsky v. Hewlett-Packard Co.*, 771 F.Supp.2d 1138 (N.D.Cal. 2010) .................................. 24

*Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723 (Cal.Ct.App. 2000) .......................................... 23

*Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028 (N.D. Cal. 2009) ...................... 9, 16, 17, 18

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ..................................................................... 2

*Marine Midland Bank v. Carroll*, 98 A.D.2d 516 (N.Y. App. Div. 1984) .................................... 4

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir.2012) ............................................... 25

*Milgo Elec. Corp. v. United Business Communications, Inc.*,
     623 F.2d 645 (10th Cir. 1980) ................................................................................ 20, 21, 22

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ........................................................ 24

*Pac. Gas & Elec. Co. v. Jesse M. Lange Distrib.*, 2005 WL 3507968 (E.D.Cal. Dec. 21, 2005) ..... 20

*Papike v. Tambrands, Inc.*, 107 F.3d 737 (9th Cir. 1997) ...................................................... 12

*Paracor Fin., Inc., v. GE Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ...................................... 23

*People v. Bestline Prod., Inc.*, 61 Cal.App.3d 879 (Cal.Ct.App. 1976) ...................................... 19

*PlasPro GMBH v. Gens*, 2011 WL 1000755 (N.D.Cal. Mar. 21, 2011) ....................................... 20

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112 (C.D.Cal. 2009) ..... 18

*Ries v. Arizona Beverages USA LLC*, 2011 U.S. Dist. LEXIS 95532 (N.D. Cal. Aug. 25, 2011) .... 16

*Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................... 2

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ............................................................... 24

*Shum v. Intel Corp.*, 499 F.3d 1272 (Fed.Cir. 2007) .............................................................. 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT – Case No. 11-cv-1967-H (BGS)

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)...........................15

*Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S. Ct. 518, 154 L.Ed.2d 466 (2002)....................10

*Stoner v. Santa Clara County Office of Education*, 502 F.3d 1116 (9th Cir. 2007)..........................2

*Tylka v. Gerber Prods. Co.*, 1999 WL 495126 (N.D.Ill. July 1, 1999) ..............................17

*United States v. Bestfoods*, 524 U.S. 51 (1998) ....................................20

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010).................9, 10, 16

*Williams v. Gerber,* 552 F.3d 934 (9th Cir. 2009) ..................................13, 15

*Wolph v. Acer America Corp.*, 272 F.R.D. 477, 483 (N.D.Cal. 2011) ..............................25

*Wright v. General Mills, Inc.*, 2009 WL 3247148 (S.D.Cal. Sept. 30, 2009)..................................18

*Wyeth v. Levine*, 555 U.S. 555 (2009) ....................................19

*ZL Techs. Inc. v. Gartner, Inc.*, 2009 WL 3706821 (N.D.Cal. Nov. 4, 2009)..................................16

## Statutes

15 U.S.C. §2301 *et seq*...........................................................*passim*

15 U.S.C. §2301(6)(A)...................................................4, 5, 6

15 U.S.C. §2310(b) and (d)(1) ..........................................3

16 C.F.R. §700.3(a) and n.1 ............................................4

21 U.S.C. §343(a)(1) .....................................................12

21 U.S.C. §343-1(a) ...................................................9, 11

California Commercial Code §2314(2)(f) ..............................7

California Commercial Code § 2314(2) ..............................7

California Commercial Code §2313 ...................................3

California Commercial Code §2314 ..............................6, 7

California Commercial Code §2314(2)(c) ..............................7

FDCA §403(a)(1) ........................................................12

Federal Food Drug & Cosmetics Act ("FDCA"), 21 U.S.C. §§ 301, *et seq*...........................*passim*

## Other Authorities

*Article Two Warranties In Commercial Transactions: An Update*, 72 Cornell L. Rev. 1159, 1206-1207 (Fall 1987)........................................................7

iv

California Civil Jury Instructions §1231 (2012 ed.) ........................................................ 7

California Civil Jury Instructions §1233 (2012 ed.) ........................................................ 7

*Consumer Protection and the Law* §14:7 (2012) ............................................................ 4

*Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms;*
    *Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food,*
    58 Fed. Reg. 2,302, 2,397 (Jan. 6, 1993) ................................................................ 10

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 24

Fed. R. Civ. P. 9(b) ...................................................................................................... 24

**Regulations**

58 Fed. Reg. 2302, 2407 (Jan. 6, 2003) ........................................................................ 14

Final Rule, 60 Fed. Reg. 57076 (Nov. 13, 1995) ............................................................ 9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT – Case No. 11-cv-1967-H (BGS)

Plaintiffs Skye Astiana, Milan Babic, Timothy Bolick, Joe Chatham, James Colucci, Tamara Diaz, Martha Espinola, Tamar Larsen, Mary Littlehale, and Kimberly S. Sethavanish (collectively "Plaintiffs"), by and through their attorneys, hereby submit this memorandum in opposition to the Motion to Dismiss Consolidated Amended Complaint (Docket #61) (the "Motion") filed by defendants Kashi Company ("Kashi"), Kashi Sales, LLC ("Kashi Sales"), and Kellogg Company ("Kellogg") (collectively "Defendants").

## INTRODUCTION

Plaintiffs bring this action on behalf of a nationwide class of consumers who purchased Kashi food products marketed and sold by Defendants that were falsely labeled as "All Natural" and/or containing "Nothing Artificial," when in fact these products contained between one (1) and seven (7) distinctly unnatural, synthetic or processed ingredients, all but one of which are expressly recognized as synthetic chemicals by federal regulations (the "Unnatural Products").  ¶¶1-4, 37-53.[1] Plaintiffs were harmed by this false and misleading labeling since they purchased Kashi food products in the belief that the ingredients in them were "All Natural" or "Nothing Artificial" as the labels represented, but, unbeknownst to them at the time, they did not receive the "All Natural" and "Nothing Artificial" products they paid for.  ¶¶8-19.  Through the use of this false and misleading labeling, Defendants have been (and continue to be) able to sell these Unnatural Products falsely labeled as being "All Natural" and/or containing "Nothing Artificial" to thousands of unsuspecting consumers in California and throughout the United States.  ¶4.

Defendants' Motion to Dismiss is curious in that it argues for dismissal of claims not raised by Plaintiffs.  For example, Defendants argue for dismissal of a Magnuson-Moss Warranty Act ("MMWA") claim for a purported "specified level of performance over a specified period of time" written warranty that Plaintiffs *never* asserted.  Indeed, the only MMWA "written warranty" claim Plaintiffs asserted is under the "defect free" definition of written warranty.  Likewise, Defendants argue that the claims against Kellogg and Kashi Sales should be dismissed because Plaintiffs did not

[1] All "¶__" references are to Plaintiffs' Consolidated Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief (the "CAC")(Docket #49), and at all times emphasis is added and citations are omitted unless otherwise indicated.

sufficiently allege alter ego or agency with Kashi.  Again, Defendants completely ignore Plaintiffs numerous allegations of Kellogg's and Kashi Sales' ***direct participation*** in the misconduct at issue which is the primary reason why these Defendants are named here.

The rest of Defendants' arguments for dismissal fair no better.  Indeed, Defendants simply rehash arguments as to preemption, primary jurisdiction, the U.S. Food and Drug Administration's ("FDA") informal "natural" policy, state law warranty, unjust enrichment and fraud pleading, which have been squarely rejected by numerous courts, including this Court, who have denied motions to dismiss in other "All Natural" or similar food mislabeling cases.  *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011); *see also, infra*, pp. 15-16 (citing cases).  Accordingly, Defendants' Motion should be denied in its entirety.[2]

## ARGUMENT

### I.   Legal Standards For A Motion To Dismiss

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be dismissed only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1119 (N.D.Cal. 2009).  In considering a motion to dismiss, "allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff."  *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).  A district court should only grant a motion to dismiss when plaintiffs have not pled "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

---

[2] In a blatantly improper effort to dispute the facts in the CAC, Defendants assert that the unnatural ingredients in their food products are not really so bad, because the ingredients are used by other natural food companies, can in some cases occur naturally (although the versions in the Kashi products are synthetically derived), are permitted in "organic" foods, and aren't on Whole Foods' public list of unacceptable ingredients.  *See* Motion at 3-9.  Defendants erroneously cite *Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006), for the proposition that this Court can take judicial notice of these irrelevant facts and a number of irrelevant documents submitted in support thereof.  *See* Def. Mem. at 5, n.2.  However, *Marder* states that "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; ***and*** (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." 450 F.3d. at 448.   As ***none*** of the prongs of the *Marder* test are met here, there is no basis for this Court to consider these irrelevant facts and documents.

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "the motion [to dismiss] is ***not*** a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359, 360 (9th Cir. 2009).

## II.   Plaintiffs' Warranty Claims Should Be Permitted To Go Forward

Defendants challenge Plaintiffs' federal claims for breach of written and implied warranties in violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2301 *et seq.*, as well as their state law claims for breach of express warranty under California Commercial Code §2313.  As Defendants' arguments are unsupported by the applicable statutes and case law, Counts I-III of the CAC should be permitted to proceed.

### A.      Plaintiffs Have Sufficiently Pled A Violation Of The MMWA Based Upon Breach Of An Express "Written Warranty"

In a gross misreading of the MMWA, Defendants contend that Plaintiffs' claims for breach of express "written warranty" must be dismissed because "Kashi's alleged written warranties contain no durational language" and "[t]o constitute a written warranty under Magnuson Moss, the product must contain language that specifically identifies the duration of the warranty and a specified level of performance."  Motion at 11, 12.  This argument is meritless and provides no basis to dismiss Plaintiffs' claims, as Plaintiffs have pled their claims under an entirely separate prong of "written warranty" (*i.e.*, for "defect free" statements) to which the "specified level of performance over a specified period of time" requirement does not apply.

The MMWA creates a private federal cause of action for breach of either of two separate and independent types of "written warranty" which are specified by the statute.  *See* 15 U.S.C. §2310(b) and (d)(1).  A "written warranty" is defined by the MMWA to include:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free ***or*** will meet a specified level of performance over a specified period of time[.]

15 U.S.C. §2301(6)(A).[3]  Thus, to qualify as a "written warranty" under §2301(6)(A), a statement must either "affirm[] or promise[] that such material or workmanship is defect free," *or* must affirm or promise that the consumer product "will meet a specified level of performance over a specified period of time." *Id.*

The Federal Trade Commission ("FTC") implementing regulations for MMWA §2301(6)(A) confirm that "defect free" and "specified level of performance over a specified period of time" are separate types of statements each of which independently create a "written warranty" under MMWA.  *See* 16 C.F.R. §700.3(a) and n.1 ("[a] "written warranty" is also created by a written affirmation of fact or a written promise that the product is defect free, or by a written undertaking of remedial action within the meaning of section 101(6)(B)").  This interpretation is entitled to deference.  *See Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 831 (E.D.VA. 2002) (indicating the FTC's MMWA regulations are entitled to "considerable respect").

Case law and other materials further establish what is evident from the plain language of the statute, that "defect free" constitutes a second prong to which no "durational language" requirement applies.  *See* Motion at 22; *see also, Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 518-19 (N.Y.App.Div. 1984) (concluding that "written warranty" could be formed by a written affirmation of fact that the material or workmanship "is defect free;" finding "pre-delivery inspection" checklist to constitute a "written warranty" regardless of absence of any language identifying duration of the warranty or a specified level of performance); *Goodman v. Perlstein*, 1989 WL 83452, at *2 (E.D.Pa. July 21, 1989) (indicating statements such as "a particular diamond had no flaws" or "that the stone was rock-solid" or "impervious to chipping" would constitute defect-free warranties within the meaning of the MMWA).  *See also Consumer Protection and the Law* §14:7 (2012) (indicating "defect-free" and "will meet a specified level of performance over a specified period of time" are separate and distinct written warranties under 15 U.S.C. §2301(6)(A)).

---

[3]  The statute's use of the term "or" plainly indicates that a "written warranty" under the MMWA may be formed through the use of language making either affirmation or promise.  Moreover, the use of differing tenses in each provision reinforces the conclusion that the durational requirement applies to the future tense prong "*will meet* specified level of performance," specifically, and not to the present tense "*is* defect free" prong.  15 U.S.C. §2301(6)(A).

4

1    Plaintiffs in this case have **only** brought claims under a "defect free" theory.   ¶¶94-104.

2    Moreover, Plaintiffs have specifically pled: "Defendants provided a 'written warranty' within the

3    meaning of 15 U.S.C. §2301(6) for the [Unnatural] Products by identifying ingredients in the

4    ingredients list on each of the [Unnatural] Products, and then prominently affirming and promising

5    in writing on the labeling of the [Unnatural] Products that the [Unnatural] Products were 'All

6    Natural' or 'Nothing Artificial.'"   ¶100.   Clearly, when a food is the "consumer product" at issue,

7    the ingredients are the component **materials**, and statements about the identity and character of

8    those component **materials**, such as "All Natural" or "Nothing Artificial" constitute affirmations

9    that "relate[] to the nature of the **material** or workmanship" within the meaning of 15 U.S.C.

10   §2301(6)(A).  *Id.*   Further, as Plaintiffs have alleged, these "All Natural" and "Nothing Artificial"

11   statements "constituted, and were intended to convey to purchasers, a written promise that: a) the

12   ingredients in the [Unnatural] Products labeled "All Natural" were free of a particular type of defect

13   (*i.e.,* that they were not synthetic or unnatural), and b) the ingredients in the [Unnatural] Products

14   labeled "Nothing Artificial" were free of a particular type of defect (*i.e.,* that they were not

15   artificial)."  ¶100.

16   Thus, the "All Natural" and "Nothing Artificial" statements fall squarely within the category

17   of written statements that are actionable "written warranties" under the plain text of the MMWA.[4]

18   Given that Plaintiffs have sufficiently pled a "defect free" claim, Defendants' assertion that

19   Plaintiffs' claims should be dismissed because they cannot establish the "specified level of

20   performance over a specified period of time" prong of 15 U.S.C. §2301(6)(A) is meritless.

21   Moreover, the authorities upon which they rely - all of which pertain only to "specified level of

22   performance" allegations - are irrelevant.[5]

23
24   [4]  *See Eisinger v. Fed. Labor Relations Auth.*, 218 F.3d 1097, 1102 (9th Cir. 2000) ("[i]t is a well-recognized rule of statutory construction that the plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impractical results").

25
26   [5]  In *Kelley v. Microsoft Corp.*, the court specifically stated that it was analyzing the Act's definition
27   under the performance over time prong, and **not** under the "defect free" prong.  *Kelley v. Microsoft Corp.*, 2007 WL 2600841, at *3 (W.D.Wash. Sept. 7, 2007) ("[p]laintiffs argue that the 'Windows
28   Vista Capable' sticker falls within the second prong of 2301(6)(A), that is, it promises a 'specified level of performance over a specified period of time'").  The *Kelley* court also distinguished a

5

Plaintiffs need only plead allegations sufficient to establish a breach of **one** of the MMWA's definitions of a "written warranty." 15 U.S.C. §2301(6)(A). They have, and as such, their claims for breach of express warranty under the MMWA should go forward.

**B.      Plaintiffs Have Sufficiently Pled A Violation Of The MMWA Based Upon Breach Of An Implied Warranty of Merchantability**

Defendants acknowledge that the MMWA "permits claims based on an implied merchantability theory," but contend that Plaintiffs' claims are "facially invalid" because they have not pled that the Unnatural Products were unfit for their ordinary purpose of human consumption. *See* Motion at 22-23. Once again, Defendants misleadingly ask the Court to dismiss based upon requirements **that do not apply** to Plaintiffs' claims, a contention this Court squarely rejected in another food labeling case. *See Ferrero, supra.*, 794 F. Supp. 2d at 1118.

Pursuant to California Commercial Code §2314, every contract for the sale of goods includes a warranty of merchantability. *Id.* A good is **not** merchantable if it fails to satisfy **any** of the definitions of §2314:

> Goods to be merchantable **must be at least such as**: (a) Pass without objection in the trade under the contract description; **and** (b) In the case of fungible goods, are of fair average quality within the description; **and** (c) Are fit for the ordinary purposes for which such goods are used; **and** (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units

---

number of cases in which plaintiffs alleged the existence of "defect free" warranties as being inapposite, because they involved "guarantees that were not performance related." *Id.*

Other cases relied upon by Defendants are also inapposite as they do not contemplate claims brought under the "defect free" prong of 15 U.S.C. §2301. In *Skelton v. General Motors Corp.*, the operative complaint specifically pled that the representations in question warranted that the products "would meet a specified level of performance." *Skelton v. General Motors Corp.*, 660 F.2d 311, 312 (7th Cir. 1981). The lower court properly held that by pleading a statement of a level of performance, without pleading a corresponding period of time, plaintiffs had failed to state a claim. *Id.* at 316, n.7. *States v. BFG Electroplating & MFG. Co.* held that an advertisement for cinderblocks was not a "written warranty" under the performance over time prong, and made no mention whatsoever of any allegation that the advertisement constituted a promise that the product was "defect free." *States v. BFG Electroplating & MFG. Co.*, 1989 WL 222722, at *10 (W.D. Pa. Oct. 18, 1989). In *Simmons v. Taylor Cildre Chevrolet-Pontiac, Inc.*, the court rejected the contention that the term "new" transformed a seller's invoice into a "written warranty," not because of the absence of a durational element, but because "new" could not be read as implying any level of performance. *Simmons v. Taylor Cildre Chevrolet-Pontiac, Inc.*, 629 F.Supp. 1030, 1032 (M.D.Ga. 1986).

involved; *and* (e) Are adequately contained, packaged, and labeled as the agreement may require; *and* (f) Conform to the promises or affirmations of fact made on the container or label if any.

Cal. Com. Code §2314(2); *see also* Debra L. Goetz *et al.*, *Article Two Warranties In Commercial Transactions: An Update*, 72 Cornell L. Rev. 1159, 1206-1207 (Fall 1987) ("[v]iolation of any one of these standards constitutes a breach of the implied warranty of merchantability").  Plaintiffs have clearly established a breach of implied warranty based upon §2314(2)(f).  *See* ¶¶105-122.

Although Plaintiffs sufficiently pled a breach of implied warranty based upon Cal. Com. Code §2314(2)(f), Defendants erroneously assert that Plaintiffs' claims should be dismissed because the Unnatural Products were fit for their ordinary purpose (*i.e.*, there was no violation of §2314(2)(c)).  *See* Motion at 22-23.  However, there is simply no requirement that Plaintiffs must establish a violation under §2314(2)(f) *and* §2314(2)(c) to pursue a claim for breach of implied warranty of merchantability, and none of the authorities cited by Defendants suggests otherwise.[6] Indeed, this Court recently rejected the same argument made by Defendants in this case in another food labeling case:

> Although Ferrero argues that Nutella® is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with "the promises or affirmations of fact made on the container or label." Cal. Com. Code §2314(2)(f).  Accordingly, the Court declines to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.

*Ferrero*, 794 F. Supp. 2d at 1118.[7]  For the same reasons the Court declined to dismiss plaintiffs' implied warranty claims in *Ferrero*, the Court should deny Defendants' Motion.

---

[6] Defendants rely upon *Hauter v. Zogarts*, 14 Cal.3d 104 (Cal. 1975), to argue that a plaintiff must establish a violation of both definitions of merchantability in order to state a claim.  *See* Motion at 22-23.  However, it is apparent from *Hauter* that the court there treated the product's failure to conform to statements on its labeling and the product's unfitness for ordinary use as *two separate breaches* of the implied warranty of merchantability, each of which was independently actionable, and that its discussion of physical injury was relevant only to its consideration of the fitness for ordinary use prong.  *Hauter*, 14 Cal.3d at 117-119.  Defendants citation to California Civil Jury Instructions §1233 (2012 ed.) is equally unconvincing.  The instruction makes clear that it is intended for use under circumstances where a plaintiff alleges that the food is *unfit for human consumption*.  Here, the appropriate instruction on Plaintiffs' implied warranty of merchantability claim is California Civil Jury Instructions §1231 (2012 ed.), which indicates that a merchantability claim may proceed under any ground set forth at California Commercial Code § 2314(2).

[7] Defendants' meager attempt at distinguishing *Ferrero* by claiming that "[n]o party in *Ferrero* briefed the proper scope of the requirement that a product conform to the affirmations of fact on the

7

**C.    Plaintiffs Have Sufficiently Pled Breach of Express Warranty Under California Law**

Defendants also contend that Plaintiffs' claims for breach of express warranty under California law should be dismissed, because they are "non-actionable puffery" and such "subjective statements cannot support a claim for breach of express warranty."  Motion at 23.  This argument is easily refuted by the available case law.

"All Natural" and "Nothing Artificial" claims such as those asserted by Plaintiffs have been specifically held by courts to be sufficiently definite and objective to constitute an express warranty that a product does not contain artificial or synthetic ingredients.  *See Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D.Cal. Apr. 27, 2012) ("plaintiffs stated a breach of warranty claim where potato products designated "All Natural" contained an arguably synthetic ingredient); *Ferrero*, 794 F. Supp. 2d at 1117 (statements were sufficiently "specific and unequivocal" to state claim for breach of express warranty); *Henderson v. Gruma Corporation*, 2011 WL 1362188, at *10-11 (C.D.Cal. April 11, 2011) (rejecting argument that "all natural" constituted "non-actionable puffery").  Accordingly, Defendants' Motion in this regard should be denied.[8]

**III.    Plaintiffs' "All Natural" Claims Are Not Expressly Preempted By The FDA's "Natural" Policy**

Despite the fact that numerous district courts in this Circuit have rejected preemption in "All Natural" mislabeling cases, Defendants improperly contend that Plaintiffs' claims are expressly preempted by the FDA policy on the meaning of "natural."  Motion at 14-15.  This argument – which in any case does not apply to Plaintiffs' federal claims under the MMWA[9] – is particularly

label" is without merit.  Motion at 23, n.9.  A cursory examination of the parties' briefing in *Ferrero* reveals that Defendants' assertion is entirely specious.  *Ferrero,* Case No. 11-205 (S.D. Cal.), Dkt. 42 Reply Mem. in Support of Mot. to Dismiss at 10 ("[plaintiffs] ignore well-settled law that, in this context, the test is whether food is fit for human consumption"); and Dkt. 30-1, Mem. in Support of Mot. to Dismiss at 24-25.

[8] Defendants' cases, which do not pertain to "All Natural" or "Nothing Artificial" claims or other similarly definite representations, are inapposite and do not support dismissal.  *See* Motion at 23-24.

[9] Plaintiffs' first two claims are federal claims under the MMWA (¶¶94-122), to which the FDA's express preemption provision does not apply.  *See* 21 U.S.C. §343-1(a) ("**no State or political**

8

meritless with respect to Plaintiffs' state law "All Natural" claims, since Plaintiffs are not seeking to impose any requirement that is "not identical to" any requirement of the Federal Food Drug & Cosmetics Act ("FDCA"), 21 U.S.C. §§ 301, *et seq*., and because the FDA's informal policy is not entitled to preemptive effect.  The same is true for Plaintiffs' state law "Nothing Artificial" claims for which there is not even an informal regulatory policy.

First, FDCA §404A(a) reflects Congress' intent only to preempt state law requirements that are "not identical" to specific requirements affirmatively established by Congress and the FDA.  *See* 21 U.S.C. §343-1(a).  *See also* Final Rule, 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995) ("[T]he only State requirements that are subject to preemption are those that are ***affirmatively different*** from the Federal requirements ***on matters that are covered by section 403A(a) of the act***").[10]  *See, e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010) ("[P]laintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments ***or*** do not involve claims or labeling information of the sort described in sections 343(r) and 343(q)").

As neither Congress nor the FDA has regulated "All Natural" or "Nothing Artificial," Plaintiffs' claims based upon these terms are not expressly preempted.  *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *10 (N.D.Cal., May 26, 2011) (holding "All Natural" claims not expressly preempted); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1074-76 (E.D.Cal. 2010) (same); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1031-1032 (N.D.Cal. 2009) (same); *Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 449190, at *4 (S.D.Cal. Feb. 4, 2009) (same); *Chacanaca*, 752 F.Supp.2d at 1124 (holding "wholesome" claims not expressly preempted).

---

***subdivision of a State*** may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce"…).

[10] Congress further clarified its intention to limit the preemptive effect of the FDCA, as amended by the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, 104 Stat. 2352, through NLEA section 6(c)(1), 104 Stat. 2364 (an uncodified provision), which provides that "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343-1] of the [FDCA]."

Second, while Defendants insist that Plaintiffs' claims are expressly preempted because the FDA has established an "informal" policy on the meaning of "natural," which they assert conflicts with Plaintiffs' "all natural" claims,[11] in fact, the FDA's "natural policy" is not entitled to preemptive effect. Motion at 15-16. As the Court of Appeals for the Third Circuit explained in *Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009), while policies can have the force of law, the circumstances surrounding the FDA's "natural policy" clearly demonstrate that this particular policy should not be accorded preemptive effect:

> We conclude that the FDA's policy statement regarding use of the term "natural" is not entitled to preemptive effect. First, the FDA declined to adopt a formal definition of the term "natural." After soliciting comments on the use of the term "natural," the FDA recognized that the use of the term "is of considerable interest to consumers and industry." *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 Fed. Reg. 2,302, 2,397 (Jan. 6, 1993). It also stated that it believed "that if the term 'natural' is adequately defined, the ambiguity surrounding use of this term that results in misleading claims could be abated." *Id.* Nevertheless, the FDA declined to do so: "Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time." *Id.* **This hardly supports preemption.** *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 65, 123 S. Ct. 518, 154 L.Ed.2d 466 (2002) ("Indeed, history teaches us that a Coast Guard decision not to regulate a particular aspect of boating safety is fully consistent with an intent to preserve state regulatory authority pending the adoption of specific federal standards").

*Holk,* 575 F.3d at 340-341; *see also Astiana*, 2011 WL 2111796, at *10 (finding FDA "natural" policy not entitled to preemptive effect); *Von Koenig*, 731 F. Supp. 2d at 1076 (same). The continuing appropriateness of *Holk*'s analysis is confirmed by the fact that the FDA has consistently *declined* to formally define "natural" as recently as 2010. *See* Declaration of Joseph N. Kravec, Jr. in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Amended Complaint ("Kravec Dec."), Exs. 1 and 2.

To support their express preemption argument, Defendants rely primarily on *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835 (9th Cir. 2011), in which the Ninth Circuit found on a

---

[11] Defendants' contention that Plaintiffs' claims are inconsistent with the FDA's "natural" policy is erroneous. Plaintiffs have pled that Defendants' conduct also violated the FDA policy (¶¶29-30) and that consumers would not reasonably expect the identified artificial and synthetic ingredients in the Kashi products labeled "All Natural" and "Nothing Artificial." ¶¶61-64.

1   **motion for summary judgment** that an FDA policy pertaining to Class II medical devices expressly

2   preempted plaintiffs' state law false advertising claims based upon the use of the term "disinfecting

3   solution."[12]  *Degelmann* at 840-42; *see also* Motion at 16.  *Degelmann* is easily distinguishable and

4   does not support a finding of preemption in this case.

5          In *Degelmann*, the Ninth Circuit considered claims that a "disinfecting solution" was

6   misleadingly labeled as such, when it was not as effective as other brands at killing certain bacteria.

7   *Degelmann,* 659 F.3d at 838.  Contact lens disinfecting solutions are Class II medical devices,

8   which are "'regulated through special controls' issued by the FDA and [which] must obtain 510(k)

9   clearance, so named for the original number of the section in the [Medical Device Amendments]"

10  *Id.* at 841.  Producers **must** demonstrate to the FDA that they comply with the "special controls"

11  established by the FDA prior to introducing their products into the marketplace.  *Id.*  Although,

12  pursuant to the regulations and statute, the defendant in *Degelmann* had to comply with the FDA's

13  "special controls" for disinfectant solution, and did in fact comply with those "special controls" (by

14  submitting test data showing its lens solution killed a certain number of bacteria in a certain amount

15  of time), plaintiffs in *Degelmann* contended that their claims were not preempted because the

16  "special control" requirements were published in a "Guidance for Industry" document rather than a

17  regulation.  *See id*. at 841-842.  Rejecting this argument, the Ninth Circuit explained that the

18  "special controls" were capable of preemptive effect, because defendants had to comply with them

19  in order to introduce their product into the marketplace.  *See id*. at 841 (describing contact lens

20  special controls as requirements "with which contact lens solution manufacturers must comply to

21  receive §510k clearance").

22         *Degelmann* does not support a determination that the FDA "natural policy" has preemptive

23  effect.  The labeling regime for regulation of food differs markedly from the medical devices

24  regime, as there is no process analogous to the §510(k) clearance requirement by which the FDA

25  enforces the "natural policy."  Moreover, unlike the FDA "natural policy" (which the FDA has

26  ─────────────────────

27  [12] The other authorities cited by Defendants are also inapposite, as they pertain to situations in which plaintiffs sought to bring claims that were "not identical to" affirmative requirements established by FDCA **regulations**, and which were therefore subject to preemption under 21 U.S.C. §343-1(a).  *See* Motion at 14-16 and authorities cited therein.

28

11

1    stated it would need to review further before turning into a rule), the "special controls" at issue in

2    *Degelmann* – even though not in a regulation themselves – present "a case 'in which the Federal

3    Government has weighed the competing interests relevant to the particular requirement in question,

4    reached an unambiguous conclusion about how those competing considerations should be resolved

5    in a particular case or set of cases, and implemented that conclusion via a specific mandate on

6    manufacturers or producers."  *Papike v. Tambrands, Inc.*, 107 F.3d 737, 741 (9th Cir. 1997)

7    (distinguishing between "requirements" that are insufficient to support preemption, and those that

8    are entitled to preemptive effect with respect to medical devices).  Thus, unlike the FDA's "natural

9    policy," the "special controls" in *Degelmann* can be fairly understood as "requirements" entitled to

10   the force of law and capable of having preemptive effect.  The FDA has never made the "natural

11   policy" a requirement.

12            However, even if the FDA policy were a "requirement" with preemptive effect, it still would

13   not preempt Plaintiffs' "All Natural" claims (or the "Nothing Artificial" claims to which it doesn't

14   apply), because the conduct Plaintiffs have alleged violates the natural policy and Plaintiffs have

15   ***not*** pled a state law standard of conduct that is "not identical to" any FDCA requirement.  ¶¶29, 134

16   (This "identical conduct that violates the Sherman Law also violates FDCA §403(a)(1), 21 U.S.C.

17   §343(a)(1), which declares food misbranded under the federal law if its 'labeling is false and

18   misleading in any particular.'…[p]laintiffs do not seek to enforce any of the state law claims raised

19   herein to impose any standard of conduct that exceeds that which would violate FDCA

20   §403(a)(1)"); ¶133 (state law contains identical prohibition to federal law).

21            Finally, even if this Court were to somehow conclude that the FDA's policy was entitled to

22   preemptive effect, and that Defendants' conduct did not violate the FDA policy, Plaintiffs' claims

23   would still survive because Defendants actually made "All Natural" ***not*** "natural" statements on the

24   Unnatural Products.  ¶¶1, 29.  This is a "far broader and more encompassing representation" than

25   natural.   ¶29.  Further, "[w]hile federal regulators have established policies or regulations

26   addressing the meaning of 'natural' when used in food labeling, no regulations have specifically

27   addressed the broader representation made by labeling the product as 'All Natural,' and the only

28

<hr>

12

policy to address 'All Natural' labeling requires disclosure of any synthetic or artificial ingredients so as to indicate they are not natural." *Id.*; *see also* ¶¶32-34 (describing USDA policy for "All Natural" on meats and dairy). The FDA's enforcement of "All Natural" demonstrates that it -- like the USDA -- treats "natural" and "All Natural" as separate terms. Specifically, where a producer makes the claim "All Natural" while having any synthetic or artificial ingredient (even a commonly-expected one) in the food, the FDA views that as a violation – not of the "natural" policy – but of the statutory prohibition on false and misleading labeling statements. *See* ¶48 n.34, Ex. 24 (Dkt. 49-25) (warning letter to Alexia Foods for "All Natural" representations on frozen potatoes containing commonly used synthetic ingredient).

Like "Nothing Artificial," there is no "requirement" in the form of a policy or otherwise for "All Natural," which is why numerous district courts in this Circuit have permitted these claims to go forward. *See supra* at pp. 10-11. For the same reasons, this Court should not impose preemption where none exists.

## IV.   Whether A Reasonable Consumer Was Deceived By The "All Natural" Labels Is A Question Of Fact

Defendants seek dismissal of Plaintiffs' claims under *Iqbal* and *Twombly*, based upon a contorted reading of Plaintiffs' allegations, and by reference to a host of irrelevant "facts" not pled in the CAC. *See* Motion at 10-14. These arguments, which pertain only to "natural," provide no basis to dismiss the "Nothing Artificial" claims. Further, they are in substance a factual dispute about whether reasonable consumers could be deceived by "All Natural," which is not a basis for dismissal at this juncture. *Chavez,* 340 Fed.Appx. at 360 (a motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case"); *Williams v. Gerber Prod. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer").w

Defendants contort and misread Plaintiffs' allegations and the FDA "natural policy," suggesting that Plaintiffs' "All Natural" claims are implausible because under the FDA natural policy, "the inclusion of an artificial and/or synthetic ingredient does not alone make a product

unnatural; rather, whether a food product is 'natural' or not must be tied to reasonable consumer expectations."[13]  Motion at 10.  However, as Plaintiffs have alleged, reasonable consumers do not expect that foods labeled "All Natural" will contain synthetic and/or artificial ingredients.  *See, e.g.*, ¶¶3, 68.

While Defendants suggest that Plaintiffs have not pled why reasonable consumers would not expect the synthetic or artificial ingredients in the "All Natural" labeled products, this is patently untrue.   Plaintiffs have pled that this is the common meaning of "All Natural" (¶28), and that numerous other available authorities support this definition.  ¶¶29-35, 61-63.  Notwithstanding the resolution of what a reasonable consumer would expect in the context of the litigation, the answer is indisputably a question of fact and not appropriate for decision at this stage of the litigation.  *See Vicuna*, 2012 WL 1497507, at *2 ("[b]ecause the question whether a reasonable consumer would likely be deceived by the designation "All Natural" is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation."); *Astiana*, 2011 WL 2111796, at *4 (finding "all natural" claims based upon inclusion of synthetic were plausible; stating "issue involves questions [of fact]…beyond the scope of this Rule 12(b)(6) motion").

Moreover, while Defendants assert that Plaintiffs' allegations are inconsistent with the "natural policy" of the FDA, Plaintiffs have in fact pled that Defendants' conduct violated both the common understanding of "All Natural" ***and*** the FDA's policy on "natural."  ¶¶28-29, 61-63, 67-69.  Plaintiffs submit that the FDA "natural policy" is not controlling as to the meaning of "All Natural" as it is not entitled to preemptive effect and is not as broad of a representation as "All Natural" (*see* Section III at pp. 10-11, *supra*).  However, the FDA's interpretation and application of that policy is entirely consistent with Plaintiffs' allegations that consumers do not reasonably understand "All Natural" foods to contain artificial and synthetic ingredients.  *See* ¶30 and URL

---

[13]  Under the FDA's policy the term "natural" means "that nothing artificial or synthetic (including all color additives regardless of sources) has been included in, or has been added to, a food that would not normally be expected to be in the food."  ¶30 citing 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).  Plaintiffs' CAC also cites two FDA website pages which describe the FDA's interpretation of its policy for the term "natural" simply as meaning that food "does not contain synthetic or artificial ingredients" and "does not contain added color, artificial flavors, or synthetic substances." *See* ¶30 and URLs cited therein.

14

1   websites cited therein, and Ex. 15 (Dkt. 49-16) at 2, and 16 (Dkt. 49-17) at 1 (describing FDA

2   policy as not objecting to use of "natural" where a product does not contain any synthetic or

3   artificial ingredients).  In fact, the FDA has issued warning letters to companies that have used the

4   claim "All Natural" on products that contain ***any*** synthetic or artificial ingredients, on the ground

5   that this conduct is "false and misleading" in violation of the FDCA.  *See* ¶ 48 n.34, Ex. 24 (Dkt.

6   49-25) (warning letter to Alexia Foods for "All Natural" representations on frozen potatoes

7   containing commonly used synthetic ingredient).

8       While Defendants' clearly disagree about what a reasonable consumer believes and whether

9   they could be deceived by the "All Natural" claims, this is a factual dispute that is not appropriate

10  for resolution on a demurrer.  *Williams*, 552 F.3d at 938.  At this juncture, Plaintiffs' allegations

11  must be accepted as true.[14]

12      **V.      Plaintiffs' "All Natural" Claims Are Not Puffery**

13      Defendants contend that if there is no preemption, then Plaintiffs' claims should be

14  dismissed because "the terms 'all natural' and 'nothing artificial' are then necessarily too subjective

15  and vague to have ascertainable standards to determine its [sic] accuracy."  Motion at 17.  This is

16  nonsense at best since numerous cases confirm that statements such as "All Natural" and "Nothing

17  Artificial" are sufficiently definite and objective to be actionable.

18      As this Court has stated, "[w]hile product superiority claims that are vague or highly

19  subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute

20  characteristics of a product are actionable.'"  *Ferrero*, 794 F. Supp. 2d at 1107, 1115 (citing

21  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).  Plaintiffs'

22  allegations clearly satisfy this standard, as they have alleged that Defendants made factual,

23  objectively verifiable statements that the Unnatural Products were "All Natural," *i.e.*, they contained

24  no artificial or synthetic ingredients, or that they contained "Nothing Artificial," *i.e.*, that they

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[14] Defendants reliance on the Department of Agriculture's ("DOA") National Organics Program

27  ("NOP") regulations are completely irrelevant to Plaintiffs' claims.  Motion at 12-13.  "Organic"

and "All Natural" are completely separate terms, with distinct meanings, and the definition of the

28  former simply does not dictate the meaning of the latter.

1    contained no artificial ingredients.   ¶¶1, 29, 61, 62.   Whether a food ingredient is synthetic or

2    artificial can be proven true or false, and no legitimate authority disagrees.   ¶¶35-36.

3        Numerous cases also confirm that mislabeling a food product as "All Natural" (and other

4    similar statements such as "Nothing Artificial") creates an actionable claim explicitly recognizing

5    such claims are material and not inactionable puffery.   *See, e.g., Vicuna*, 2012 WL 1497507, at *2

6    (holding the statement "All Natural" is a statement of fact or description of the product, and a

7    warranty that no ingredients of the product are synthetic); *Henderson*, 2011 WL 1362188, at *10-11

8    (holding the statement "All Natural" is actionable under California's consumer protection laws);

9    *Astiana*, 2011 WL 2111796, at *4 (sustaining claims for mislabeling ice cream products as "All

10   Natural" that contained cocoa processed with a synthetic ingredient); *Ries v. Arizona Beverages*

11   *USA LLC*, 2011 WL 3759937, at *6 (N.D.Cal. Aug. 25, 2011) (sustaining claims for mislabeling

12   drink products as "All Natural" when they contained high fructose corn syrup); *Von Koenig*, 713 F.

13   Supp. 2d at 1078 (same); 2009 WL 449190, at *4 (same); *Lockwood,* 597 F. Supp. 2d at 1029-30

14   (same in relation to pasta sauce).

15       The authorities relied upon by Defendants are inapposite as none of the labeling claims were

16   objectively verifiable as "All Natural" or "Nothing Artificial" asserted here.   Moreover,

17   Defendants' cases consistently acknowledge the general rule that facts susceptible of being proven

18   false, such as Defendants' "All Natural" and "Nothing Artificial" claims, are actionable.   For

19   example, in *Fraker v. KFC Corp.*, 2007 WL 1296571, at *3 (S.D.Cal. April 30, 2007), the Court

20   held that general statements about KFC's food, such as calling it the "best food," were non-

21   actionable puffery because they lacked "definite positive assertions of fact."   Similarly, the court in

22   *ZL Techs. Inc. v. Gartner, Inc.*, 2009 WL 3706821, at *4 (N.D.Cal. Nov. 4, 2009) found that the

23   statement "high quality, independent and objective research" was not a specific or absolute

24   characteristic that would be factually verifiable.[15]   Defendants' authorities provide no basis for

25   dismissal of the claims here.

26   _____

27   [15]  *See also* Defendants' cited cases *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d
     725, 731 (9th Cir. 1999) (a competitor's claim that the plaintiff was "too small" to handle a client's
28   business was mere puffery as it was not a statement of fact susceptible of being proved false as
     required by the Lanham Act and common law defamation); *Edmunson v. Proctor & Gamble Co.*,

                                                    16

Finally, Defendants' contention that, absent preemption, there is no "authoritative definition of 'natural' or objective method to determine whether a food product is natural or artificial" ignores the fact that no preempting "authoritative definition" is needed in order for Plaintiffs' claims to be actionable.[16]   Motion at 18; *see also*, *e.g.*, *Lockwood*, 597 F. Supp. 2d at 1035 ("this is not a technical area in which the FDA has greater technical expertise than the courts - every day courts decide whether conduct is misleading").   Plaintiffs have sufficiently pled objective, verifiable definitions of "All Natural" and "Nothing Artificial," which comport with common understanding, multiple non-controlling federal regulatory definitions, and Defendants' own statements about the meaning of these terms.   ¶¶28-35, 61-63.   As such, Plaintiffs claims are both objectively verifiable and plausible.   Nothing more is required.

**VI.      Defendants' Primary Jurisdiction Arguments Should Be Rejected**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue with the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[T]he doctrine is a 'prudential one,' under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with the regulatory authority over the relevant industry, rather than by the judicial branch." *Id.*

Application of the doctrine is not appropriate in this case for several reasons.   First, while Defendants are correct that the FDA regulates food labeling, various parties have repeatedly asked the FDA to adopt formal rulemaking to define the word "natural" and the FDA has declined to do

2011 WL 1897625, at *4 (S.D.Cal. May 17, 2011) (a statement that one product was "superior" to another was not objectively measurable, and therefore puffery because an alleged misrepresentation must relate to an objectively verifiable fact); *Tylka v. Gerber Prods. Co.*, 1999 WL 495126, at *8-9 (N.D.Ill. July 1, 1999) (under Illinois law, a general statement about all of a company's baby food products as being the "most nutritious" or "most wholesome" without making any absolute statement of fact about any of its individual products was puffery as they were meaningless superlatives of opinion that no reasonable person would take seriously, and not a statements of fact).
[16] Defendants' suggestion that the claims "All Natural" and "Nothing Artificial" are subjective because the FDA has not formally defined the term "natural" is irrelevant since Defendants did not simply label Kashi's products as being "natural," but instead made more specific statements regarding the nature of Kashi's products ingredients.   ¶¶29, 61-62.

17

so because it does not deem the issue a high priority in light of its limited resources.  *Lockwood*, 597 F. Supp. 2d at 1035; *Astiana*, 2011 WL 2111796, at *10 ("the FDA has made clear that it does not intend to regulate the meaning of 'natural'"); *Wright v. General Mills, Inc.*, 2009 WL 3247148, at *3 (S.D.Cal. Sept. 30, 2009) ("[b]ased on the FDA's consistent determination that the term 'natural' does not need specific definition, state law claims based on the use of the term 'natural' is not an issue of first impression"); *Ackerman v. Coca-Cola Company*, 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2011) ("the FDA is aware of the plaintiffs' concerns but lacks the resources to take enforcement action in every instance in which its policies are violated").  As a result, deferral to the FDA is unlikely to result in a timely resolution of Plaintiffs' claims.  *Id.* ("the FDCA does not provide a private right of action, and there is no reason to believe the plaintiffs could obtain a timely determination from the FDA concerning the merits of their claims").

Second, Plaintiffs' claims do not involve a technical area in which the FDA has greater technical expertise than this Court.  Every day courts decide whether conduct is misleading. *Lockwood,* 597 F. Supp. 2d at 1035; *Ackerman*, 2010 WL 2925955, at *14; *Chacanaca,* 752 F.Supp.2d at 1124 ("plaintiffs advance a relatively straightforward claim: they assert the defendant has violated FDA regulations and marketed a product that could mislead a reasonable consumer[…] this is a question 'courts are well-equipped to handle'"); *Wright,* 2009 WL 3247148, at *3 ("state law claims based upon the use of term 'natural' […] does not require technical expertise within the special competence of the FDA, and is not a particularly complicated issue outside the ability of the court to consider and decide").

Finally, most of Plaintiffs' claims are based on state law which would not necessarily be resolved in the event of an FDA ruling.  *Lockwood*, 597 F. Supp. 2d at 1034-35 ("plaintiff's claims are based on state law […] even if the FDA were to formally define 'natural,' federal law would not dispose of the plaintiffs' state law claims."); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1123 (C.D.Cal. 2009) ("Plaintiff's claims are also based on state law, which would not necessarily be resolved in the event of an FDA ruling." (citing *Lockwood,* 597 F. Supp. 2d at 1034-35)); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375 (N.D.Cal. 2010)

("the FDA has traditionally regarded state law as an additional layer of consumer protection that complements FDA regulation" (citing *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)).   Defendants have not cited a single decision involving "natural" claims where a court has applied the primary jurisdiction doctrine.  In fact, in all of the "natural" cases Plaintiffs have found in which the courts have asked the FDA if it wanted to accept primary jurisdiction, the FDA has declined.  Kravec Dec., Exs. 1 and 2 (showing FDA's decision as recent as 2010 declining primary jurisdiction in cases asserting "natural" claims).  Accordingly, this Court should decline to apply the primary jurisdiction doctrine to the Plaintiffs' claims.

**VII.    Kellogg And Kashi Sales Should Remain As Defendants In This Action**

Defendants' attempt to deprive Plaintiffs of their right to seek recovery against Kellogg and Kashi Sales should be denied.

First and foremost, Plaintiffs allege that both Kellogg and Kashi Sales were ***direct participants*** in the conduct at issue.  Specifically, Plaintiffs allege Kellogg reviewed, approved and paid for the "All Natural" and "Nothing Artificial" marketing of the Kashi products (¶23), and Kashi Sales distributed these mislabeled Kashi products (¶¶24-25).  Allegations that affiliated corporate entities are direct participants in the conduct at issue are sufficient to hold the affiliated entity liable, even in absence of any alter ego or agency evidence.  *People v. Bestline Prod., Inc.*, 61 Cal.App.3d 879, 920-921 (Cal.Ct.App. 1976) (finding that a holding company and a wholly owned subsidiary were both liable since each admitted that it directly participated in the conduct at issue, even though there was no evidence of an alter ego relation); *Eclectic Prop. East, LLC v. The Marcus & Millichap Co.,* 2012 WL 713289, *6 (N.D.Cal, Mar. 5, 2012) ("Court need not address the alter ego theory" for a defendant whose "direct participation" is alleged).   Defendants improperly ignore these direct participant allegations in seeking dismissal of Kellogg and Kashi Sales.

Defendants instead rest their entire argument for dismissing Kellogg and Kashi Sales on Plaintiffs' purported failure to sufficiently plead alter ego or agency bases of liability as to these two entities.  Such allegations are unnecessary given the allegations of Kellogg's and Kashi Sales' direct

1    participation.   Nevertheless, in compliance with applicable Rule 8(a) simple pleading standards,

2    Plaintiffs have also sufficiently made allegations supporting alter ego and agency.  *Pac. Gas &*

3    *Elec. Co. v. Jesse M. Lange Distrib.*, 2005 WL 3507968, at *4 (E.D.Cal. Dec. 21, 2005).   Courts

4    routinely deny motions to strike alter ego and agency claims at the pleading stage.  *Id.*; *PlasPro*

5    *GMBH v. Gens,* 2011 WL 1000755, at *5 (N.D.Cal. Mar. 21, 2011).   There is no good reason for

6    the Court to hold differently in this instance.

7          Parent corporations, such as Kellogg, may be held liable for the conduct of their subsidiaries

8    through the "piercing of the corporate veil" when "the corporate form would otherwise be misused

9    to accomplish certain wrongful purposes…" *United States v. Bestfoods,* 524 U.S. 51, 62 (1998).

10   *See also Chicago M. & S. P. R. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 501

11   (1918). Piercing of the veil can be established by showing that the subsidiary is the "mere

12   instrumentality, alter ego or agency" of the parent corporation.   *Milgo Elec. Corp. v. United*

13   *Business Communications, Inc.*, 623 F.2d 645, 659 (10th Cir. 1980).[17]   The two entities Defendants

14   are seeking to dismiss are Kellogg, the parent company of Kashi, and Kashi Sales, a subsidiary of

15   Kellogg that manufactures Kashi food products.  ¶24.

16       **A.  Kashi Operates As An Agent Or Instrumentality Of Kellogg**

17          Plaintiffs' CAC alleges facts sufficiently showing that Kashi operates as an instrumentality,

18   alter ego or agency of Kellogg.  "[F]actors relevant in determining whether the corporate veil in the

19   parent-subsidiary context should be pierced" include:

20   _____

21   [17] Defendants' reliance on *Doe v. Unocal Corp.,* 248 F.3d 915 (9th Cir. 2001) is misplaced.  The
     court in *Doe* analyzed the relationship between parent corporations and subsidiaries in the context

22   of the exercising of **_jurisdiction_**, rather than in terms of piercing the corporate veil.  *Id.*  Other
     courts, including those citing *Doe*, have differentiated between the analysis for piercing the

23   corporate veil and for jurisdiction over a parent corporation or subsidiaries.   *Bauman v.*
     *DaimlerChrysler Corp.*, 644 F.3d 909, 923 (9th Cir. 2011) ("[w]e must remember that we are

24   considering the contours of the test for agency to be applied in the context of personal jurisdiction.
     We are not examining the rules governing the test for vicarious liability, or for holding [the parent

25   corporation] financially liable for the actions of the [subsidiary]").  Furthermore, that case involved
     the exercising of jurisdiction over subsidiaries that were California corporations controlled by a

26   French holding company.  The facts are quite different in this case, which involve the exercising of
     control by a Delaware corporation (Kellogg) over a California subsidiary (Kashi) and a California

27   subsidiary (Kashi) over a Delaware affiliate (Kashi Sales).  Thus, looking at the factors in *Milgo* is
     preferable over *Doe* as *Milgo* is an actual "piercing" case.  *See, e.g., Milgo,* 623 F.2d at 660.

28

(1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.  (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.  (8) In the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Milgo,* 623 F.2d at 660.

Applying the "laundry list" of factors above, it is clear that the Kellogg and Kashi relationship includes a number of these factors, thereby allowing the corporate veil to be pierced in this case.  Kashi is a wholly owned subsidiary of Kellogg, which owns all of the capital stock of the company.  ¶¶20, 23.  Kellogg and Kashi have substantial overlap between directors and officers. For example, the current President of Kellogg Asia Pacific, David Denholm, previously served as General Manager of Kashi.[18]  ¶23.  Kellogg has made significant investments in Kashi, increasing its advertising investment by double-digits and spending millions of its own funds on advertising and marketing the Kashi brands, including the "All Natural" and "Nothing Artificial" food products. ¶23.  As such, Kellogg has been heavily engaged in financing Kashi and paying Kashi's expenses. The two companies are also extensively intertwined, with employees from Kashi working in Kellogg's headquarters in Michigan.  For instance, Kashi has co-located parts of its business at Kellogg's headquarters, including supply chain management, consumer affairs and branding and Kashi operations.[19]  Kellogg has often mentioned Kashi as a division of Kellogg in statements to investors and in its SEC filings.  ¶23.  Kellogg also refers to Kashi's brands and trademarks as its own, signs off on Kashi's marketing and advertising and explains how Kashi is part of the

---

[18] Plaintiffs also believe that other Officers and Directors may occupy dual roles at Kashi and Kellogg, however since Kashi is a private company, and corporate officers and directors are not publicly listed, only further discovery can determine if this is the case.

[19] The following individuals from Kashi work in Michigan according to Kashi's website: Tina Owns, Manager, Supply Chain; Kathy McGillivray, Consumer Affairs, Brand Steward; and Paul Speedy, Kashi Operations. *See* http://www.kashi.com/meet_us/employees.  This supports Plaintiffs' contention regarding the number of overlapping business units that work in Kellogg's headquarters.

21

company's plan to target the healthy food market.  *Id.*  Finally, due to the intertwined nature of the two companies, as explained above, and the control Kellogg and its corporate officers have over Kashi's advertising, marketing and finances, Kashi's corporate officers primarily take direction from Kellogg's management.  *Id.*  In sum, Kashi is the instrumentality, alter ego and agent of Kellogg.

**B.  Kashi Sales Operates As The Agent Or Alter Ego Of Kashi**

Applying the factors considered by the court in *Milgo*, it is clear that Kashi Sales also operates as the agent, alter ego or instrumentality of Kashi, despite being structurally a subsidiary of Kellogg.  Kashi Sales is listed as the distributor of all Kashi products on product labeling, and is headquartered in the same location as Kashi.  ¶24.  The company appears to do no other business other than distributing Kashi products.  Due to the fact that Kashi Sales only distributes Kashi products, the managers of Kashi Sales do not act independently and take direction from Kashi.  Kashi also refers to its distribution arm, Kashi Sales, as "part of Kellogg's nationwide distribution network" and therefore merely a department or division of Kellogg.  ¶24.  This also suggests that Kashi and Kellogg finance Kashi Sales' operations.  Moreover, the formal legal requirements of Kashi Sales may not be observed because Kashi Sales continues to be named as the distributor of Kashi products while it is listed as dormant in Kellogg's 10-K filings.  ¶24.  In sum, Kashi Sales and Kellogg must remain parties to this action because dismissing them at this stage would be premature.

**VIII.    Plaintiffs Properly State A Cause Of Action For Unjust Enrichment**

Defendants do not dispute that Plaintiffs have alleged the elements for unjust enrichment or that they plead it as an alternative claim (¶¶178-80), but rather challenge whether it is a separate cause of action in California.  Motion at 24.  It is well-settled that Plaintiffs' cause of action for restitution based on quasi-contract/unjust enrichment is cognizable under California law as an alternative claim, having been recognized as such in multiple decisions, including several recent "All Natural" and other false advertising cases.  *See Paracor Fin., Inc., v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (holding that "unjust enrichment is an action in quasi-contract"

under California law); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 993, 1010-1012 (S.D.Cal. 2011) (holding that while California courts may "diverge on the proper way to conceptualize unjust enrichment," it is nevertheless a "claim" and a "basis for recovery"); *Astiana*, 2011 WL 2111796, at *11 (N.D.Cal. May 26, 2011) (denying defendant's motion to dismiss in an "All Natural" case, holding that plaintiffs could bring an unjust enrichment claim "as part of a claim of restitution based on quasi-contract" related to plaintiff's "all natural" false advertising claims); s*ee also Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed.Cir. 2007) (holding that unjust enrichment is a cognizable and "separate cause of action when the claim is grounded in equitable principles of restitution" under California law).[20]

While some dissent has been expressed by certain courts (and relied upon by Defendants), the fact is that, under California law, "courts have generally allowed claims for 'unjust enrichment' to proceed, regardless of the precise label assigned to the cause of action." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at *4 (N.D.Cal. Feb. 15, 2012); *see also Ghirardo v. Antonioli*, 14 Cal.4th 39, 50 (Cal. 1996) (holding that the plaintiff was "entitled to seek relief under traditional equitable principles of unjust enrichment"); *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (Cal.Ct.App. 2000) (holding that plaintiff satisfied the elements for a claim of unjust enrichment). As such, Plaintiffs' unjust enrichment claim should be allowed to proceed.[21]

### IX.    Plaintiffs' Fraud-Based Claims Satisfy Rule 9(b)

The Ninth Circuit has long construed Rule 9(b) to require only that allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to

---

[20] *See also Dorr v. Yahoo! Inc.,* 2007 WL 2215445, at *2 (N.D.Cal. 2007), *citing McBride v. Boughton*, 123 Cal.App.4th 379 (Cal.Ct.App. 2004); *First Nationwide Sav. v. Perry*, 15 Cal.Rptr.2d 173; *Monet v. Chase Home Finance*, *LLC*, 2010 WL 2486376, at *3-4 (N.D.Cal. June 16, 2010); *Siegel v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), 2011 WL 4345435, at *3 (N.D.Cal. Sept. 15, 2011); 1 Witkin, Summary of Cal. Law, Contracts, (10th ed.) §1016, at 1105 (one of the "Underlying Principles" of the Restatement is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other").

[21] Defendants suggest, in a footnote, that Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their other claims. Motion p. 24, n. 10. However, under Rule 8(d)(3)'s "liberal pleading policy," a "party may state as many separate claims or defenses as it has, regardless of consistency." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1992).

constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brooks v. ComUnity Lending, Inc.*, 2010 WL 2680265, at *9 (N.D.Cal. Jul. 6, 2010); *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1142 (N.D.Cal. 2010).   Further, while averments of fraud must be particularized, Rule 9(b) "must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, 2007 WL 2462150, at *2 (N.D.Cal. Aug. 29, 2007).

Defendants concede that Plaintiffs have pled all the elements of fraud with particularity, save one – knowledge of falsity.  Motion at 24-25.  Fed. R. Civ. P. 9(b) requires only that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *See also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("[w]hile the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally").  Moreover, courts in the Ninth Circuit have recognized that "…the requirement of specificity [for fraud] is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy' or 'when the facts lie more in the knowledge of the opposite party.'"  *Comerica Bank v. McDonald*, 2006 WL 3365599, at *2 (N.D.Cal. Nov. 17, 2006); s*ee also Fong v. United States*, 300 F.2d 400, 409 (9th Cir. 1962) (holding that plaintiff's allegations were sufficiently pled because they stated facts primarily within defendant's knowledge).  Here, both of these circumstances have been plead.

Plaintiffs allege that all but one of the ingredients at issue in Kashi's products labeled "All Natural" and "Nothing Artificial" are recognized by federal regulations as not natural (*i.e.*, synthetic or artificial)(¶¶1, 37-42, 44-52), and Kashi admits the one not mentioned in federal regulations (*i.e.*, Hexane-Processed Soy Ingredients) is not natural.   ¶43.  Thus, Plaintiffs allege that Defendants knew and recklessly disregarded that the Kashi Products were not "All Natural" or did not contain "Nothing Artificial," and Defendants uniformly misrepresented these food products as "All Natural" and "Nothing Artificial" without disclosing that any of the ingredients were synthetic or artificial, thereby actively concealing these facts from Plaintiffs.  ¶¶173.  Plaintiffs further allege

that Defendants failed to disclose, misrepresented and/or concealed the foregoing material facts from the public knowing that these facts may have justifiably induced them to refrain from purchasing the Unnatural Products and instead purchase another manufacturer's products that were actually all natural or free of artificial ingredients, or to purchase a less expensive non-natural or artificial substitute product.   ¶174.   Defendants carried out this fraudulent scheme willfully, wantonly, and with reckless disregard for the interests of consumers.   ¶176.   These allegations are more than sufficient, especially given the relaxed standard for alleging "knowledge" of the fraud.[22]

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.   Should the Court find any deficiencies in the CAC that warrant dismissal, Plaintiffs respectfully request leave to amend.   In the Ninth Circuit, leave to amend is freely given unless the complaint could not possibly be cured by the addition of other facts. *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) ("[i]n exercising its discretion with regard to the amendment of pleadings, 'a court must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities'").

---

[22] In a footnote, Defendants ask this Court to strike Plaintiffs' nationwide class allegations, based upon *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir.2012)).   However, *Mazza* did not address federal MMWA claims or California fraud claims (such as Plaintiffs assert here), which other courts have certified nationwide. *See, e.g.*, *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375-380 (N.D.Cal.2010) (Walker, J.) (certifying nationwide fraud class); *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 483, 489 (N.D.Cal. 2011) (certifying nationwide MMWA class). While *Mazza* did address UCL, CLRA, and unjust enrichment claims, all *Mazza* held was a conflicts of law analysis must be performed if a defendant shows a difference among state laws, and under the "facts and circumstances of this case", a nationwide class could not be certified.   666 F.3d at 594; *see Bruno v. Eckhart Corp.*, --- F.R.D. ----, 2012 WL 752090, *3-7 (C.D.Cal. Mar. 6, 2012) (explaining *Mazza* did not change governing law; denying motion to decertify).   The *Mazza* court also remanded to the district court to determine whether a state or multistate class could be certified. 666 F.3d at 594.   Here, Defendants' request to strike must be denied, as Defendants have not even attempted to establish any difference in law that is material to the specific claims before this Court. *See* Motion at 25 n.11.   Moreover, Plaintiffs have asserted their claims on behalf of a nationwide class, as well as on behalf of statewide and/or multi-state classes, in the alternative.   As such, this issue is properly addressed in a Rule 23 class certification motion, not in a Rule 12 motion.

Dated: May 30, 2012

**STEMBER FEINSTEIN DOYLE**
**PAYNE & KRAVEC, LLC**

By:  ____s/Joseph N. Kravec, Jr._____
         Joseph N. Kravec, Jr.

Wyatt A. Lison (admitted *pro hac vice*)
Maureen Davidson-Welling (admitted *pro hac vice*)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@stemberfeinstein.com
            wlison@stemberfeinstein.com
            mdavidsonwelling@stemberfeinstein.com

**FARUQI & FARUQI, LLP**
Vahn Alexander (167373)
Christopher B. Hayes  (277000)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Phone: (424) 256-2884
Fax: (424) 256-2885
Email: valexander@faruqilaw.com
            chayes@faruqilaw.com

***Interim Co-Lead Class Counsel***

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT – Case No. 11-cv-1967-H (BGS)

***ADDITIONAL PLAINTIFFS' COUNSEL:***

Michael D. Braun (#167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax:    (310) 836-6010
service@braunlawgroup.com

Janet Lindner Spielberg (#221926)
**LAW OFFICE OF JANET LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax:    (310) 278-5938
jlspielberg@jlslp.com

Rosemary M. Rivas (#209147)
Danielle A. Stoumbos (#264784)
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Phone: (415) 398-8700
Fax: (415) 398-8704
rrivas@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com

Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
Marc L. Godino (#182689)
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Phone: (310) 201-9150
Fax:: (310) 201-9160
info@glancylaw.com

Jason S. Hartley (#192514)
**STUEVE SIEGEL HANSON LLP**
550 West C Street, Suite 610
San Diego, CA 92101
Phone: (619) 400-5822
Fax: (619) 400-5832
hartley@stuevesiegel.com

Bruce D. Greenberg (*pro hac vice*)
**LITE DePALMA GREENBERG, LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

Michael Louis Kelly (#82063)
Behram V. Parekh (#180361)
Heather M. Petersen (#261303)
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue
Fourth Floor
El Segundo, CA 90245
Phone: (310) 536-1000
Fax: (310) 536-1001
mlk@kirtlandpackard.com
byp@kirtlandpackard.com
hmp@kirtlandpackard.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT – Case No. 11-cv-1967-H (BGS)

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document *via* the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

s/Joseph N. Kravec, Jr.
Joseph N. Kravec, Jr.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT – Case No. 11-cv-1967-H (BGS)