# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SKYE ASTIANA, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

KASHI COMPANY, a California Corporation,

Defendant.

CASE NO. 3:11-CV-01967-H (BGS)[1]

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

On April 15, 2013, Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen, Kimberly S. Sethavanish ("Plaintiffs") filed a motion for class certification.[2] (Doc. No. 108.)   On June 17, 2013, Defendant Kashi Company ("Kashi" or "Defendant") filed its opposition Plaintiffs' motion for class certification.  (Doc. Nos. 127, 129.)  On July 15, 2013, Plaintiffs filed a reply.  (Doc. Nos. 135, 139.)  On July 24, 2013, with leave of Court, Defendant filed a sur-reply.  (Doc. No. 144.)

---

[1] This is the lead case in consolidated cases 11-CV-2256-H (BGS), 11-CV-2285-H (BGS), 11-CV-2637-H (BGS), 11-CV-2356-H (BGS), 11-CV-2629-H (BGS), and 11-CV-2816-H (BGS).   (Doc. Nos. 16, 22.)  This Order applies to all of the cases.

[2] Plaintiffs Colucci, Chatham, Littlehale, Bolick, and Espinola do not participate in the class motion.  Plaintiffs Astiana, Babic, Diaz, Larsen, and Sethavanish ("Plaintiffs") proceed for the classes.

1    The Court held a hearing on the motion on July 26, 2013.  David Bower, Michael

2   Braun, Rosemary Rivas, and Joseph Kravec appeared on behalf of Plaintiffs.  Kenneth

3   Lee and Kelly Morrison appeared on behalf of Defendant.  For the following reasons,

4   the Court grants in part and denies in part Plaintiffs' motion for class certification.

5                                          **Background**

6        This is a consumer class action lawsuit brought on behalf of people who have

7   purchased Kashi food products.  Plaintiffs claim the products contained deceptive and

8   misleading labeling and advertisements.  (Doc. No. 49 ("Complaint") ¶ 1-2.)  Plaintiffs

9   allege that Defendant packaged, marketed, distributed, and sold Kashi food products

10  as being "Nothing Artificial" or "All Natural."  (Id.)  Plaintiffs claim certain ingredients

11  or processes used to manufacture Kashi food products are not "natural," but rather are

12  synthetic.  (Id.)  Plaintiffs identify 10 specific Kashi products containing one or more

13  of the challenged ingredients with labels claiming "Nothing Artificial" and 91 products

14  with labels claiming "All Natural."  (Id. ¶¶ 71-72; Doc. No. 108.)  Defendant contends

15  that consumers and producers have no uniform definition of "natural" and, accordingly,

16  the representations are not materially false.

17       Plaintiffs filed this lawsuit on August 24, 2011.  (Doc. No. 1.)  Plaintiffs seek

18  class certification for the following causes of action: violation of the unlawful, unfair,

19  and fraudulent prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. &

20  Prof. Code §§ 17200 et seq.; violation of California's False Advertising Law ("FAL"),

21  Cal. Bus. & Prof. Code §§ 17500 et seq.; violation of California's Consumer Legal

22  Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770 et seq.; breach of express warranty;

23  and quasi-contract.  (Complaint ¶ 5.)

24       The named Plaintiffs claim that they purchased Kashi products at least in part

25  because of the "Nothing Artificial" or "All Natural" representations, and that they

26  would have paid less for Kashi products or purchased other products had they believed

27  those representations were false.  (Complaint ¶¶ 8-19; Doc. No. 136-2 at 195:23-24;

28  Doc. No. 136-3 at 143:3-7; Doc. No. 136-4 at 219:2-5, 16-20; Doc. No. 136-5 at

162:10-15, 169:10-15; Doc. No. 136-8 at 64:10-12.)

Plaintiffs seek to certify two nationwide classes, or alternately multi-state or state-wide classes, for customers who purchased identified Kashi products on or after August 24, 2007 (the "class period"). Plaintiffs propose one class for purchasers of Kashi products that were labeled as "Nothing Artificial," and one for customers who purchased any of the identified Kashi products during the class period that were labeled as "All Natural." Alternatively, Plaintiffs propose eight sub-classes: one "Nothing Artificial" class and seven "All Natural" subclasses grouped by Kashi product lines (cereal, snack bar, entree, etc.). Defendant opposes class certification.

**Discussion**

**I.      Class Certification Standards**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011) (citing <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and (b). <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001); <u>Doninger v. Pac. Nw. Bell, Inc.</u>, 564 F.2d 1304, 1308-09 (9th Cir. 1977). Rule 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The Court considers "the capacity of a classwide proceeding to generate common

answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Wal-Mart Stores, Inc., 131 S. Ct. at 2551.  The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).  It is a well-recognized precept that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  Wal-Mart Stores, Inc., 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160).  "The district court is required to examine the merits of the underlying claim in this context [class certification], only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted).  Rather, the Court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis.  The Court must consider the merits if they overlap with the Rule 23 requirements.  Ellis, 657 F.3d at 981 (citing Wal-Mart Stores, Inc., 131 S. Ct. at 2551-52; Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992)).  If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused.  Falcon, 457 U.S. at 161.

///
///
///
///
///
///
///
///
///
///

## II.   "Nothing Artificial" Class

Plaintiff Tamar Larsen seeks to certify a class of all customers who purchased Kashi products during the class period that were labeled as containing "Nothing Artificial."   For the following reasons, the Court grants in part Plaintiff Larsen's motion, certifies a class of California consumers, and appoints Plaintiff Larsen representative of the class.

### A.   Requirements of Rule 23(a)

#### 1.   Ascertainability

Defendant contends that the Court may not certify any class because of the administrative difficulty of identifying class members.  "Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted).  "The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member."  Id.  The proposed class definition here meets that standard, and Defendant does not identify any portion of the class definition that it believes to be vague or confusing.  Indeed, the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations.  Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation.

Defendant's concern that the Court will have difficulty identifying members of the class is unavailing.  Because Defendant does not have records of consumer purchases, and potential class members will likely lack proof of their purchases, Defendant argues that the Court will have no feasible mechanism for identifying class members and will have to pursue proof individual to each class member.  However, "[t]here is no requirement that "the identity of the class members . . . be known at the

time of certification." Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 536 (N.D. Cal. 2012); Wolph, 272 F.R.D. at 482. If class actions could be defeated because membership was difficult to ascertain at the class certification stage, "there would be no such thing as a consumer class action." Ries, 287 F.R.D. at 536. As long as the class definition is sufficiently definite to identify putative class members, "[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification." Id.

Defendant further argues that the class must "be defined in such a way that anyone within it would have standing." Burdick v. Union Sec. Ins. Co., No. 07-4028, 2009 WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009). Defendant contends that the class definitions include members who were either unexposed to the alleged misrepresentations or whose purchasing decisions were unaffected by the representations and accordingly suffered no injury. In the Ninth Circuit, "standing is satisfied [under the UCL and FAL] if at least one named plaintiff meets the requirements. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011); see also Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 328-29 (2011) (holding alleged false information on labels sufficient for standing for UCL and FAL claims). Here, Plaintiff Larsen contends that she was induced to purchase Defendant's products at least in part because of Defendant's representations, and that otherwise she would have paid less or purchased other products. (Complaint ¶ 16; Doc. No. 136-2, Dep. of T. Larsen at 143:3-7, 147:8-20, 149:14-19, 150:15-19, 192:13-193:2); see Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims . . . . To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'); In re Google AdWords Litig., No. 5:08-CV-3369, 2012 WL 28068, at *10 (N.D. Cal. Jan.

5, 2012) ("The requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations.").

Likewise, under the CLRA, "[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." Stearns, 655 F.3d at 1022. The materiality of Defendant's alleged misrepresentations and the inference of reliance satisfy the "actual injury" requirement of the CLRA and alleviate any concerns regarding standing. See id. The Court concludes that the proposed class is sufficiently ascertainable to merit certification.

### 2. Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," rather the inquiry focuses on the difficulty or inconvenience of joining all members of class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. Gay v. Waiters' & Dairy Lunchmen's Union, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Here the parties estimate that Kashi has sold millions of Kashi products in the last four years in the United States, representing thousands of products sold in each state with labels including the alleged misrepresentations. (Doc. No. 108-2 ¶ 3.) Defendant does not dispute the numerosity of any of the proposed classes. Accordingly, the Court concludes that Plaintiffs have satisfied this requirement.

///

///

///

///

///

### 3. Commonality

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." Wal–Mart Stores, Inc., 131 S. Ct. at 2551. The "claims must depend on a common contention" and "[t]hat common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998). All questions of fact and law need not be common to satisfy the rule. Id. Rather, in deciding whether plaintiffs share a common question with the prospective class, the named plaintiffs must share at least one question of fact or law with the prospective class. Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (citing Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)); see Mazza, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

Defendant contends that the differences in Kashi products and the motivations of their customers prevent the bulk of issues from being common. Defendant asserts that each Plaintiff's claims, at best, would only be common to others who purchased the same product. However, commonality under Rule 23(a)(2) only requires there be some common issues of fact and law. Keilholtz v. Lennox, 268 F.R.D. 330, 337 (N.D. Cal. 2010). Plaintiffs need only show that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 S. Ct. at 2551.

Here, Plaintiffs have identified several legal and factual issues common to the

putative class's claims, including whether the use of the term "Nothing Artificial" to advertise food products that contain the allegedly synthetic ingredients violates the UCL, FAL, CLRA, or Defendant's own warranties.  By definition, all class members were exposed to such representations and purchased Kashi products, creating a "common core of salient facts."  See Ries, 287 F.R.D. at 528.  Courts routinely find commonality in false advertising cases that are materially indistinguishable from this matter. See id. at 537; Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 377 (N.D. Cal. 2010); In re POM Wonderful LLC Marketing & Sales Practices Litig., No. ML 10–02199, 2012 WL 4490860, at *1 (C.D. Cal. Sept. 28, 2012) (certifying a class in an action alleging violations of the UCL, FAL, and CLRA arising out of marketing regarding the health benefits of Pom Wonderful brand pomegranate juice). "[V]ariation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." Ries, 287 F.R.D. at 537.  Defendant's argument that Plaintiff Larsen can only represent purchasers of the exact same products, rather than similar products with the same alleged misrepresentations, is likewise unavailing.  See Anderson v. Jamba Juice Co., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (holding purchaser of certain smoothie kits had standing as to purchasers of other kits because they contained same alleged misrepresentation).  Plaintiffs seek common relief in the form of restitution for their purchases and injunctions prohibiting the allegedly false advertisement to continue.

Plaintiffs satisfy Rule 23(a)(2)'s commonality requirement with regards to a California "Nothing Artificial" class.  See Mazza, 666 F.3d at 589 (noting plaintiff bears "limited burden" to demonstrate single common question of law or fact); Hanlon, 150 F.3d at 1019-22; In re Ferrero Litigation, 278 F.R.D. 552, 558 (S.D. Cal. 2011) (finding commonality where claims were based on "common advertising campaign").

///

///

### 4. Typicality

Rule 23(a)(3) requires the representative party to have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." Rodriguez, 591 F.3d at 1124 (citations omitted). The typicality requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (citations omitted).

Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Kashi products, as well as differences in their preferences and reasons for purchasing Kashi products, render them atypical of the proposed classes. "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff." Simpson v. Fireman's Fund Ins. Co., 231 F.R.D. 391, 396 (N.D. Cal. 2005). Moreover, "individual experience with a product is irrelevant" because "the injury under the UCL, FAL and CLRA is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'" Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 534 (C.D. Cal. 2011).

Plaintiff Larsen's allegations include point-of-purchase loss. "Plaintiff[] and class members . . . were all exposed to the same alleged misrepresentations on the packages and advertisements." Johns v. Bayer Corp., 280 F.R.D. 551, 557 (S.D. Cal. 2012). Contrary to Defendant's assertion, Plaintiff Larsen testified that she would not have purchased the Kashi product or would have paid less for the Kashi product had

she known it contained artificial ingredients.  Thus, Plaintiff Larsen alleges to have suffered the same type of economic injury and seeks the same type of damages as the putative class members; namely, a refund of all or part of the purchase price.  As such, Plaintiff Larsen's interests "align[ ] with the interests of the class." Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  Plaintiffs need not show that the representations were the only cause, or "even the predominant or decisive factor," influencing their conduct.  In re Tobacco II Cases, 46 Cal. 4th 298, 326-27 (2009).  That Plaintiffs may have considered other factors in their purchasing decisions does not make them atypical.  Bruno, 280 F.R.D. at 534 (rejecting argument that plaintiff was atypical because she considered other facts in making purchases).  Moreover, the fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether they purchased Kashi products specifically because they were supposedly healthy and natural.  Plaintiff Larsen and class members share the same interests in determining whether Kashi products were deceptively advertised and labeled.

Plaintiffs seek to show misrepresentations common to the identified Kashi products and thus common to members of the putative class.  Regardless of whether they are "substantially identical," Plaintiff Larsen's "claims are reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020.  The Court therefore concludes that Plaintiff Larsen's claims satisfy the typicality requirement under Rule 23(a).

### 5.     Adequacy of Representation

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (citing Hanlon, 150 F.3d at 1020).

1       The named Plaintiff meets the two-prong test in <u>Staton</u>.  <u>Id</u>.  Plaintiff Larsen and

2   the proposed class share the same claims and interest in obtaining relief, and she is

3   vigorously pursuing relief on behalf of the proposed class.  Plaintiff Larsen and the

4   class were exposed to the same alleged misrepresentation on Kashi product labels, and

5   she testified that she would have either paid less or purchased other products had she

6   not been deceived.  Plaintiff Larsen's interests are therefore coextensive with the

7   proposed class.  Defendant fails to show that Plaintiff Larsen is so uninterested in or

8   uniformed about the case so as to be inadequate representatives of the class.  <u>See</u>

9   <u>Moeller v. Taco Bell Corp.</u>, 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("The threshold of

10  knowledge required to qualify a class representative is low; a party must be familiar

11  with the basic elements of her claim[], and will be deemed inadequate only if she is

12  'startlingly unfamiliar' with the case." (citation omitted)).  Plaintiff Larsen is

13  sufficiently familiar with her claims to adequately represent the members of the

14  proposed class.  (Doc. No. 136-3, Dep. of T. Larsen at 188:8-18.)

15      Plaintiff Larsen would adequately represent the class.  Additionally, the interim

16  co-lead counsel has experience in prosecuting consumer fraud and warranty class

17  actions.  (Doc. Nos. 18-1, 19-1, 60.)  The Court concludes that Plaintiff Larsen and her

18  counsel are adequate representatives of the proposed classes.

19      **B.**    **Requirements of Rule 23(b)(3)**

20      In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

21  class certification must also show that the action is appropriate under Rule 23(b)(1),

22  (2) or (3).  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).  Certification

23  under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be

24  served best by settling their differences in a single action."  <u>Hanlon</u>, 150 F.3d at 1022

25  (internal quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do

26  issues common to the class "predominate" over issues unique to individual class

27  members, and (2) is the proposed class action "superior" to other methods available for

28  adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3); <u>Hanlon</u>, 150 F.3d at 1022.  In

evaluating predominance and superiority, the Court must consider: (1) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (2) the interest of individuals within the class in controlling their own litigation; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D); Amchem, 521 U.S. at 615-16.

### 1.   Predominance

The predominance analysis under Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2).  The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  Hanlon, 150 F.3d at 1022.  In contrast to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  Id.  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication.  Id.  To satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement. The predominance inquiry under Rule 23(b) is more rigorous as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623-24.

### a.   Consumer Protection

Plaintiff Larsen seeks certification of claims under the UCL, FAL, and CLRA. Defendant contends that individual issues of reliance and injury defeat predominance. The Court concludes that Plaintiff makes a sufficient showing of materiality to create an inference of reliance and, as a result, common issues predominate over considerations individual to each class member.

Relief under any of the UCL's three prongs is available "without individualized proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation. Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289

(2002); Tobacco II, 46 Cal.4th at 326-27.  "The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions," meaning that "in the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase."  Kwikset, 51 Cal.4th at 331, 334.

The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.  Relief under the CLRA is available to "any consumer who suffers any damage as a result of the use or employment" of any unlawful "method, act, or practice."  Cal. Civ. Code § 1780(a).  Such damage may result "through the materiality" of an alleged omission. See Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595-96 (C.D. Cal. 2008).  Upon a sufficient showing at the certification stage, whether an omission is "material[ ]" presents a "common question of fact suitable for treatment in a class action."  Mass. Mut., 97 Cal. App. 4th at 1294; Stearns, 655 F.3d at 1022 (holding that materiality is established "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question") (quoting Steroid Hormone Prod. Cases, 181 Cal. App. 4th 145, 155-56 (2010)).  "[T]he causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment" because "[c]ausation as to each class member is commonly proved more likely than not by materiality."  Mass. Mut., 97 Cal. App. 4th at 1292.

Plaintiffs make a sufficient showing of materiality for the purposes of class certification.  Plaintiffs allege that consumers of Kashi products are misled by the use of the phrase "Nothing Artificial" in advertisements and on the packaging of Kashi products, and that the "Nothing Artificial" representation affects consumers' purchasing decisions.  Unlike the phrase "All Natural," the representation "Nothing Artificial" has a clearly ascertainable meaning; namely, that the product contains no artificial or synthetic ingredients.  Plaintiff Tamar Larsen alleges that she purchased

Kashi products because of the "Nothing Artificial" representation, and would have paid less or purchased other products had she known that the products contained artificial or synthetic ingredients. (Complaint ¶ 16; Doc. No. 136-2, Dep. of T. Larsen at 143:3-7, 147:8-20, 149:14-19, 150:15-19, 192:13-193:2.)  Plaintiffs make a sufficient showing for the purposes of class certification that the challenged ingredients might be considered artificial or synthetic, and that the named plaintiff and putative class members might have relied on the "Nothing Artificial" representation to their detriment.[3]  See Tobacco II, 46 Cal. 4th at 326-27 (noting plaintiffs need not show that the representations were the only cause, or "even the predominant or decisive factor" influencing their conduct).  Moreover, the proposed "Nothing Artificial" class covers Kashi's "Heart to Heart" product line, including ten products, alleviating concerns that individual purchasing factors for a variety of products would predominate. (Complaint ¶ 72.)

The "ultimate question of whether the [allegedly misleading] information [is] material [is] a common question of fact suitable for treatment in a class action." Keilholtz, 268 F.R.D. at 343.  Although Defendant calls into question Plaintiffs' evidence tending to show the materiality of the representation in light of the challenged ingredients, the ultimate determination is to be made by the trier of fact.  Stearns, 655 at 1022.  The representation that a health food product contains "Nothing Artificial" is likely material to consumers.  Given Plaintiffs' testimony, they may be able to establish the materiality of the representation to their purchasing decisions.  It certainly cannot be said that the "'fact [allegedly] misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'"  Tobacco II, 46 Cal. 4th at 326 (citations omitted) (quoting Engalla,

---

[3] For products labeled "Nothing Artificial," Plaintiffs challenge the presence of pyridoxine hydrochloride, alpha-tocopherol, and hexane-processed soy ingredients. (Complaint ¶ 4.) Plaintiffs proffer federal regulations classifying pyridoxine hydrochloride and alpha-tocopherol as synthetic, and Defendant does not argue that hexane processing is natural, although Defendant contends that processing only yields de minimis trace amounts of synthetic hexane in its food products.  (Doc. No. 108-1 at 5-6.)

15 Cal. 4th at 976-77); accord Ries, 287 F.R.D. at 531.

For the purposes of class certification, it is sufficient that the alleged material misstatement and omission was part of a common advertising scheme to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question.  See Hanlon, 150 F.3d at 1019-22; In re Ferrero Litigation, 278 F.R.D. at 560; Johns, 280 F.R.D. at 557-58 & n. 4; Allen v. Holiday Universal, 249 F.R.D. 166, 193 (E.D. Pa. 2008).  The Court concludes that common issues exist and predominate over individual issues in this matter, satisfying the predominance requirement of Rule 23(b)(3) for a California "Nothing Artificial" class.

### b.    Breach of Express Warranty and Quasi Contract

Common issues also exist and predominate on Plaintiffs' claims for quasi-contract and breach of express warranty as to the products labeled "Nothing Artificial." Plaintiff Larsen's claims are based on common contentions of deceptive conduct by Defendant in marketing its products.  Specifically, this case concerns whether Defendant's products contained artificial ingredients and whether Defendant made material representations to the contrary.  Determinations of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment.  See Wolin, 617 F.3d at 1173-74; see also, e.g., Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 534-37 (C.D. Cal. 2012) (certifying warranty claims).

Likewise, quasi-contract claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members.  See, e.g., Keilholtz, 268 F.R.D. at 344 (certifying class for unjust enrichment claim); Cartwright v. Viking Indus., Inc., No. 2:07-CV-02159, 2009 WL 2982887, at *12-13 (E.D. Cal. Sep. 14, 2009) (finding predominance of common issues because "the crux of plaintiff's claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts

about the defective nature of those products").  Plaintiff Larsen's quasi-contract and breach of express warranty claims raise common factual and legal issues that predominate over individual issues and therefore satisfy Rule 23(b)(3) for a California "Nothing Artificial" class.

### c.   Damages

Defendant contends that the difficulties inherent in determining damages owed to each class member defeats predominance.  Typically, however, the individual nature of damages does not overcome the predominance of common issues regarding liability.  The "amount of damages is invariably an individual question and does not defeat class action treatment." Levya v. Medline Indust. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013); Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 639-40 (S.D. Cal. 2010); Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 479 (C.D. Cal. 2012).

Plaintiff Larsen claims the same type of economic injury and damages as the putative class members.  Plaintiffs allege point-of-purchase loss and seek restitution in the form of a refund of all or part of the purchase price.  Cf. Comcast v. Behrend, 133 S. Ct. 1426, 1435 (2013) (stating in antitrust cases plaintiffs must translate "the legal theory of the event into an analysis of the economic impact of that event").  While Plaintiffs, should they prevail, are likely not entitled to a full refund of the purchase price, having obtained some benefit from the products purchased even if they were not as advertised, Plaintiffs may seek some amount representing the disparity between their expected and received value.  See, e.g., Ries, 287 F.R.D. at 532; Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 700 (2006) (observing that a proper measure of restitution for making false claims that a product was made in the U.S.A. could be "the dollar value of the consumer impact or the advantage realized by" such claims compared to similar products made in China).  A court awarding restitution under the California consumer protection laws has "'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully

acquired." <u>Weiner v. Dannon Co., Inc.</u>, 255 F.R.D. 658, 670-71 (C.D. Cal. 2009) (noting that "although the Court recognizes the problems inherent in calculating damages for a class action based on consumer products sold at varying prices," such difficulties should not defeat class certification).

"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." <u>Chavez</u>, 268 F.R.D. at 379.  Plaintiffs represent that they can calculate the total restitutionary damages based upon sales, profits and prices data from records generally maintained by Kashi. (<u>See</u> Doc. No. 108-2 ¶ 2 (stipulation of parties that Kashi maintains sales data for each product).)  If individual issues as to how much reward each class member is entitled later predominate, the Court can address such concerns at that time.  At this time, the Court is satisfied that Plaintiffs have a viable theory of how to calculate damages.  <u>See</u> <u>Zeisel v. Diamond Foods, Inc.</u>, 2011 WL 2221113, at *10 (N.D. Cal. June 07, 2011) (accepting plaintiff's contention for class certification purposes that "he will be able to prove the proper amount of restitution by relying on documents produced by [defendant] relating to net sales, profits, and costs, as well as retail prices of" the products at issue).  As a result, the Court determines that the potential recovery is not an impediment to the requirements of commonality or predominance at this time.

## 2.   Superiority

Rule 23(b)(3) requires the Court to find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considerations pertinent to this finding include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in theparticular forum; and

1    (D) the likely difficulties in managing a class action.

2    Fed. R. Civ. P. 23(b)(3)(A)-(D).  The superiority requirement tests whether "classwide

3    litigation of common issues will reduce litigation costs and promote greater efficiency."

4    Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  "If each class

5    member has to litigate numerous and substantial separate issues to establish his or her

6    right to recover individually a class action is not superior." Zinser, 253 F.3d at 1192.

7         Plaintiff Larsen asserts she was misled by Defendant's common advertising

8    campaign of Kashi food products.  The claims are common, involve small sums, and

9    do not depend on individual determinations.  Where a case involves multiple claims for

10   relatively small individual sums, some plaintiffs may not be able to proceed as

11   individuals because of the disparity between their litigation costs and what they hope

12   to recover.  Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas

13   Sands, Inc., 244 F.3d 1163 (9th Cir. 2001).  Here, it would not be economically feasible

14   to obtain relief for each class member given the small size of each class member's

15   claim.    See Deposit. Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980).

16   Accordingly, the Court finds that class action is clearly superior to ensure a fair and

17   efficient adjudication of the present action.

18   **III.   "All Natural" Class**

19        Plaintiffs seek to certify a class of all purchasers of Kashi products during the

20   class period that contained one or more of the challenged ingredients and were labeled

21   "All Natural."  Plaintiffs allege causes of action under California's consumer protection

22   laws as well as theories of breach of warranty and quasi contract.  Defendant contends

23   that the nature of Defendant's "All Natural" representation precludes it from class

24   treatment based on issues with ascertainability, commonality, typicality, and

25   predominance.  Based on the record, the Court declines to certify the broad class

26   Plaintiffs propose.  The Court certifies a narrower class based on certain of the

27   challenged ingredients.

28        Relief under any of the UCL's three prongs is available "without individualized

proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation. Mass. Mut, 97 Cal. App. 4th at 1289; Tobacco II, 46 Cal. 4th at 326-27. "The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions," meaning that "in the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase." Kwikset, 51 Cal.4th at 331, 334. "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." Tobacco II, 46 Cal. 4th at 326-27. "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." Id. Similarly, relief under the CLRA is available to "any consumer who suffers any damage as a result of the use or employment" of any unlawful "method, act, or practice." Cal. Civ. Code § 1780(a). Such damage may be shown "through the materiality" of an alleged omission. See Parkinson, 258 F.R.D. at 595-96.

Plaintiffs contend that the materiality of Defendant's misrepresentation yields an inference of reliance, creating common issues that predominate among the class. In evaluating whether common issues predominate, "the district court is required to make a rigorous analysis of the case before it. . . . Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." Stearns, 655 F.3d at 1019 n.7 (quoting Wal-Mart, 131 S. Ct. at 2548); see also Ellis, 657 F.3d at 981 ("[A] district court must consider the merits if they overlap with the Rule 23[] requirements."). Here, for the majority of the challenged ingredients, Plaintiffs make an inadequate showing of materiality to infer reliance by the class.

Defendant contends that Plaintiffs fail to show that either consumers or food producers have any kind of uniform definition of "All Natural" that affects purchasing decisions, such that the "All Natural" representation was not materially false. (See Doc. No. 129 at 6-8 (surveying Defendant's evidence showing disparity in definitions

of "natural" in food industry and among named plaintiffs).)   Defendant provides evidence demonstrating that food producers, consumers, and the Food and Drug Administration all fail to define "natural" in any definite manner.  (Id.)  Defendant represents that its challenged products contain as little as 0.01% and, at most, 5% by weight the challenged ingredients.  (See Doc. No. 129-2.)  Defendant presents evidence that many consumers would still view a product as a "natural food product" despite those amounts of allegedly artificial ingredients.  (See Doc. No. 129-3 at K0000384.) Moreover, Defendant points out that Plaintiffs challenge over 90 different products labeled "All Natural," with different ingredients and different advertising campaigns, and which consequently inspire different calculations in the minds of prospective customers.  Ten of the thirteen challenged ingredients are even allowed in certified "organic" goods, see 7 C.F.R. §§ 205.601(i)(9), 205.605(b),[4] and consumers, including named plaintiffs, often equate "natural" with "organic" or hold "organic" to a higher standard.  (See Doc. No. 129-3 at K0000374 (marketing survey showing differing definitions of "natural," including "close to organic"); Doc. No. 127-16, Dep. of T. Diaz at 129:14-18 ("A. Well, my definition of all natural would be like organic, nothing on it.  Q. So your definition of all natural is synonymous with organic?  A. Yes.").)  Additionally, Kashi provides a definition of "natural" on its website, available to putative class members, that accommodates most of the challenged ingredients. (Doc. No. 127-6 at 10.)

Plaintiffs fail to sufficiently show that class members would view the presence of the challenged ingredients that are permitted in certified "organic" foods as violative of the "All Natural" representation, especially in light of the large number and different types of products challenged.  "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and

---

[4] They are ascorbic acid, calcium phosphates, glycerin, potassium bicarbonate, potassium carbonate, sodium acid pyrophosphate, sodium citrate, sodium phosphates, tocopherols, and xantham gum.  Calcium pantothenate and pyridoxine hydrochloride are not permitted.

the class should not be certified." Stearns, 655 F.3d at 1022 (quoting In re Vioxx Class Cases, 103 Cal. Rptr. 3d 83, 94 (2009)).  Unlike Defendant's "Nothing Artificial" representation, at this time, Plaintiffs fail to sufficiently show that "All Natural" has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of "All Natural" in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members.  See Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003) (stating advertisements are deceptive only if a "significant portion" of reasonable consumers might be misled). Even the named plaintiffs disagree about the definition of "All Natural," and over whether the challenged ingredients fail to satisfy their expectations regarding "All Natural" products.  (See, e.g., Doc. No. 127-16, Dep. of T. Diaz at 147:13-148:8, 203:2-206:18 (testifying that presence of several of challenged ingredients is consistent with product being "all natural"); Doc. No. 127-17, Dep. of S. Astiana at 142:8-19, 153:20-24 (stating her definition of natural is "pretty similar" to Kashi's definition); Doc. No. 127-19, Dep. of M. Babic at 116:4-19, 147:10-13.)  Class members' views of "All Natural" may very well accommodate the presence of the challenged ingredients.  See Moheb v. Nutramax Labs. Inc., 2012 WL 6951904, at *7-8 (C.D. Cal. Sep. 4, 2012) (refusing to certify class where plaintiffs failed to make showing that consumers relied on or cared about representations); see also Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (noting "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or CLRA).  Absent stronger "evidence as to what consumers perceived or what they would find material, the inference" of reliance does not apply.  Vioxx, 103 Cal. Rptr. 3d at 99.

Likewise, Plaintiffs' claims for breach of express warranty and quasi contract due to the "All Natural" representations and the presence of those ingredients are insufficient for class treatment.  Because Plaintiffs make an insufficient showing that

the "All Natural" representation is materially misleading, it is fatally unclear whether, from the perspective of the putative class, Defendant breached any express warranty or was unjustly enriched.  The individual views of each class member as to the exact nature of Defendant's warranty would predominate over common issues.  Plaintiffs' claims regarding the presence of Defendant's "All Natural" representations on products containing those ingredients accordingly fail to satisfy the commonality and predominance requirements of Rule 23.

In contrast, Plaintiffs make a sufficient showing of materiality to justify certification of a class pertaining to hexane-processed soy ingredients, calcium pantothenate, and pyridoxine hydrochloride.  Hexane is listed as a "synthetic organic chemical manufacturing industry chemical," see 40 C.F.R. 63, Subpt. F, Tbl. 1, and Kashi admits that hexane-processed soy ingredients do not even satisfy Kashi's own definition of "All Natural" according to its website.  Calcium pantothenate and pyridoxine hydrochloride are designated by statute as "synthetic" but, unlike the other challenged ingredients, are not permitted in certified "organic" foods.  See 7 C.F.R. §§ 205.601(i)(9), 206.605(b), 21 C.F.R. §§ 184.1212, 184.1676; (Doc. No. 109-11.) Plaintiffs make a sufficient showing for class certification that Defendant's representation of "All Natural" on products containing those three ingredients might be considered a material misrepresentation to reasonable consumers.[5]  Accordingly, the Court certifies a class covering Kashi products containing calcium pantothenate, pyridoxine hydrochloride, and/or hexane-processed soy ingredients but labeled "All Natural," and denies the remainder of Plaintiffs' motion to certify an "All Natural" class.

///

///

---

[5] Plaintiffs' claims concerning those three ingredients also satisfy the other Rule 23 requirements for class certification.

1    **IV.    Nationwide Class**

2    　　Plaintiffs request certification of nationwide classes asserting claims under

3    California law.  Defendant contends that <u>Mazza v. Honda American Honda Motor Co.</u>,

4    666 F.3d 581 (9th Cir. 2012) bars this Court from certifying nationwide classes based

5    on California law in this case.  The Court agrees with Defendant.

6    　　Under California's choice of law rules, the class action proponent bears the initial

7    burden to show that California has "significant contact or significant aggregation of

8    contacts" to the claims of each class member.  <u>Wash. Mut. Bank v. Sup. Ct.</u>, 24 Cal.4th

9    906, 921 (2001) (citations omitted).  Such a showing is necessary to ensure that

10   application of California law is constitutional.  <u>See</u> <u>Allstate Ins. Co. v. Hague</u>, 449 U.S.

11   302, 310-11 (1981).  Once the class action proponent makes this showing, the burden

12   shifts to the other side to demonstrate "that foreign law, rather than California law,

13   should apply to class claims."  <u>Wash. Mut. Bank</u>, 24 Cal.4th at 921.

14   　　"California law may only be used on a classwide basis if the interests of other

15   states are not found to outweigh California's interest in having its law applied."

16   <u>Mazza</u>, 666 F.3d at 589-90.  To determine whether the interests of other states

17   outweigh California's interest, courts apply a three-step governmental interest test:

18   　　First, the court determines whether the relevant law of each of the
19   　　potentially affected jurisdictions with regard to the particular issue in
     　　question is the same or different.

20   　　Second, if there is a difference, the court examines each jurisdiction's
21   　　interest in the application of its own law under the circumstances of the
     　　particular case to determine whether a true conflict exists.

22   　　Third, if the court finds that there is a true conflict, it carefully evaluates
23   　　and compares the nature and strength of the interest of each jurisdiction
     　　in the application of its own law to determine which state's interest would
24   　　be more impaired if its policy were subordinated to the policy of the other
     　　state, and then ultimately applies the law of the state whose interest would
25   　　be more impaired if its law were not applied.

26   <u>McCann v. Foster Wheeler LLC</u>, 48 Cal.4th 68, 81-82 (Cal. 2010).

27   　　In <u>Mazza</u>, the Ninth Circuit reviewed the application of California consumer
28   protection laws, specifically the UCL, FAL, CLRA, and unjust enrichment, to a

nationwide class.  Mazza, 666 F.3d at 587, 590.  In conducting California's choice-of-law analysis, the court determined the following: (1) there are material differences between California consumer protection laws and those of other states, such as requirements of scienter or reliance and available remedies; (2) foreign jurisdictions have a significant interest in regulating interactions between their citizens and corporations doing business within their state, insofar as consumer protection laws affect a states' ability to attract industry; and (3) the application of California law to those jurisdictions would significantly impair their "ability to calibrate liability to foster commerce," while "California's interest in applying its law to residents of foreign states is attenuated."  Id. at 591-94.  Based on this analysis, the court held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," and vacated the district court's certification of a nationwide class.  Id. at 594.

This case involves application of similar consumer protection laws as Mazza, and Defendant identifies the same material differences in the laws that dissuaded the Ninth Circuit from applying California law to other states. (Doc. No. 127 Ex. 39; Doc. No. 129 at 37-38.)  The Court declines to apply California consumer protection law to a nationwide class in this matter.  Accordingly, while the Court grants Plaintiffs' motion to certify certain California classes, the Court denies Plaintiffs' motion to certify nationwide or multi-state classes.

## Conclusion

The Court grants in part and denies in part Plaintiffs' motion for class certification.   The Court certifies the following class, representing California purchasers of Kashi products marketed and labeled as containing "Nothing Artificial" during the class period:

///

///

///

1
2
3
4

> California "Nothing Artificial" Class: All California residents who purchased Kashi Company's food products on or after August 24, 2007 in the State of California that were labeled "Nothing Artificial" but which contained one or more of the following ingredients: Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Hexane-Processed Soy ingredients.  The Court excludes from the class anyone with a conflict of interest in this matter.

5
6
7
8

The Court appoints Tamar Larsen as class representative of the California "Nothing Artificial" class.  The Court additionally certifies the following class, representing California purchasers of Kashi products marketed and labeled as "All Natural" during the class period:

9
10
11
12

> California "All Natural" Class: All California residents who purchased Kashi Company's food products on or after August 24, 2007 in the State of California that were labeled "All Natural" but which contained one or more of the following ingredients: Pyridoxine Hydrochloride, Calcium Pantothenate and/or Hexane-Processed Soy ingredients.  The Court excludes from the class anyone with a conflict of interest in this matter.

13
14
15
16

The Court appoints Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen, and Kimberly S. Sethavanish as class representatives of the California "All Natural" class.[6]  The Court appoints Faruqi & Faruqi, LLP and Feinstein Doyle Payne & Kravec, LLC as counsel for both classes.  The Court denies the remainder of Plaintiffs' motion.

17

**IT IS SO ORDERED.**

18

DATED: July 30, 2013

19
20

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

21
22
23
24
25
26
27
28

---

[6] The Court appoints the named plaintiffs as class representatives contingent on the named plaintiffs satisfying the criteria set out in this Order.