**FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC**
Joseph N. Kravec, Jr. (*pro hac vice*)
Wyatt A. Lison (*pro hac vice*)
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email:  jkravec@fdpklaw.com
wlison@fdpklaw.com

*Co-Lead Class Counsel*

(Additional Counsel on Signature Page)

**FARUQI & FARUQI, LLP**
Nadeem Faruqi (*pro hac vice*)
Antonio Vozzolo (*pro hac vice*)
Andrea Clisura (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331
Email:  nfaruqi@faruqilaw.com
avozzolo@faruqilaw.com
aclisura@faruqilaw.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ASTIANA, MILAN BABIC, TIMOTHY BOLICK, JOE CHATHAM, JAMES COLUCCI, TAMARA DIAZ, MARTHA ESPINOLA, TAMAR LARSEN, MARY LITTLEHALE, and KIMBERLY S. SETHAVANISH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KASHI COMPANY, a California corporation,<br><br>Defendant. | Case Number: 11-cv-1967-H (BGS)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>Judge:  Hon. Marilyn L. Huff<br>Date:    May 27, 2014<br>Time:   4:00 p.m.<br>Ctrm:   15A |

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................1

II.    PROCEDURAL BACKGROUND ...............................................6

III.   THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS ..................................................11

IV.    TERMS OF THE PROPOSED SETTLEMENT...........................15

     A.   Benefit To Settlement Class Members From The Settlement Fund..............................................................................15

     B.   Release And Discharge Of Claims.......................................18

     C.   Payment Of Attorneys' Fees And Expenses ........................18

     D.   Compensation For The Class Representatives......................18

     E.   Payment Of Notice And Administrative Fees.......................19

V.     THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER ................................19

     A.   The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria .................................................19

     B.   The Proposed Settlement Class Should Be Certified...........22

          1.   The Settlement Class Satisfies Rule 23(a)................24

               a.   Numerosity ....................................................24

               b.   Commonality ..................................................24

               c.   Typicality .......................................................26

               d.   Adequacy .......................................................27

          2.   The Settlement Class Satisfies Rule 23(b)(3) ...........28

               a.   Common Questions Of Law And Fact Predominate......28

               b.   A Class Action Is The Superior Mechanism For Adjudicating This Dispute................................29

i

C.    The Proposed Notice Program Constitutes Adequate Notice And
      Should Be Approved ................................................................30

VI.    CONCLUSION.................................................................................32

ii

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Alaniz v. Cal. Processors, Inc.*,
    73 F.R.D. 269 (N.D. Cal. 1976),
    *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978) .....................12, 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................23, 28, 30

*Arnold v. United Artists Theatre Circuit, Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) .................................................................25

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387, 2014 U.S. Dist. LEXIS 1640 (N.D. Cal. Jan. 7, 2014) .............21

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ...............................................................*passim*

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) .................................................................14

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................19

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .....................................................................19

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) .............................................................................9, 10

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) .......................................................................12

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .................14

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ...................................................................................26

iii

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................................*passim*

*Leyva v. Medline Industries Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...............................................................10

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ,
   1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997),
   *aff'd*, 151 F.3d 1234 (9th Cir. 1998)...............................................14

*Livingston v. Toyota Motor Sales USA, Inc.*,
   No. C-94-1377-MHP,
   1995 U.S. Dist. LEXIS 21757 (N.D. Cal. June 1, 1995)............................20, 22

*Morgan v. Laborers Pension Trust Fund*,
   81 F.R.D. 669 (N.D. Cal. 1979)...........................................................25

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. Of S.F.*,
   688 F.2d 615 (9th Cir. 1982),
   *cert. denied, Byrd v. Civil Service Com.*, 459 U.S. 1217 (1983)......................14

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...............................................................13

*In re POM Wonderful LLC Mktg. and Sales Practices Litig.*,
   No. 10-02199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) .........21

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*
   *Anderson*,
   390 U.S. 414 (1968).........................................................................13

*Sethavanish v. ZonePerfect Nutrition Co.*,
   No. 12-2907, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014)...........21

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000)........................................................24

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .............................................................27

iv

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ..........................................................................23, 29

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .............................................................11, 12, 13

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................11, 12

*In re Veritas Software Corp. Sec. Litig.*,
   496 F.3d 962 (9th Cir. 2007) ...........................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)....................................................................................24

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .......................................................................28

**Statutes**

California Business and Professions Code § 17200, *et seq.* ...............................7, 25

Cal. Com. Code § 2313 ....................................................................................8

California Business & Professions Code § 17500, *et seq.*..................................7, 25

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b)......................................19

Consumer Legal Remedies Act .....................................................................8, 25

Plaintiffs' Magnuson-Moss Warranty Act..............................................................7

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................*passim*

*Manual for Complex Litigation* (Third) § 30.41 (1995) ...................................12, 13

*Manual for Complex Litigation* (Fourth) § 21.632 (2004) ...............................20, 31

4 Alba Conte and Herbert Newberg, *Newberg on Class Actions*
   § 11.25 (4th ed. 2002) .................................................................................20, 27

v

1 Herbert Newberg & Alba Conte, *Newberg on Class Actions*
§ 3.10 (1992)........................................................................................25

CASE NO.:  11-cv-1967-H (BGS)          Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

# I.    INTRODUCTION

Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen, and Kimberly S. Sethavanish (collectively, "Plaintiffs"), and co-lead class counsel for the Class, Feinstein Doyle Payne & Kravec, LLC and Faruqi & Faruqi, LLP (collectively, "Class Counsel"), respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (the "Motion"). As detailed below, the proposed settlement is unquestionably fair, achieves meaningful relief for the Class, and should be preliminarily approved by the Court.

This class action is brought by Plaintiffs on behalf of themselves and all others similarly situated against Defendant Kashi Company ("Kashi" or "Defendant") for allegedly misleading consumers by labeling certain of its food products (the "Products") "All Natural" or "Nothing Artificial," when in fact those Products contained certain synthetic and artificial ingredients.  This Court has already certified two California classes of purchasers of certain Kashi food products.  *See Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) (certifying an "All Natural" class for Products containing pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients and a "Nothing Artificial" class for Products containing pyridoxine hydrochloride, alpha-tocopherol acetate and/or hexane-processed soy ingredients).   Now, after two separate full-day sessions before a mediator, the Parties have reached a comprehensive settlement that more broadly achieves relief for California purchasers of Kashi Products containing one of more of the following ingredients:  pyridoxine hydrochloride, calcium pantothenate,  hexane-processed soy ingredients, ascorbic acid, calcium phosphate, glycerin, monocalcium phosphate, sodium phosphate, potassium bicarbonate, potassium carbonate, sodium acid pyrophosphate, sodium citrate,

1

alpha tocopherol acetate, mixed tocopherols, tocopherol acetate, and/or xanthan gum (the "Challenged Ingredients"). This expansion of the Class definition reflects new evidence of the materiality of Defendant's "All Natural" claim as to *all* of the Challenged Ingredients. Thus, the Settlement Class is expanded to give relief to consumers who have been similarly harmed by Defendant's uniform misrepresentations.

The Stipulation of Settlement ("Settlement" or "Settlement Agreement") and its exhibits were filed by Defendant on May 2, 2014. (ECF No. 219.)[1] The terms of the Settlement are well-informed by over two years of litigation, during which time, Plaintiffs completed merits and experts discovery, including multiple expert depositions. *See* Declaration of Antonio Vozzolo ("Vozzolo Decl.") ¶¶ 16-18, filed herewith. As more specifically set forth in the Parties' Settlement Agreement, and as described in more detail below, the Parties to this action have reached a settlement that provides a real and substantial benefit to California consumers. First and foremost, under the terms of the Settlement, Kashi has agreed to modify, pursuant to the timetable set forth in the Settlement Agreement, its current labeling and advertising to remove "All Natural" and "Nothing Artificial" from those Products that contain the following Challenged Ingredients: (i) pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients in products labeled "All Natural," and (ii) pyridoxine hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled "Nothing Artificial," unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling

---

[1] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement.

CASE NO.: 11-cv-1967-H (BGS)          Plaintiffs' Memorandum of Points and Authorities in Support of
                                      Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

regulatory body.  *See* Settlement Agreement § IV.B.  Additionally, without any admission of liability, Kashi has agreed to provide meaningful monetary relief to Settlement Class Members by disbursing $5.0 million, less any costs associated with the Class Action Settlement Administrator paid by Kashi prior to that time, to a settlement fund to satisfy the costs of notice, claims administration, and awarded attorneys' fees and expenses, and to fund cash payments to Settlement Class Members who submit valid claims for Products purchased between August 24, 2007 and May 2, 2014, in the State of California.  *See id.* § IV.A.2.  From this fund, Settlement Class Members are able to recover $0.50 per package for every Product purchased during the Settlement Class Period (with no limitation), for which they can present written proof of purchase in the form of a receipt or a retail rewards submission.  Settlement Class Members without such proof of purchase are entitled to $0.50 per package, with a maximum recovery of $25 per household, for every package of Product purchased during the Settlement Class Period.  *See id.* § IV.A.1.[2]

As in any class action, the Settlement is subject initially to preliminary approval and then to final approval by the Court after notice to the Class and a hearing.  The proposed Class for settlement purposes should be conditionally certified.  In its Order certifying two California classes of purchasers of certain of the Products, this Court found the requirements for certification under Federal Rule of Civil Procedure 23 satisfied for products containing certain Challenged Ingredients.  *See Astiana*, 291 F.R.D. 493 (certifying an "All Natural" class for

---

[2] The amount of each cash payment will depend on the number and amount of authorized claims submitted per the Settlement Agreement.  *See* Settlement Agreement § IV.A.3.

Products containing pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients and a "Nothing Artificial" class for Products containing pyridoxine hydrochloride, alpha-tocopherol acetate and/or hexane-processed soy ingredients).   Although the proposed settlement Class is more broadly defined to include Products containing **all** the Challenged Ingredients, certification of the settlement Class is warranted for reasons consistent with this Court's previous class certification order, as detailed below.   Accordingly, Plaintiffs now request this Court to enter an order in the form of the [Proposed] Order Preliminarily Approving Class Action Settlement, Conditionally Certifying the Settlement Class, Providing for Notice and Scheduling Order (the "Order"), which is attached to the Settlement Agreement as Exhibit F.  That Order will:

(1)   grant preliminary approval of the Settlement;

(2)   conditionally certify the Class, appointing Plaintiffs Astiana, Babic, Diaz, Larsen and Sethavanish as class representatives ("Class Representatives") for the Settlement Class, and appointing Feinstein, Doyle, Payne & Kravec, LLC and Faruqi & Faruqi, LLP, as counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g);

(3)   establish procedures for giving notice to Members of the Settlement Class;

(4)   approve forms of notice to Settlement Class Members;

(5)   mandate procedures and deadlines for exclusion requests and objections; and

(6)   set a date, time and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a) and (b)(3), as fully discussed below.

The Settlement is fair, reasonable, and undoubtedly falls within the range of possible approval.  Indeed, Class Counsel achieved a substantial benefit for the Class and the likelihood that a greater result could be achieved at trial is remote.  Plaintiffs have vigorously litigated this action for over two years, engaging in extensive motion practice and discovery, and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed settlement.  *See* Vozzolo Decl., ¶¶ 16-18.  The Settlement achieves injunctive relief in the form of a modification of Kashi's current labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain Products.  And the settlement fund provides a tangible and significant monetary benefit to the Class in lieu of the continued risk of litigation.

The Settlement is the product of extended arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class members are treated fairly under the terms of the Settlement.  The Settlement Agreement was entered into only after two full day mediation sessions before the Honorable Howard B. Weiner (retired), where a tentative agreement was reached.  *See id.* ¶ 16.  Plaintiffs, by and through their respective counsel, have conducted an extensive investigation into the facts and law relating to this matter.  The investigation has included consulting industry personnel, extensive consultation with experts, numerous interviews of witnesses and putative members of the Class, as well as legal research as to the sufficiency of the claims.  *See id.* Plaintiffs and their counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement Agreement on a fully informed basis.  *See id.* ¶¶ 16-18.  It is an outstanding result

for the Parties and Settlement Class Members.   The Court should enter the proposed order granting preliminary approval.

## II.   PROCEDURAL BACKGROUND

In 2011, the following putative class action complaints were filed against Kashi and other related defendants in the United States District Court for the Southern District of California:   *Bates v. Kashi Company, et al.*, 3:11-cv-1967; *Babic v. Kashi Company*, 3:11-cv-02816; *Espinola v. Kashi Company*, 3:11-cv-02629 (initially filed in the United States District Court for the Central District of California (11-cv-8534)); *Diaz v. Kashi Company, et al.*, 11:cv-2256; *Chatham v. Kashi Company, et al.*, 11-cv-2285; *Sethavanish, et al. v. Kashi Company*, 11-cv-02356 (initially filed in the United States District Court for the Northern District of California (11-cv-4453)); and *Baisinger v. Kashi Company*, 11-cv-2367 (initially filed in the United States District Court for the Northern District of California (11-cv-4581)) (collectively "the Original Complaints").   Vozzolo Decl., ¶ 5.

On November 28, 2011, the Court ordered the consolidation of the related actions.   *See* ECF No. 16 (naming *Bates* the lead case; ordering consolidation of *Diaz*, *Chatham*, *Sethavanish* and *Baisinger* cases); *see also* ECF No. 22 (ordering consolidation of   *Espinola* case); ECF No. 8 in 3:11-cv-2816 (ordering consolidation of *Babic* case).   On January 18, 2012, the Court appointed the law firms of Stember Feinstein Doyle & Payne, LLC and Faruqi & Faruqi, LLP as interim co-lead counsel.   (ECF No. 41.)

On February 21, 2012, Plaintiffs filed a Consolidated Amended Complaint for Damages, Equitable, Declaratory and Injunctive Relief against Kashi Company, Kashi Sales LLC and Kellogg Company (Case No. 3:11-cv-01967) (the "Consolidated Amended Complaint"), which amended and superseded the Original

1  Complaints.  (ECF No. 49.)

2    In the Consolidated Amended Complaint, which was filed as a putative class

3  action, Plaintiffs allege they bought certain Kashi food products based, at least in

4  part, on misleading statements printed on the products' labels that the products

5  were "All Natural" or "Nothing Artificial."  Plaintiffs allege that, based on the

6  labels, they believed the products contained no synthetic or artificial ingredients

7  and therefore paid a premium price for the products.  Plaintiffs further allege that

8  the products that bore the "All Natural" or "Nothing Artificial" labels contained

9  certain unnatural, synthetic or artificial ingredients.  Plaintiffs further allege that

10  they either would not have purchased the products or would have paid less for the

11  products had they known at the time of purchase that they contained ingredients

12  that were unnatural, synthetic or artificial.

13    On April 6, 2012, Defendants filed a motion to dismiss the Consolidated

14  Amended Complaint.  (ECF No. 61.)  Plaintiffs opposed Defendants' motion to

15  dismiss.  On July 16, 2012, the Court entered an Order granting in part and

16  denying in part Defendants' motion to dismiss.  (ECF No. 79.)  The Court rejected

17  Defendants' arguments that Plaintiffs' claims were preempted by federal law and

18  found that application of the primary jurisdiction doctrine was not appropriate.

19  The Court dismissed all of Plaintiffs' claims against Kashi Sales, LLC and Kellogg

20  Company.  The Court also dismissed Plaintiffs' Magnuson-Moss Warranty Act

21  causes of action, common law fraud cause of action, and claim for unjust

22  enrichment.  The Court denied the remaining portions of Defendants' motion to

23  dismiss the Consolidated Amended Complaint, namely, Plaintiffs' allegations that

24  Kashi's conduct violates the unlawful, unfair and fraudulent prongs of California's

25  Business and Professions Code § 17200, *et seq.* (the "UCL"), the California

26

27

28

7

Business & Professions Code § 17500, *et seq.* (the "FAL"), the Consumer Legal Remedies Act ("CLRA"), and Cal. Com. Code § 2313 (breach of express warranty) or, in the alternative, claims for restitution on the basis of quasi contract.

Kashi answered the Consolidated Complaint on August 15, 2012, denying liability. (ECF No. 81.) Over the following year, the Parties engaged in extensive discovery. Plaintiffs noticed and took a number of depositions, including of Defendant's marketing expert, served multiple sets of requests for production of documents and interrogatories, and served several subpoenas to third parties, which resulted in the production of thousands of pages of documents. Defendant also served, and Plaintiff responded to, requests for production of documents and interrogatories. Further, Defendant deposed the named Plaintiffs as well as Plaintiffs' marketing expert.

On April 15, 2013, Plaintiffs filed a motion for class certification (ECF No. 108), which Kashi opposed. On July 30, 2013, the Court entered an Order granting in part and denying in part Plaintiffs' motion for class certification. (ECF No. 148.) The Court certified the following class, representing California purchasers of Kashi products marketed and labeled as containing "Nothing Artificial" during the class period:

> All California residents who purchased Kashi Company's food products on or after August 24, 2007 in the State of California that were labeled "Nothing Artificial" but which contained one or more of the following ingredients: Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Hexane-Processed Soy ingredients. The Court excludes from the class anyone with a conflict of interest in this matter.

In addition, the Court certified the following class, representing California purchasers of Kashi products marketed and labeled as "All Natural" during the

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

class period:

> All California residents who purchased Kashi Company's food products on or after August 24, 2007 in the State of California that were labeled "All Natural" but which contained one or more of the following ingredients: Pyridoxine Hydrochloride, Calcium Panthothenate and/or Hexane-Processed Soy ingredients. The Court excludes from the class anyone with a conflict of interest in this matter.

The Court also appointed Faruqi & Faruqi, LLP and Feinstein Doyle Payne & Kravec, LLC as co-lead counsel for both classes.

The Court denied Plaintiffs' motion for class certification as to ten of the Challenged Ingredients—ascorbic acid, calcium phosphates, glycerin, potassium bicarbonate, potassium carbonate, sodium acid pyrophosphate, sodium citrate, sodium phosphates, tocopherols, and xantham gum—on the basis that those ingredients were allowed in certified "organic" goods and consumers often equate "natural" with "organic." *Astiana*, 291 F.R.D. at 508. Specifically, the Court reasoned that "***at [that] time***, Plaintiffs fail[ed] to sufficiently show that … Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members." *Id.* (emphasis added).

On August 12, 2013, Kashi filed a Petition For Permission To Appeal Under Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit, seeking the Ninth Circuit's permission to appeal the class certification order. Defendants' petition argued that under the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), Plaintiffs' class certification motions did not translate the legal theory of their false advertising claims into a damages analysis that satisfies the predominance requirement of Rule

23(b)(3).  Plaintiffs filed an opposition to Kashi's Rule 23(f) petition on August 22, 2013, asserting that the Ninth Circuit had already addressed the scope and applicability of the *Comcast* decision in *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013), and that this Court rendered a thoroughly reasoned class certification decision which correctly applied both *Comcast* and *Leyva*.   On October 22, 2013, the Ninth Circuit denied Kashi's petition for permission to appeal the District Court's class certification ruling.

On August 27, 2013, Plaintiffs moved for partial reconsideration of the class certification order on the grounds that the Court erred by excluding the ingredient potassium bicarbonate from the "All Natural" class.  (ECF No. 157.)  Conversely, on August 28, 2013, Kashi moved for modification of the "All Natural" class definition, arguing that the Court erred by including the ingredients calcium pantothenate and pyridoxine hydrochloride.  (ECF No. 160.)  On September 18, 2013, the Court denied each of Plaintiffs' and Defendant's requests that the Court modify the definition of the "All Natural" class.  (ECF No. 173.)  On October 24, 2013, Kashi filed an additional motion to modify the Court's July 30, 2013 class certification order (ECF No. 182), which Plaintiffs opposed.  On November 22, 2013, the Court denied Kashi's motion to modify the Court's class certification order.  (ECF No. 203.)

On October 23, 2013 and December 5, 2013, Class Counsel, Defendant and Defendant's Counsel participated in mediations conducted by the Honorable Howard B. Weiner (retired) at which they reached a tentative settlement.  Vozzolo Decl., ¶ 16.   Subsequent to those sessions, the Parties engaged in protracted, extensive, and hard-fought settlement negotiations.  *See id.*  As a result of those negotiations, the Parties agreed to settle the Litigation pursuant to the terms set

CASE NO.:  11-cv-1967-H (BGS)          Plaintiffs' Memorandum of Points and Authorities in Support of
                                                        Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

forth in the Settlement Agreement. *See id.* ¶¶ 17-18.

Throughout the Litigation, Plaintiffs by and through their respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, completing merits and expert discovery, review and analysis of Kashi's documents and data, and extensive research and assessment of the Challenged Ingredients and the Products. *See id.* ¶¶ 16-18. Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement Class Members. *See id.* Plaintiffs and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and adequate, and that this Settlement is in the best interest of the Settlement Class Members. As a result of this extensive investigation and the extensive negotiations, the Parties reached the proposed Settlement, and the Settlement Agreement was fully executed on May 2, 2014. *See id.* ¶¶ 18-19.

Kashi, while denying all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the action on the terms stated herein in order to avoid further expense, inconvenience and burden and, therefore, has determined that this Settlement on the terms set forth herein is in Kashi's best interests.

## III. THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process. First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "'within the range of possible approval.'" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *In re*

CASE NO.: 11-cv-1967-H (BGS)          Plaintiffs' Memorandum of Points and Authorities in Support of
                                      Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

*Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation* (Third) § 30.41 at 236-38 (1995) (hereinafter "*Manual*").  The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. Of*

*S.F.*, 688 F.2d 615 (9th Cir. 1982), *cert. denied, Byrd v. Civil Service Com.*, 459 U.S. 1217 (1983)); *Manual* § 23.11 at 166:

> Beginning with the first [pretrial] conference, and from time to time throughout the litigation, the court should encourage the settlement process.   The judge should raise the issue of settlement at the first opportunity, inquiring whether any discussions have taken place or might be scheduled.   As the case progresses, and the judge and counsel become better informed, the judge should continue to urge the parties to consider and reconsider their positions on settlement in light of current and anticipated developments.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Factors to be considered by the court in evaluating a proposed settlement may include, among others, some or all of the following: the experience and views of counsel; the risks, complexity, expense and likely duration of continued litigation; the strengths of plaintiff's case; the amount offered in settlement; and the stage of proceedings. *See id*. In evaluating preliminarily the adequacy of a proposed settlement, the proposed settlement enjoys a presumption of fairness because it is the product of extensive arm's length negotiations conducted by experienced and capable counsel with a firm understanding of the strengths and weaknesses of their respective clients' positions. *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery [has] taken place create[s] a presumption that the agreement is fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("there was extensive discovery prior to settlement, allowing both counsel and the Court to fully evaluate the strengths, weaknesses, and equities of the parties' positions"), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

In sum, a compromise must be viewed in the circumstances in which it was achieved. In the final analysis, that decision is committed to the sound discretion of the court.

## IV.   TERMS OF THE PROPOSED SETTLEMENT

The Parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.   The proposed Settlement Class consists of all California residents who, at any time between August 24, 2007 and May 1, 2014 purchased any of the Products.   Excluded from this definition are: (a) Kashi's employees, officers and directors; (b) persons or entities who purchased the Products for the purpose of re-sale; (c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement; and (f) the Court, the Court's immediate family, and Court staff.   Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section VI.B of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by the Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of the Settlement Agreement.

### A.   Benefit To Settlement Class Members From The Settlement Fund

Kashi has agreed to injunctive relief in the form of a modification of its current labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain Products as follows:   "By the later of (i) 120 days following the Effective Date or (ii) December 31, 2014 (the 'Injunctive Relief Effective Date'), Kashi agrees to modify its current labeling and advertising to remove 'All Natural' and 'Nothing Artificial' from those Products that contain the following Challenged Ingredients:  (i) pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients in products labeled 'All Natural,' and

15

(ii) pyridoxine hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled 'Nothing Artificial,' unless the ingredients are approved or determined as acceptable for products identified as 'natural' by a federal agency or controlling regulatory body." *See* Settlement Agreement § IV.B.

Additionally, the Settlement Agreement provides for monetary relief to the proposed Settlement Class by, among other things, requiring Kashi to pay $5.0 million, less any costs associated with the Class Action Settlement Administrator paid by Kashi prior to that time, into a settlement fund. *See* Settlement Agreement § IV.A.2. Defendant shall fund the Settlement Fund within seven (7) days of the Effective Date. *Id.* § IV.A.7. The Settlement Fund shall be applied to pay in full and in order:  (i) any necessary taxes and tax expenses; (ii) all costs associated with the Class Action Settlement Administrator, including costs of providing notice to the Class members and processing claims; (iii) any Fee and Expense Award made by the Court to Class Counsel under section VIII(a) of the Settlement Agreement; (iv) any class representative Incentive Awards made by the Court to Plaintiffs under section VIII(c) of the Settlement Agreement; and (v) payments to authorized Claimants and any others as allowed by the Settlement and to be approved by the Court. *Id.* § IV.A.2.

Class members may seek reimbursement of $0.50 per package for every Product purchased during the Settlement Class Period, for which they can present written proof of purchase in the form of a receipt or a retail rewards submission. Class members may make a claim for every package of such Products for which they submit a valid Claim Form. For Products for which Class members cannot present such proof of purchase, Class members may seek reimbursement of $0.50 per package, with a maximum recovery of $25. Class members may obtain relief

under both sections IV.A.1(a) and (b), with the appropriate paper work and subject to the maximum recovery amount permitted for claims made without written proof of purchase. The amount of each cash payment will depend on the number and amount of authorized claims submitted. If the total amount of eligible claims exceeds the Settlement Fund, then each claimant's award shall be proportionately reduced. If after all valid claims (plus other authorized costs and expenses) are paid, money remains in the Settlement Fund, the remaining amount shall be used to increase pro rata the recovery of each eligible claim.

To be eligible for a cash payment, the Settlement Class Member must timely submit a signed and completed Claim Form containing his or her name and mailing address. The Claim Form will also request an e-mail address for the Settlement Class Member, but an e-mail address will not be required to be eligible for a cash payment. The Settlement Administrator may pay claims that are otherwise valid but untimely filed if there is sufficient money to pay all valid and timely claims in full plus untimely but otherwise valid claims from the Settlement Fund, and payment of any such untimely but valid claims is administratively feasible and otherwise reasonable, taking into account the need to timely pay claims. The determination of the Class Action Settlement Administrator after consultation with Class Counsel and Defendant's Counsel concerning the eligibility and amount of payment shall be final. In the event a Settlement Class Member disagrees with such a determination, the Class Action Settlement Administrator agrees to reconsider such determination, which includes consultation with Class Counsel and Defendant's Counsel. To be eligible, Claim Forms must be postmarked or submitted online no later than eight (8) days before the Settlement Hearing.

All Claimants must include information in the claim form—completed online or in hard copy mailed to the Settlement Administrator—confirming, under penalty of perjury, that they did in fact purchase between August 24, 2007 and May 1, 2014 the packages of Product(s) for which they seek reimbursement.  *See* Settlement Agreement § IV.A.1.d.

## B.   Release And Discharge Of Claims

The Settlement Agreement provides for the release of all claims or causes of action relating to Kashi's packaging, marketing, distribution or sale of food products labeled as "All Natural" or "Nothing Artificial," which have been asserted in the Consolidated Amended Complaint or in any of the Original Complaints.  The release will finally resolve Plaintiffs' and Class Members' claims once the Settlement becomes effective as defined in the Settlement Agreement. *See* Settlement Agreement § VII.

## C.   Payment Of Attorneys' Fees And Expenses

Subject to Court approval, Kashi will pay Class Counsel Court-approved fees and expenses up to a maximum of $1,250,000.  The attorneys' fees were negotiated separately and apart from the other terms of the Settlement Agreement.  The payment by Kashi of Class Counsel's fees and expenses will be from the Settlement Fund to the extent approved and ordered by the Court.  *See* Settlement Agreement § VIII.A.

## D.   Compensation For The Class Representatives

In addition to the individual relief discussed above, Kashi has also agreed to pay Incentive Awards to the Class Representatives, Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen, and Kimberly S. Sethavanish, not to exceed $4,000 per representative plaintiff.  The payment by Kashi of Class Representatives'

18

Incentive Awards will be from the Settlement Fund to the extent approved and ordered by the Court.  *See* Settlement Agreement § VIII.C.

### E.    Payment Of Notice And Administrative Fees

Kashi shall pay to the administrator handling the administration of the Settlement the reasonable costs and expenses of providing notice to the Class in accordance with the Settlement Agreement.[3]  Any reasonable costs associated with the Class Action Settlement Administrator incurred and paid prior to the funding of the Settlement Fund will be paid by Kashi, but upon the occurrence of the Effective Date and the triggering of the payments required by section IV.A of the Settlement Agreement, any such payments will reduce the amount Kashi is obligated to pay to establish the Settlement Fund.  *See* Settlement Agreement § V.C.

## V.    THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.    The Settlement Should Be Preliminarily Approved Because It Satisfies Accepted Criteria

It is well established that the law favors the compromise and settlement of class action suits:  "'[S]trong judicial policy favors settlements . . . .'"  *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (original ellipsis omitted). This is particularly true where "class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The approval of a proposed settlement of a class action is a matter of

---

[3] Notice costs also include notification of the Attorney General of the United States and the attorney general of the State of California in accordance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

19

discretion for the trial court.  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 972 (9th Cir. 2007) ("[T]he district court has substantial discretion in approving the details of a class action settlement").  Courts, however, must give "proper deference to the private consensual decision of the parties," since "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027; *accord.* Fed. R. Civ. P. 23(e)(2) (settlement must be "fair, reasonable, and adequate").

To grant preliminary approval of this class action Settlement, the Court need only find that the Settlement falls within the range of possible approval.  *See, e.g.*, *Livingston v. Toyota Motor Sales USA, Inc.*, No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757, at *24 (N.D. Cal. June 1, 1995) ("The proposed settlement must fall within the range of possible approval."); *see also* 4 Alba Conte and Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002).  The *Manual for Complex Litigation* (Fourth) § 21.632 at 320 (2004) characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.

Here, as discussed above, the Settlement should be preliminarily approved because it clearly falls "within the range of possible approval."  *Alaniz*, 73 F.R.D. at 273.  The settlement was reached on the cusp of trial, after two years of litigation, during which time, Plaintiffs completed extensive merits and experts

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

discovery, including multiple expert depositions.  It is non-collusive, fair, and reasonable.  The likelihood that a greater result could be achieved at trial is remote. The Settlement achieves injunctive relief in the form of a modification of Kashi's current labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain Products, as described above.  Additionally, the Settlement will provide a significant monetary benefit to Settlement Class Members by providing them with $.50 in cash for each Product purchased (without limitation) during the Settlement Class Period with written proof of purchase in the form of a receipt or a retail rewards submission or up to a maximum payment of $25.00 per household for claims made without written proof of purchase.

At the same time, the Settlement eliminates the substantial risk and delay of litigation.  Although Plaintiffs believe their claims have merit, they recognize that they face significant legal, factual, and procedural obstacles to recovery.  Kashi continues to vigorously deny any wrongdoing and denies any liability to the Plaintiffs or any members of the Class.  Although Plaintiffs and Class Counsel have confidence in the claims and although this Court has already certified an "All Natural" and "Nothing Artificial" class, a favorable outcome is not assured.  *See, e.g.*, *In re POM Wonderful LLC Mktg. and Sales Practices Litig.*, No. 10-02199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) (decertifying nationwide class); *see also Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907, 2014 U.S. Dist. LEXIS 18600, at *13-18 (N.D. Cal. Feb. 13, 2014) (denying class certification, finding lack of ascertainability); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387, 2014 U.S. Dist. LEXIS 1640, at *8-11, *28-41 (N.D. Cal. Jan. 7, 2014) (denying class certification for lack of ascertainability and predominance). Even if judgment were entered against Kashi, any appeal in the Ninth Circuit

would likely take years to resolve.  By settling, Plaintiffs and the Settlement Class avoid these risks, as well as the delays and risks of a lengthy trial and appellate process.  The Settlement will provide Settlement Class Members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief.

In light of the relief obtained, the magnitude and risks of the litigation and the legal standards set forth above, the Court should allow notice of the settlement to be sent to the Settlement Class so that Class members can express their views on it.  The Court should conclude that the Settlement's terms are "within the range of possible approval."  *Toyota*, 1995 U.S. Dist. LEXIS 21757, at *24

### B.   The Proposed Settlement Class Should Be Certified

The Settlement Class consists of all California residents who, at any time between August 24, 2007 and May 1, 2014 purchased any of the referenced Products.  On July 30, 2013, this Court granted in part Plaintiffs' motion for class certification, certifying two classes of California purchasers of Kashi products: (i) all California residents who purchased Kashi's food products on or after August 24, 2007 in the State of California that were labeled "Nothing Artificial" but which contained one or more of the ingredients pyridoxine hydrochloride, alpha-tocopherol acetate and/or hexane-processed soy ingredients; and (ii) all California residents who purchased Kashi's food products on or after August 24, 2007 in the State of California that were labeled "All Natural" but which contained one or more of the ingredients pyridoxine hydrochloride, calcium panthothenate and/or hexane-processed soy ingredients.  The proposed Settlement Class is expanded to include Products containing all the Challenged Ingredients.  In this Court's class certification order, the Court denied Plaintiffs' motion for class

certification as to ten of the Challenged Ingredients on the basis that those particular ingredients were allowed in certified "organic" goods and that "***at [that] time***, Plaintiffs fail[ed] to sufficiently show that … Defendant's representation of 'All Natural' in light of the presence of th[os]e challenged ingredients would be considered to be a material falsehood by class members." *Astiana*, 291 F.R.D. at 508 (emphasis added).   Putting aside the fact that Plaintiffs now have evidence to show the materiality of Defendant's "All Natural" claims as to those ten ingredients, rather than proceed to trial the Parties have entered into an arm's-length agreement that permits all Class members who wish compensation for their claims to seek monetary relief by submitting a claim form.   Accordingly, any concern that individual views of each class member could predominate over common issues is unwarranted.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (affirming class certification and approval of settlement, finding Rule 23's predominance requirement does not preclude nationwide *settlement-only* class certification of claims brought under consumer protection and unjust enrichment laws of all 50 states).   For settlement purposes only, the parties and their counsel request that the Court provisionally certify the Settlement Class.

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

management problems . . . for the proposal is that there be no trial."). For the reasons below, this Class meets the requirements of Rule 23(a) and (b).

### 1.   The Settlement Class Satisfies Rule 23(a)

#### a.   *Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, the proposed Settlement Class is comprised of thousands of consumers who purchased the Products – a number that obviously satisfies the numerosity requirement. *See Astiana*, 291 F.R.D. at 501 ("Here the parties estimate that Kashi has sold millions of Kashi products in the last four years in the United States, representing thousands of products sold in each state with labels including the alleged misrepresentations."). Accordingly, the proposed Settlement Class is so numerous that joinder of their claims is impracticable.

#### b.   *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiff and class members' claims "depend upon a common contention," "capable of class-wide resolution . . . mean[ing] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is

easily met.  1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 at 3-50 (1992).

There are ample issues of both law and fact here that are common to the members of the class.  Indeed, all of the Settlement Class Members' claims arise from a common nucleus of facts and are based on the same legal theories.  The Plaintiffs allege that Defendant misled consumers by labeling certain of its products "All Natural" or "Nothing Artificial," when those products contained certain synthetic and artificial ingredients, which ingredients Plaintiffs allege preclude those products from properly being labeled as "All Natural" or "Nothing Artificial."  Here, all of the Settlement Class Members purchased one or more of the Products.   "By definition, all class members were exposed to such representations and purchased Kashi products, creating a common core of salient facts."  *Astiana*, 291 F.R.D. at 501 (internal quotation marks omitted).  Commonality is satisfied here, for settlement purposes, by the existence of these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiffs' claims are brought under legal theories common to the class as a whole, including whether the use of the terms "All Natural" and "Nothing Artificial" to advertise food products that allegedly contain the artificial and synthetic ingredients violates the UCL, FAL, CLRA, or Defendant's own warranties.  *See Astiana*, 291 F.R.D. at 501.  Alleging a common legal theory is alone enough to establish commonality.  *See Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 676 (N.D. Cal. 1979) (commonality met based on whether operation of the eligibility structure of Trust Fund's pension plan violated ERISA).

Here, all of the legal theories and causes of action asserted by Plaintiffs are common to all Settlement Class Members.  Especially since there are virtually no issues of law which affect only individual members of the class, common issues of law clearly predominate over individual ones.  Thus, considering the nature of the issues and facts that bind each class member together, commonality is satisfied.

### c.     *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiff be "typical of the claims . . . of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality requirement, the representative plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

In the instant action, Plaintiffs' claims are typical of those of the Settlement Class.  Like those of the Settlement Class, their claims arise out of the allegations that Kashi misled consumers by labeling certain of its products "All Natural" or "Nothing Artificial," when those products contained certain synthetic and artificial ingredients, which Plaintiffs alleged precludes those products from properly being labeled as "All Natural" or "Nothing Artificial."  Each Plaintiff purchased one or more of the Products.  Plaintiffs have precisely the same claims as the Settlement Class, and must satisfy the same elements of each of their claims, as must other Settlement Class Members.  Supported by the same legal theories, Plaintiffs and all Settlement Class Members share claims based on the same alleged course of conduct.  Plaintiffs and all Settlement Class Members have been injured in the

same manner by this conduct. Therefore, Plaintiffs satisfy the typicality requirement.

### d.   _Adequacy_

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." _See_ Fed. R. Civ. P. 23(a)(4). A plaintiff will adequately represent the class where: (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class. _See Staton v. Boeing Co._, 327 F.3d 938, 957 (9th Cir. 2003). Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length. 2 _Newberg on Class Actions, supra_, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Settlement Class Members' claims. The arm's-length settlement negotiations that took place demonstrate that Class Counsel adequately represent the Settlement Class. Moreover, Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class. Rather, Plaintiffs, like each absent Settlement Class Member, have a strong interest in proving Kashi's common course of conduct, establishing its unlawfulness and obtaining redress. In pursing this litigation, Class Counsel, as well as the Plaintiffs, have advanced and will continue to advance and fully protect the common interests of all members of the Class. Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation. _See_ Vozzolo Decl. Exs. 1 and 2 (Class Counsel's firm resumes). Faruqi & Faruqi, LLP and Feinstein Doyle Payne & Kravec, LLC

were appointed Co-Lead Class Counsel for the Class on July 30, 2013. Accordingly, Rule 23(a)(4) is satisfied.

### 2.    The Settlement Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be maintained if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

### a.    *Common Questions Of Law And Fact Predominate*

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.  As the United States Supreme Court has explained, when addressing the propriety of Settlement Class certification, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including, *inter alia*:  (1) whether Kashi's marketing and

sale of the Products was illegal; (2) whether Kashi's Products contained artificial or synthetic ingredients and whether Kashi made material representations to the contrary; (3) whether Class Members suffered a loss of money or property as a result of Kashi's misrepresentations; and (4) whether Plaintiffs and Settlement Class Members are entitled to damages, restitution, injunctive and/or monetary relief, and if so, the amount and nature of such relief.  These issues can be resolved for all members of the proposed Settlement Class in a single adjudication. Moreover, the Court's concern on class certification that there was insufficient evidence of materiality as to ingredients permitted in certified "organic" goods, thus requiring individual proof of reliance (*see Astiana*, 291 F.R.D. at 508-09), should not defeat a finding of predominance for purposes of certifying the settlement class.  Such a "merits inquiry is…unwarranted in the settlement context since a district court need not 'envision the form that a trial' would take, nor consider 'the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove' the disputed element at trial." *Sullivan*, 667 F.3d at 306 (citations omitted); *see also id.* at 302-03 (finding concerns regarding predominance inquiry "marginalized" and noting "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation" given the settlement posture of the case).  As such, the answers to the common questions that resulted from Kashi's alleged conduct are the primary focus and central issues of this class action and thus predominate over any individual issues that may exist.

> b.   *A Class Action Is The Superior Mechanism For Adjudicating This Dispute*

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Settlement Class Members.   Each

29

individual Settlement Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Kashi's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Kashi's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23 (b)(3)(D), for the proposal is that there be no trial.").  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### C.     The Proposed Notice Program Constitutes Adequate Notice And Should Be Approved

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and

requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."   Fed. R. Civ. P. 23(e)(1)

When a court is presented with a class, the class certification notice and notice of settlement may be combined in the same notice.  *Manual* (Fourth) § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the settlement class members to decide whether to opt out of or participate in the class and/or to object to the settlement and argue against final approval by the court.  *Id.*

The proposed forms of notice here, attached as Exhibits C and D to the Settlement Agreement, satisfy the above criteria.  The notices accurately inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.

The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and Due Process.  The language of the proposed notices and accompanying claim form is plain and easy to understand, providing neutral and objective information about the nature of the Settlement.

Individual Settlement Class Members cannot be identified through reasonable effort due to the nature of the consumer product at issue.  Therefore, Class Notice shall be provided as set forth in the Media Plan, attached to the Settlement Agreement as Exhibit G.  Kashi will cause the summary notice to be published once in *People Magazine*, once in *USA Weekend*, and once in *Parade*, and once weekly for four consecutive weeks in the *San Diego Union Tribune*, *Los Angeles Times*, *San Francisco Chronicle*, and the *Sacramento Bee*.  Internet banner notices will

31

also be purchased using Xaxis Premium Network (formerly 24/7 Real Media Network), Yahoo.com and Advertising.com's network, which will include embedded links to the case website.  Additionally, notice of the Settlement will be posted on the Settlement Website and, at their option, on the websites of Class Counsel.  The Class Notice shall also be sent via electronic mail or regular mail to those Class Members who so request.  This proposed method of giving notice (similar if not identical to the method used in countless other class actions) is appropriate because it provides a fair opportunity for members of the Settlement Class to obtain full disclosure of the conditions of the Settlement Agreement and to make an informed decision regarding the proposed Settlement. Thus, the notices and the procedures embodied in the notices amply satisfy the requirements of due process.  The actual costs and expenses of the Settlement Administrator, which have been estimated by the Settlement Administrator to be $354,608.00, will be paid from the Settlement Fund in accordance with the Settlement Agreement.

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement Agreement, provisionally certify the Settlement Class, approve the proposed notice plan and enter the Preliminary Approval Order in the form attached to the settlement Agreement as Exhibit F.

Dated:  May 2, 2014                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:   s/ David E. Bower
        David E. Bower (119546)
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone:  (424) 256-2884
Facsimile: (424) 256-2885
Email: dbower@faruqilaw.com

- and –

Nadeem Faruqi (*pro hac vice*)
Antonio Vozzolo (*pro hac vice*)
Andrea Clisura (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331
Email:  nfaruqi@faruqilaw.com
avozzolo@faruqilaw.com
aclisura@faruqilaw.com

**FEINSTEIN DOYLE PAYNE
& KRAVEC, LLC**
Joseph N. Kravec, Jr. (*pro hac vice*)
Wyatt A. Lison (*pro hac vice*)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, PA 15219
Phone: (412) 281-8400
Fax: (412) 281-1007
Email: jkravec@fdpklaw.com
    wlison@fdpklaw.com

*Co-Lead Class Counsel*

CASE NO.:  11-cv-1967-H (BGS)      Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

1
2

*ADDITIONAL PLAINTIFFS' COUNSEL:*

3
Michael D. Braun (#167416)
**BRAUN LAW GROUP, P.C.**
4
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
5
Phone:  (310) 836-6000
Fax:  (310) 836-6010
6
service@braunlawgroup.com

Jason S. Hartley (#192514)
**STUEVE SIEGEL HANSON LLP**
550 West C Street, Suite 610
San Diego, CA 92101
Phone:  (619) 400-5822
Fax:  (619) 400-5832
hartley@stuevesiegel.com

7
Janet Lindner Spielberg (#221926)
**LAW OFFICE OF JANET LINDNER**
8
**SPIELBERG**
12400 Wilshire Blvd., Suite 400
9
Los Angeles, CA 90025
Phone:  (310) 392-8801
10
Fax:  (310) 278-5938
jlspielberg@jlslp.com

Bruce D. Greenberg (*pro hac vice*)
**LITE DEPALMA GREENBERG,**
**LLC**
Two Gateway Center, Suite 1201
Newark, NJ 07102
Phone: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

11
Rosemary M. Rivas (#209147)
Danielle A. Stoumbos (#264784)
12
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
13
San Francisco, CA 94104
Phone: (415) 398-8700
14
Fax: (415) 398-8704
rrivas@finkelsteinthompson.com
15
dstoumbos@finkelsteinthompson.com

Michael Louis Kelly (#82063)
Behram V. Parekh (#180361)
Heather M. Petersen (#261303)
**KIRTLAND & PACKARD LLP**
2361 Rosecrans Avenue, Fourth Floor
El Segundo, CA 90245
Phone: (310) 536-1000
Fax: (310) 536-1001
mlk@kirtlandpackard.com
byp@kirtlandpackard.com
hmp@kirtlandpackard.com

16
Lionel Z. Glancy (#134180)
Michael Goldberg (#188669)
17
Marc L. Godino (#182689)
**GLANCY BINKOW & GOLDBERG**
18
**LLP**
1925 Century Park East, Suite 2100
19
Los Angeles, CA  90067
Phone: (310) 201-9150
20
Fax:: (310) 201-9160
info@glancylaw.com
21

22

23

24

25

26

27
34

28
Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

# PROOF OF SERVICE

STATE OF CALIFORNIA        )
                                 )   ss.:

COUNTY OF LOS ANGELES    )

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 10866 Wilshire Blvd., Suite 1470, Los Angeles, CA 90024.

On May 2, 2014, I served the document(s) described as:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**

**[X]**    **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:** I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed. R. Civ. P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ. P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

Executed on May 2, 2014, at Los Angeles, California.

                           */s/   David E. Bower*

CASE NO.:  11-cv-1967-H (BGS)      Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion For Preliminary Approval of Class Action Settlement