UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ASTIANA, et al., individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>KASHI COMPANY,<br><br>　　　　　　　　　Defendant. | CASE NO. 11-CV-1967-H (BGS)[1]<br><br>**ORDER:**<br><br>**(1) CERTIFYING CLASS FOR SETTLEMENT PURPOSES;**<br><br>**(2) PRELIMINARILY APPROVING CLASS SETTLEMENT**<br><br>**(3) APPROVING CLASS NOTICE; and**<br><br>**(4) SCHEDULING FAIRNESS HEARING**<br><br>**[Doc. Nos. 219; 220]** |

On May 2, 2014, Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar Larsen, and Kimberly S. Sethavanish ("Plaintiffs") filed a motion for preliminary approval of class settlement, conditional certification of the settlement class, approval of the class notice, and scheduling of a fairness hearing. (Doc. No. 220.) On May 2,

---

[1] This is the lead case in consolidated cases 11-CV-2256-H (BGS), 11-CV-2285-H (BGS), 11-CV-2637-H (BGS), 11-CV-2356-H (BGS), 11-CV-2629-H (BGS), and 11-CV-2816-H (BGS). (Doc. Nos. 16, 22.)

2014, Defendant Kashi Company ("Defendant" or "Kashi") filed a stipulation of settlement. (Doc. No. 219.) The Court held a hearing on May 27, 2014. Attorneys Joseph Kravec, Michael Braun, and Janet Spielberg appeared on behalf of Plaintiffs. Attorney Dean Panos appeared on behalf of Defendant.

## Background

### I.     Factual and Procedural Background

This is a consumer class action lawsuit brought on behalf of people who have purchased Kashi food products. Plaintiffs claim the products contained deceptive and misleading labeling and advertisements. (Doc. No. 49 ¶¶ 1-2.) Plaintiffs allege that Defendant packaged, marketed, distributed, and sold Kashi products as being "All Natural" or containing "Nothing Artificial." (Id.) Plaintiffs claim certain ingredients or processes used to manufacture Kashi products are not "natural," but rather are synthetic. (Id.)

In 2011, Plaintiffs filed class action complaints against Kashi in this Court in the following cases: Bates v. Kashi Company, et al., 11-cv-1967; Babic v. Kashi Company, 11-cv-2816; Espinola v. Kashi Company, 11-cv-2629 (initially filed in the United States District Court for the Central District of California (11-cv-8534)); Diaz v. Kashi Company, et al., 11-cv-2256; Chatham v. Kashi Company, et al., 11-cv-2285; Sethavanish, et al. v. Kashi Company, 11-cv-2356 (initially filed in the United States District Court for the Northern District of California (11-cv-4453)); and Baisinger v. Kashi Company, 11-cv-2367 (initially filed in the United States District Court for the Northern District of California (11-cv-4581)).

On November 28, 2011, the Court ordered the consolidation of the actions against Kashi. (Doc. No. 16; see also Doc. No. 22.) On January 18, 2012, the Court appointed the law firms of Stember Feinstein Doyle & Payne, LLC and Faruqi & Faruqi, LLP as interim co-lead counsel. (Doc. No. 41.)

On February 21, 2012, Plaintiffs filed a Consolidated Amended Complaint against Kashi Company, Kashi Sales, LLC and Kellogg Company that amended and

superseded the Original Complaints. (Doc. No. 49.) On April 6, 2012, Defendants filed a motion to dismiss the Consolidated Amended Complaint. (Doc. No. 61.) On July 16, 2012, the Court granted in part and denied in part Defendants' motion to dismiss. (Doc. No. 79.) The Court dismissed all of Plaintiffs' claims against Kashi Sales, LLC and Kellogg Company. (Id. at 11-13.) The Court also dismissed Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") causes of action, common law fraud cause of action, and claim for unjust enrichment. (Id. at 13-19.) The Court denied the remaining portions of Defendants' motion to dismiss the Consolidated Amended Complaint. (Id.)

On August 15, 2012 Kashi answered the Consolidated Amended Complaint. (Doc. No. 81.) The parties engaged in extensive discovery, including depositions of Kashi's marketing expert, multiple sets of requests for production of documents and interrogatories, and several subpoenas to third parties. (Doc. No. 220-1 at 15.) Further, Kashi deposed the named Plaintiffs as well as Plaintiffs' marketing expert. (Id.)

On April 15, 2013, Plaintiffs filed a motion for class certification. (Doc. No. 108.) On July 30, 2013, the Court granted in part and denied in part Plaintiffs' motion for class certification. (Doc. No. 148.) The Court certified a class of California purchasers of Kashi products marketed and labeled as containing "Nothing Artificial" that contained "Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Hexane-Processed Soy ingredients." (Id. at 25-26.) The Court also certified a class of California purchasers of Kashi products marketed and labeled as "All Natural" that contained "Pyridoxine Hydrochloride, Calcium Panthothenate and/or Hexane-Processed Soy ingredients." (Id. at 26.) The Court appointed Faruqi & Faruqi, LLP and Feinstein Doyle Payne & Kravec, LLC as co-lead counsel. (Id.)

On August 12, 2013, Kashi filed a petition to appeal the Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit. (Doc. No. 150.) On October 24, 2013, the Ninth Circuit denied Kashi's petition for permission to appeal the District Court's class certification ruling. (Doc. No. 178.)

On August 27, 2013, Plaintiffs moved for partial reconsideration of the Court's class certification order. (Doc. No. 157.) On August 28, 2013, Kashi moved for partial reconsideration of the Court's class certification order. (Doc. No. 160.) On September 18, 2013, the Court denied both Plaintiffs' and Kashi's motions for reconsideration. (Doc. No. 173.)

On October 24, 2013, Kashi filed an additional motion to modify the Court's class certification order. (Doc. No. 182.) On November 22, 2013, the Court denied Kashi's motion to modify the Court's class certification order. (Doc. No. 203.)

On October 23, 2013 and December 5, 2013 the parties participated in mediation sessions conducted by an experienced mediator. (Doc. No. 219 ¶ I.M; Doc. No. 220-1 at 17.) With the mediator's assistance, the parties reached a settlement. (Doc. No. 219 ¶ I.M; Doc. No. 220-1 at 18.) On May 2, 2014, the parties entered into a Stipulation of Settlement. (Doc. No. 219.)

**II.   Proposed Settlement**

The proposed settlement provides relief to a settlement class comprising California residents who, at any time between August 24, 2007 and May 1, 2014, purchased any of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any of the Challenged Ingredients. (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Kashi products).) Excluded from the class are: (a) Kashi's employees, officers and directors; (b) persons or entities who purchased the Kashi products for the purpose of re-sale; (c) retailers or re-sellers of the Kashi products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the settlement class; and (f) the Court, the Court's immediate family, and Court staff. (Id. ¶ II.A.5.)

The proposed settlement provides for monetary relief to the settlement class by requiring Kashi to pay $5 million into a settlement fund. (Id. ¶ IV.A.2.) The settlement fund is to be applied to pay in full and in order: (i) any necessary taxes and tax expenses; (ii) all costs associated with the Class Action Settlement Administrator,

including costs of providing notice to the settlement class members and processing claims and all costs relating to providing the necessary notices in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715; (iii) any award of fees and expenses made by the Court to class counsel; (iv) any incentive award made by the Court to the class representatives; and (v) payments to authorized claimants. (Id. ¶ IV.A.2.b.)

Class counsel may apply for an award of attorneys' fees and reimbursement for expenses from the settlement fund of up to $1,250,000. (Id. ¶ VIII.A.) Each named Plaintiff may apply for a $4,000 incentive award from the settlement fund. (Id. ¶ VIII.C.)

Settlement class members may seek reimbursement of $.50 per package for every Kashi product purchased from August 24, 2007 to May 1, 2014. (Id. ¶ IV.A.1.) Settlement class members may seek reimbursement by presenting written proof of purchase in the form of a receipt or a retail rewards submission, in which case there is no limit on the amount of their recovery. (Id.) Alternatively, settlement class members may seek reimbursement by submitting a valid claim form, in which case there is a maximum recovery of $25 per household. (Id.) If the total amount of eligible claims exceeds the $5 million settlement fund, then each claimant's award shall be proportionately reduced. (Id. ¶ IV.A.3.) If after all valid claims (plus other authorized costs and expenses) are paid, money remains in the settlement fund, the remaining amount shall be used to increase pro rata the recovery of each eligible claim. (Id.)

Furthermore, the proposed settlement requires Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from those products that contain the following Challenged Ingredients:

> "(i) pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients in products labeled "All Natural," and (ii) pyridoxine hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled "Nothing Artificial," unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body." (Id. ¶ IV.B.)

In exchange, class members, other than those who opt-out, agree to release all claims asserted in the Consolidated Amended Complaint relating to Kashi's packaging, marketing, distribution, or sale of food products labeled as "All Natural" or "Nothing Artificial." (Id. ¶ VII.)

## Discussion

The Court previously certified two classes of California purchasers of Kashi products containing one or more of the following ingredients: pyridoxine hydrochloride, alpha-tocopherol acetate, calcium panthothenate, and/or hexane-processed soy ingredients. (See Doc. No. 148.) The parties seek to expand the settlement class to include Kashi products containing any of the Challenged Ingredients. (See Doc. No. 119 ¶ II.A.) Accordingly, the Court must review "the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

**I.     Class Certification**

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, Plaintiffs seek to certify a class for settlement purposes consisting of all California residents who, at any time between August 24, 2007 and May 1, 2014 purchased any of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any of the Challenged Ingredients. (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Kashi products).)

    A.     Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that the class consists of thousands of consumers, and notes that Kashi has sold millions of units in the United States in the past four years. (Doc. No. 108-1 at 22.) Accordingly, the class meets the numerosity prerequisite in this case.

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Here, there are questions of law and fact that are common to the class, such as whether settlement class members were exposed to advertising using the terms "All Natural" or "Nothing Artificial" and purchased Kashi products containing the Challenged Ingredients based on those representations. Accordingly, the class meets the commonality prerequisite.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiffs and settlement class members share the same injury: purchase of a Kashi product based on alleged misrepresentations and false advertising. (Doc. No. 49 ¶¶ 1-2.) As Plaintiffs' claims are reasonably co-extensive with the claims of absent class members, the class meets the typicality prerequisite.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed.

R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there does not appear to be any conflicts of interest between Plaintiffs and the absent class members. Additionally, Plaintiffs have participated in the litigation process and sat for depositions. (Doc. No. 220-1 at 15.) Class counsel have extensive experience and expertise in prosecuting consumer class actions related to food labels. (Doc. No. 220-3; 220-4.) As a result, Plaintiffs and their counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

### B. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Vinole v. Countywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

#### 1. Predominance

"The main concern in the predominance inquiry [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009). This analysis requires more than proof of common issues of law and fact. Hanlon, 150 F.3d at 1022. Rather, the common

questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted).

Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues. See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading). On the basis of additional evidence after the certification order, and after considering the merits, the parties have agreed that an expanded settlement class encompassing all the Challenged Ingredients best resolves the common questions regarding Kashi's alleged conduct. (Doc. No. 220-1 at 30; 36.) The Court agrees.

For the purposes of class certification, it is sufficient that the statements regarding the "All Natural" and "Nothing Artificial" products were part of a common advertising scheme to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question. See Hanlon, 150 F.3d at 1019-22; Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010). Accordingly, Plaintiffs have met their burden to show that the issues common to the class predominate over the individual issues. Fed. R. Civ. P. 23(b)(3).

2. Superiority

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." Wolin, 617 F.3d at 1175-76. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish to pursue their claims individually. Further, class-wide treatment of these issues will be efficient as the settlement class members' claims appear to involve a relatively small amount of damages per member. (See generally Doc. No. 49.) Accordingly, the class action meets

the superiority requirement. As Plaintiffs have satisfied the requirements of Rule 23(b)(3), the Court grants preliminary certification to the expanded settlement class.

**II.     Settlement**

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, a court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Staton, 327 F.3d at 959. In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

Given that some of these factors cannot be fully assessed until the Court conducts the final approval hearing, "'a full fairness analysis is unnecessary at this stage.'" Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted); see also Annotated Manual for Complex Litigation (Fourth) § 21.63 (2013) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.") Rather, at the preliminary approval stage, the Court reviews the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate. See 4 William B. Rubenstein et al., Newberg on Class Actions § 11:25 (4th ed. 2002) (citations omitted); see also Alberto, 252 F.R.D. at 666 (citation omitted).

After reviewing the proposed settlement in light of the above factors and the

current stage of the litigation, the Court determines that preliminary approval is appropriate. The proposed settlement is the result of serious, informed, and non-collusive negotiations. E.g., Tijero v. Aaron Bros., Inc., C 10-01089-SBA, 2013 WL 6700102, at *7-8 (N.D. Cal. Dec. 19, 2013). After two years of litigation, and following multiple negotiations with an experienced mediator, Plaintiffs' counsel agreed to the proposed settlement in light of the uncertainties of trial and the costs, risks, and delays associated with continued litigation. (Doc. No. 220-2 ¶¶ 16-17.) Class counsel has extensive experience in class actions and represents that the settlement provides meaningful relief to the class. (Doc. No. 220-1 at 28-29.) Additionally, settlement class members may opt-out if they believe the proposed settlement does not adequately compensate them. (Doc. No. 219 ¶ VI.B.) As a result, the proposed settlement is fair, adequate, and reasonable. Alberto, 252 F.R.D. at 666. Accordingly, the Court grants preliminary approval of the settlement.

**III.   Approving Class Notice**

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B). It provides the notice must clearly and concisely state in plain, easily understood language:

> (I) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

A.   Content of the Notice

The proposed notice provides the following: a description of the lawsuit; a description of the settlement class and the class claims; a statement that class members may appear at the fairness hearing through an attorney; a statement that class members

1  may exclude themselves from the settlement; a description of how class members may
2  request exclusion; and a description of the effect on class members if the Court
3  approves the proposed settlement. (See Doc. No. 219-3; 219-4.) The Court approves
4  the content of the notice.

### B. Method of Notice

The proposed method of notice is reasonable. Because individual settlement class members cannot be identified through reasonable effort due to the nature of the consumer product at issue, the parties have devised a media plan designed to reach settlement class members. (See Doc. No. 219-7.) Kashi, via the Settlement Administrator, will publish the summary notice once in the California editions of People Magazine; Parade; USA Weekend; and will publish four consecutive weekly notices in the San Diego Union-Tribune; Los Angeles Times; San Francisco Chronicle; and Sacramento Bee. (Id.) Kashi, via the Settlement Administrator, will also purchase Internet banner notices via the Xaxis Premium Network, Yahoo.com, and Advertising.com. (Id.) Additionally, notice of the settlement will be posted on the Settlement Website and, at their option, on the websites of class counsel. (Doc. No. 219 ¶ V.A.3.) The class notice shall also be sent via electronic mail or regular mail to those settlement class members who so request. (Id.)

The Court concludes that the class notice is adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the settlement.

### V. Scheduling Fairness Hearing

Finally, the Court sets the Final Approval hearing for Tuesday, September 2, 2014 at 10:30 a.m.[2] Plaintiffs must file a motion for final approval of the settlement, as well as any motions for fee awards and incentive awards, on or before July 28, 2014.

///

---

[2] Counsel may appear telephonically if counsel provides the Court with the relevant telephone numbers.

## Conclusion

The Court approves:

(1) Plaintiff's request for provisional certification of the class for purposes of settlement;

(2) Plaintiff's request for preliminary approval of the proposed settlement; and

(3) The form and manner of giving notice of the proposed settlement to the class members; and

(4) Additionally, the Court sets a fairness hearing on Tuesday, September 2, 2014 at 10:30 a.m. Plaintiffs must file a motion for final approval of the settlement, as well as any motions for attorneys' fees and incentive awards, on or before July 28, 2014.

**IT IS SO ORDERED.**

DATED: May 27, 2014

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT