1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   SKYE ASTIANA, et al., individually          CASE NO. 11-CV-1967-H
     and on behalf of all others similarly       (BGS)[1]
12   situated,
                                                  **FINAL JUDGMENT AND
13                            Plaintiffs,         ORDER:**

14        vs.                                     **(1) CERTIFYING
                                                  SETTLEMENT CLASS;**
15
                                                  **(2) GRANTING FINAL
16                                                APPROVAL OF CLASS
                                                  SETTLEMENT;**
17   KASHI COMPANY,
                                                  **(3) APPROVING
18                            Defendant.          PLAINTIFFS' REQUEST
                                                  FOR ATTORNEYS' FEES,
19                                                COSTS, AND INCENTIVE
                                                  AWARD**
20

21        On July 29, 2014, Plaintiffs Skye Astiana, Milan Babic, Tamara Diaz, Tamar

22   Larsen, and Kimberly S. Sethavanish ("Plaintiffs") filed a motion for final approval of

23   class settlement and certification of the settlement class.  (Doc. No. 229.)  On July 29,

24   2014, Plaintiffs also filed a motion for attorneys' fees, expenses and costs, and

25   incentive awards for the class representatives.  (Doc. No. 230.)  Three class members

26

27        [1]This is the lead case in consolidated cases 11-CV-2256-H (BGS), 11-CV-2285-H
     (BGS), 11-CV-2637-H (BGS), 11-CV-2356-H (BGS), 11-CV-2629-H (BGS), and 11-CV-
28   2816-H (BGS).  (Doc. Nos. 16, 22.)

11cv1967

filed objections to the settlement agreement. (Doc. Nos. 232, 233, and 235.) The Court held a hearing on September 2, 2014. No objectors appeared at the hearing. Attorneys Antonio Vozzolo, Joseph Kravec, Jr., Marc Godino, Michael Braun, and Rosemary Rivas appeared telephonically for Plaintiffs. Attorney Dean Panos appeared telephonically for Defendant. After due consideration, the Court certifies the settlement class, grants final approval of the settlement, approves Plaintiffs' request for attorneys' fees and expenses, approves the incentive awards for the class representatives, and enters final judgment.

**Background**

## I.    Factual and Procedural Background

This is a consumer class action lawsuit brought on behalf of people who have purchased Kashi food products. Plaintiffs claim the products contained deceptive and misleading labeling and advertisements. (Doc. No. 49 ¶¶ 1-2.) Plaintiffs allege that Defendant packaged, marketed, distributed, and sold Kashi products as being "All Natural" or containing "Nothing Artificial." (Id.) Plaintiffs claim certain ingredients or processes used to manufacture Kashi products are not "natural," but rather are synthetic. (Id.)

In 2011, Plaintiffs filed class action complaints against Kashi in this Court in the following cases: Bates v. Kashi Company, et al., 11-cv-1967; Babic v. Kashi Company, 11-cv-2816; Espinola v. Kashi Company, 11-cv-2629 (initially filed in the United States District Court for the Central District of California (11-cv-8534)); Diaz v. Kashi Company, et al., 11-cv-2256; Chatham v. Kashi Company, et al., 11-cv-2285; Sethavanish, et al. v. Kashi Company, 11-cv-2356 (initially filed in the United States District Court for the Northern District of California (11-cv-4453)); and Baisinger v. Kashi Company, 11-cv-2367 (initially filed in the United States District Court for the Northern District of California (11-cv-4581)).

On November 28, 2011, the Court ordered the consolidation of the actions against Kashi. (Doc. No. 16; see also Doc. No. 22.) On January 18, 2012, the Court

1  appointed the law firms of Stember Feinstein Doyle & Payne, LLC and Faruqi &

2  Faruqi, LLP as interim co-lead counsel.  (Doc. No. 41.)

3     On February 21, 2012, Plaintiffs filed a Consolidated Amended Complaint

4  against Kashi Company, Kashi Sales, LLC and Kellogg Company that amended and

5  superseded the Original Complaints.  (Doc. No. 49.)  On April 6, 2012, Defendants

6  filed a motion to dismiss the Consolidated Amended Complaint.  (Doc. No. 61.)  On

7  July 16, 2012, the Court granted in part and denied in part Defendants' motion to

8  dismiss.  (Doc. No. 79.)  The Court dismissed all of Plaintiffs' claims against Kashi

9  Sales, LLC and Kellogg Company.  (Id. at 11-13.)

10    On August 15, 2012 Kashi answered the Consolidated Amended Complaint.

11  (Doc. No. 81.)  The parties engaged in extensive discovery, including depositions of

12  Kashi's marketing expert, multiple sets of requests for production of documents and

13  interrogatories, and several subpoenas to third parties.  (Doc. No. 220-1 at 15.)

14  Further, Kashi deposed the named Plaintiffs as well as Plaintiffs' marketing expert.

15  (Id.)

16    On April 15, 2013, Plaintiffs filed a motion for class certification.  (Doc. No.

17  108.)  On July 30, 2013, the Court certified a class of California purchasers of Kashi

18  products marketed and labeled as containing "Nothing Artificial" that contained

19  "Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate and/or Hexane-Processed Soy

20  ingredients."  (Doc. No. 148 at 25-26.)  The Court also certified a class of California

21  purchasers of Kashi products marketed and labeled as "All Natural" that contained

22  "Pyridoxine Hydrochloride, Calcium Panthothenate and/or Hexane-Processed Soy

23  ingredients."  (Id. at 26.)  The Court appointed Faruqi & Faruqi, LLP and Feinstein

24  Doyle Payne & Kravec, LLC as co-lead counsel. (Id.)

25    On August 12, 2013, Kashi filed a petition to appeal the Court's class

26  certification order pursuant to Federal Rule of Civil Procedure 23(f) in the United

27  States Court of Appeals for the Ninth Circuit.  (Doc. No. 150.)  On October 24, 2013,

28  the Ninth Circuit denied Kashi's petition for permission to appeal the District Court's

1  class certification ruling.  (Doc. No. 178.)

2      On August 27, 2013, Plaintiffs moved for partial reconsideration of the Court's

3  class certification order.  (Doc. No. 157.)  On August 28, 2013, Kashi moved for partial

4  reconsideration of the Court's class certification order.  (Doc. No. 160.)  On September

5  18, 2013, the Court denied both Plaintiffs' and Kashi's motions for reconsideration.

6  (Doc. No. 173.)

7      On October 24, 2013, Kashi filed an additional motion to modify the Court's

8  class certification order.  (Doc. No. 182.)  On November 22, 2013, the Court denied

9  Kashi's motion to modify the Court's class certification order.  (Doc. No. 203.)

10      On October 23, 2013 and December 5, 2013 the parties participated in mediation

11  sessions conducted by an experienced mediator.  (Doc. No. 219 ¶ I.M; Doc. No. 220-1

12  at 17.)  With the mediator's assistance, the parties reached a settlement.  (Doc. No. 219

13  ¶ I.M; Doc. No. 220-1 at 18.)  On May 2, 2014, the parties entered into a Stipulation

14  of Settlement.  (Doc. No. 219.)

15      On May 2, 2014, Plaintiffs filed a motion for preliminary approval of the

16  settlement, conditional certification of the settlement class, and approval of the class

17  notice.  (Doc. No. 220.)  On May 27, 2014, the Court granted preliminary approval of

18  the settlement, provisionally certified a settlement class under Federal Rule of Civil

19  Procedure 23(b)(3), and approved the form and manner of notice.  (Doc. No. 222 at

20  13.)  On July 29, 2014, Plaintiffs filed a motion for final approval of class settlement

21  and certification of the settlement class.  (Doc. No. 229.)  On July 29, 2014, Plaintiffs

22  also filed a motion for attorneys' fees, expenses and costs, and incentive awards for the

23  class representatives.  (Doc. No. 230.)  Three class members filed objections to the

24  settlement agreement.  (Doc. Nos. 232, 233, and 235.)  On August 28, 2014, Plaintiffs

25  filed a response in support of the motion for final settlement approval and response to

26  the objections.  (Doc. No. 238.)

27  ///

28  ///

1  **II.    The Settlement**

2      The settlement provides relief to a settlement class comprising California

3  residents who, at any time between August 24, 2007 and May 1, 2014, purchased any

4  of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any

5  of the Challenged Ingredients.  (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged

6  Ingredients); II.A.23 (listing all relevant Kashi products).)  Excluded from the class are:

7  (a) Kashi's employees, officers and directors; (b) persons or entities who purchased the

8  Kashi products for the purpose of re-sale; (c) retailers or re-sellers of the Kashi

9  products; (d) governmental entities; (e) persons who timely and properly exclude

10  themselves from the settlement class; and (f) the Court, the Court's immediate family,

11  and Court staff.  (Id. ¶ II.A.5.)

12      The settlement provides for monetary relief to the settlement class by requiring

13  Kashi to pay $5 million into a settlement fund.  (Id. ¶ IV.A.2.)  The settlement fund

14  pays any necessary taxes and tax expenses, all costs associated with the Class Action

15  Settlement Administrator, including costs of providing notice to the settlement class

16  members and processing claims and all costs relating to providing the necessary notices

17  in accordance with the Class Action Fairness Act of 2005, any award of fees and

18  expenses made by the Court to class counsel, any incentive award made by the Court

19  to the class representatives, and payments to authorized claimants.  (Id. ¶ IV.A.2.b.)

20      The settlement also provides that class counsel may apply for an award of

21  attorneys' fees and reimbursement for expenses from the settlement fund of up to

22  $1,250,000 and each named Plaintiff may apply for a $4,000 incentive award from the

23  settlement fund.  (Id. ¶¶ VIII.A, VIII.C.)

24      Settlement class members may seek reimbursement of $0.50 per package for

25  every Kashi product purchased from August 24, 2007 to May 1, 2014.[2]  (Id. ¶ IV.A.1.)

26  Settlement class members may seek reimbursement by presenting written proof of

27  _____

28      [2]Because the number of claims did not exhaust the settlement fund, class members will
receive approximately $4.30 for each product claimed.  (Doc. No. 238 at 11.)

purchase in the form of a receipt or a retail rewards submission, in which case there is no limit on the amount of their recovery. (Id.)  Settlement class members may seek reimbursement without presenting written proof of purchase by submitting a valid claim form, in which case there is a maximum recovery of $25 per household. (Id.) If the total amount of eligible claims exceeds the $5 million settlement fund, then each claimant's award will be proportionately reduced. (Id. ¶ IV.A.3.)  If, after all valid claims (plus other authorized costs and expenses) are paid, money remains in the settlement fund, the remaining amount will be used to increase pro rata the recovery of each eligible claim. (Id.)

Furthermore, the proposed settlement requires Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from those products that contain the following Challenged Ingredients:

> (i) pyridoxine hydrochloride, calcium pantothenate and/or hexane-processed soy ingredients in products labeled "All Natural," and (ii) pyridoxine hydrochloride, alpha-tocopheral acetate and/or hexane-processed soy ingredients in products labeled "Nothing Artificial," unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body. (Id. ¶ IV.B.)

In exchange, class members, other than those who opt-out, agree to release all claims asserted in the Consolidated Amended Complaint relating to Kashi's packaging, marketing, distribution, or sale of food products labeled as "All Natural" or "Nothing Artificial." (Id. ¶ VII.)

## III.   Class Members' Notice of Settlement

On June 9, 2014, The Garden City Group ("GCG"), the settlement administrator, commenced the notice plan. (Doc. No. 229-14, Declaration of Jennifer M. Keough ("Keough Decl.") ¶ 6.) GCG published notice of the settlement once in the California editions of People Magazine, Parade, and USA Weekend, published four consecutive weekly notices in the San Diego Union-Tribune, Los Angeles Times, San Francisco Chronicle, and Sacramento Bee, and issued a press release containing notice of the settlement. (Id. ¶¶ 7, 11.)  Additionally, GCG established a website and a toll-free

telephone number to provide information about the settlement to potential class members. (Id. ¶¶ 12, 14.) GCG also purchased Internet banner notices through the Xaxis Premium Network, Yahoo.com, and Advertising.com that contained a brief statement advising class members of the settlement and took those who clicked on the banner notices to the settlement website. (Id. ¶ 10.) Finally, GCG mailed notice packets to those settlement class members who so requested. (Id. ¶ 13.) GCG estimated that notice reached 83% of the class members. (Id. ¶ 5.)

As of July 24, 2014, the settlement website had 59,814 visits, the toll-free telephone number received 502 calls, and GCG mailed 328 notice packets to potential class members. (Id. ¶¶ 12-14.) No class member has opted-out of the settlement. Three class members have filed objections to the settlement agreement. (See Doc. Nos. 232, 233, and 235.)

### Discussion

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id.

## I.    Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Here, Plaintiffs seek to certify a class for settlement purposes consisting of all California residents who, at any time between August 24, 2007 and May 1, 2014 purchased any of the Kashi products labeled "All Natural" or "Nothing Artificial" that contained any of the Challenged Ingredients. (See Doc. No. 219 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Kashi

1    products).)

2    **A.    Rule 23(a) Requirements**

3    Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class

4    members if all of the following requirements are met: (1) numerosity; (2) commonality;

5    (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

6    The numerosity prerequisite is met if "the class is so numerous that joinder of all

7    members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that the class

8    consists of thousands of consumers, and notes that Kashi has sold millions of units in

9    the United States in the past four years. (Doc. No. 108-1 at 22.) Accordingly, the class

10   satisfies the numerosity requirement.

11   The commonality prerequisite is met if there are "questions of law or fact

12   common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed

13   permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he

14   key inquiry is not whether the plaintiffs have raised common questions, 'even in

15   droves,' but rather, whether class treatment will 'generate common answers apt to drive

16   the resolution of the litigation.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952,

17   957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551

18   (2011)). Here, there are questions of law and fact that are common to the class, such

19   as whether settlement class members were exposed to advertising using the terms "All

20   Natural" or "Nothing Artificial" and purchased Kashi products containing the

21   Challenged Ingredients based on those representations. Accordingly, the class satisfies

22   the commonality requirement.

23   Typicality requires that "the claims or defenses of the representative parties [be]

24   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's

25   claims are "'typical' if they are reasonably co-extensive with those of absent class

26   members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

27   Typicality requires that a representative plaintiff "possess the same interest and suffer

28   the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457

U.S. 147, 156 (1982). Here, Plaintiffs and settlement class members purchased a Kashi product based on alleged misrepresentations and false advertising. (Doc. No. 49 ¶¶ 1-2.) As Plaintiffs' claims are reasonably co-extensive with the claims of absent class members, the class satisfies the typicality requirement.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there are no conflicts of interest between Plaintiffs and the absent class members. Additionally, Plaintiffs have participated in the litigation process and discovery. (Doc. No. 229-1 at 25.) Class counsel have extensive experience and expertise in prosecuting consumer class actions related to food labels. (Doc. No. 229-1 at 26.) As a result, Plaintiffs and their counsel are adequate representatives of the proposed class. For the foregoing reasons, Plaintiffs have met all of the requirements of Rule 23(a).

## B.    Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Vinole v. Countywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"    Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

### 1.     Predominance

"The main concern in the predominance inquiry [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009).  This analysis requires more than proof of common issues of law and fact.  Hanlon, 150 F.3d at 1022.  Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication."  Id. (internal quotation omitted).

Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues.  See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading).  On the basis of additional evidence after the certification order, and after considering the merits, the parties have agreed that an expanded settlement class encompassing all the Challenged Ingredients best resolves the common questions regarding Kashi's alleged conduct.  (Doc. No. 220-1 at 30; 36.)  The Court agrees.

For the purposes of class certification, it is sufficient that the statements regarding the "All Natural" and "Nothing Artificial" products were part of common advertising to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question.  See Hanlon, 150 F.3d at 1019-22; Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010).  Accordingly, Plaintiffs have met their burden to show that the issues common to the class predominate over the individual issues.  Fed. R. Civ. P. 23(b)(3).

### 2.     Superiority

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." Wolin, 617 F.3d at 1175-76.  Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and

1   promote greater efficiency." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234

2   (9th Cir. 1996) (citation omitted).  Here, there is no evidence that absent class members

3   wish to pursue their claims individually.  Further, class-wide treatment of these issues

4   will be efficient as the settlement class members' claims appear to involve a relatively

5   small amount of damages per member.  (<u>See generally</u> Doc. No. 49.)  Accordingly, the

6   class action meets the superiority requirement.   As Plaintiffs have satisfied the

7   requirements of Rule 23(b)(3), the Court certifies the settlement class.

8   **II.    Settlement**

9       Rule 23(e) requires a court to determine whether a proposed settlement is

10  "fundamentally fair, adequate, and reasonable."  <u>Staton</u>, 327 F.3d at 959 (quoting

11  <u>Hanlon</u>, 150 F.3d at 1026).  To make this determination, a court must consider a

12  number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense,

13  complexity, and likely duration of further litigation; (3) the risk of maintaining class

14  action status throughout the trial; (4) the amount offered in settlement; (5) the extent

15  of discovery completed, and the stage of the proceedings; (6) the experience and views

16  of counsel; (7) the presence of a governmental participant; and (8) the reaction of class

17  members to the proposed settlement.  <u>Staton</u>, 327 F.3d at 959.   In addition, the

18  settlement may not be the product of collusion among the negotiating parties.  <u>In re</u>

19  <u>Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000) (citing <u>Class Plaintiffs</u>

20  <u>v. City of Seattle</u>, 955 F.2d 1268, 1290 (9th Cir. 1992)).

21      In determining whether a proposed settlement should be approved, the Ninth

22  Circuit has a "strong judicial policy that favors settlement, particularly where complex

23  class action litigation is concerned."  <u>In re Heritage Bond Litigation</u>, 2005 WL

24  1594403, at *2 (C.D. Cal. June 10, 2005) (citing <u>Class Plaintiffs v. Seattle</u>, 955 F.2d

25  1268, 1276 (9th Cir. 1992)).  The Ninth Circuit favors deference to the "private

26  consensual decision of the [settling] parties," particularly where the parties are

27  represented by experienced counsel and negotiation has been facilitated by a neutral

28  party, in this instance, a private mediator and a magistrate judge.  <u>See Rodriguez v.</u>

West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009).  "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  Id.

### A.     The Strength of Plaintiffs' Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to get final approval. (Doc. No. 229-1 at 21-22.)  The disputed factual and legal issues would be complex and costly to resolve at trial.  (Id. at 22-24.)  Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability and damages, as well as the general difficulties and delays of litigation.  (Id. at 21-24.)  These considerations led the parties to conclude that a timely settlement would be best for all involved parties.  See Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (emphasis, internal quotation marks, and citation omitted).  The Court agrees that the recovery through settlement confers a substantial benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

### B.     The Amount Offered in Settlement

The proposed settlement provides class members with immediate monetary relief by establishing a common fund of $5 million.  Class members may recover $0.50 per package, without limitation, for every Kashi product purchased during the class period for which the member provides written proof of purchase.  Settlement class members may seek reimbursement without presenting written proof of purchase by submitting a valid claim form, in which case there is a maximum recovery of $25 per household. If money remains in the settlement fund after all valid claims, fees, and expenses are paid, the remaining amount will be used to increase pro rata the recovery of each

eligible claim.[3]   Additionally, the proposed settlement requires Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from those products that contain the Challenged Ingredients.  This settlement is a good result for the class and eliminates the risks, expenses, and delay associated with continued litigation.  Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel.  Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C.    The Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'"  Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached settlement over two years after the first complaint was filed and after extensive discovery and analysis of Plaintiffs' claims.  (Compare Doc. No. 1 with Doc. No. 219; Doc. No. 229-1 at 25-26.)  Defendant produced, and Plaintiffs' counsel reviewed, thousands of pages of documents, including technical and scientific documents, marketing and business plans, product packaging and labels, and email communications.  (Doc. No. 229-1 at 25-26; Doc. No. 229-2, Declaration of Antonio Vozzolo ("Vozzolo Decl.") ¶ 43.)  Defendant deposed the class representatives and Plaintiffs' marketing expert, and Plaintiffs deposed several individuals, including Defendant's marketing expert.  (Doc. No. 229-1 at 25; Doc. No. 229-2, Vozzolo Decl. ¶ 16.)  Class counsel were able to negotiate the settlement based on a full record and a thorough understanding of the strengths and weaknesses of the claims.  Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh in favor of granting final approval.

///

---

[3]Because the number of claims did not exhaust the settlement fund, class members will receive approximately $4.30 for each product claimed.  (Doc. No. 238 at 11.)

1    **D.    The Experience and Views of Counsel**

2         Plaintiffs' counsel has extensive experience acting as class counsel in consumer

3    class action cases, including cases involving false advertising claims.  (See Doc. No.

4    229-1 at 26; Doc. No. 229-2, Vozzolo Decl. ¶ 41.)  Class counsel recommend the

5    settlement as both fair and adequate, a factor that weighs in favor of granting final

6    approval.  (Doc. No. 229-1 at 26; Doc. No. 229-2, Vozzolo Decl. ¶ 46.)

7         **5.    The Reaction of the Class Members to the Proposed Settlement**

8         As of July 24, 2014, the settlement website has been visited 59,814 times and the

9    settlement administrator, GCG, has received 502 calls on a case-dedicated, toll-free

10   telephone number.  (Doc. No. 229-14, Keough Decl. ¶¶ 12, 14.)  Additionally, GCG

11   mailed 328 notice packets to potential class members who requested such packets.  (Id.

12   ¶ 13.)  No class member had opted-out of the settlement as of July 24, 2014, and only

13   three class members have filed objections to the settlement agreement.  (Id. ¶ 15.; see

14   Doc. Nos. 232, 233, and 235.)  The small number of objectors supports the fairness,

15   reasonableness, and adequacy of the settlement.  See In re Austrian & German Bank

16   Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of

17   objections are received, that fact can be viewed as indicative of the adequacy of the

18   settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D.

19   Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition).

20   Accordingly, the reaction of the class members weighs in favor of granting final

21   approval.

22        **6.    No Evidence of Collusion Between the Parties**

23        The collusion inquiry addresses the possibility the agreement is the result of

24   either overt misconduct by the negotiators or improper incentives of certain class

25   members at the expense of other members of the class.  Stanton, 327 F.3d at 960.  In

26   the present case, because there is no evidence of overt misconduct, the Court's inquiry

27   focuses on the aspects of the settlement that lend themselves to self-interested action.

28        The $4,000 incentive awards for Plaintiffs Skye Astiana, Milan Babic, Tamara

1   Diaz, Tamar Larsen, and Kimberly S. Sethavanish do not appear to be the result of

2   collusion.  The Court evaluates incentive awards using "'relevant factors including the

3   actions the plaintiff has taken to protect the interests of the class, the degree to which

4   the class has benefitted from those actions, . . .[and] the amount of time and effort the

5   plaintiff expended in pursuing the litigation . . . .'"  Staton, 327 F.3d at 977 (quoting

6   Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).  In the present case, Plaintiffs

7   have protected the interests of the class by engaging in investigation and discovery,

8   each attending a deposition, and assisting counsel with other aspects of the case.  (Doc.

9   No. 229-2, Vozzolo Decl. ¶ 79; Doc. No. 229-13, Declaration of Joseph N. Kravec, Jr.

10  ("Kravec Decl.") ¶ 7.)  Therefore, the $4,000 award to each of the class representatives

11  appears to be reasonable in light of their efforts in this litigation.

12       Finally, the attorneys' fees do not appear to be the result of collusion.  Plaintiffs'

13  counsel may simultaneously negotiate the merits of the action and their attorneys' fees.

14  Stanton, 327 F.3d at 971.  The attorneys' fees, litigation costs, and administration costs

15  sought by Plaintiffs' counsel are reasonable under the circumstances.

16       The Court has reviewed the objectors' arguments and finds they have no merit.[4]

17  Accordingly, the objections to the settlement and attorneys' fees are overruled.

18       After considering all applicable factors, the Court concludes the settlement is

19  "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959.

20  Accordingly, the Court grants Plaintiffs' motion for final approval of the settlement.

21  **III.   Attorneys' Fees and Expenses**

22       With respect to the attorneys' fees, the Ninth Circuit has established a 25%

23  "benchmark" for common fund cases.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370,

24  1376 (9th Cir. 1993).  This "benchmark percentage should be adjusted, or replaced by

25  _____

26       [4]For example, one week after the settlement administrator filed a declaration
    demonstrating compliance with the Class Action Fairness Act's notice requirement, one
27  objector claimed "there is no evidence that counsel has complied with the requirements of the
    Class Action Fairness Act as it relates to providing state and federal authorities with notice of
    the settlement." (Compare Doc No. 229-15, Declaration of Jennifer M. Keough - CAFA; with
28  Doc. No. 233.)

a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (1990).  Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). Here, Plaintiffs have requested an award of $873,414.05 in attorneys' fees and $376,585.95 in out-of-pocket litigation costs for a total of $1,250,000.  (Doc. No. 230-1 at 2, 25.)  The requested amount of attorneys' fees is approximately 17.5% of the total fund.

The results achieved in this case were favorable.  Class members are provided with immediate monetary and injunctive relief, and the overall award is substantial. Additionally, the risks of litigation were real and substantial.  Further, the complexity and potential duration of the case, coupled with the intensity of settlement negotiations, indicate that a 17.5% award is reasonable.  Moreover, class counsel took this case on a contingent fee basis, bearing the entire risk and cost of litigation.  (Doc. No. 203-1 at 12.)  Finally, the request for attorneys' fees in the amount of 17.5% of the common fund falls below the Ninth Circuit's 25% benchmark.  See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark").  Finally, class counsel has represented that $873,414.05  is approximately 39% of the amount that would have been calculated using the lodestar method.  (Doc. No. 230-1 at 25-26.)  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 944-45 (9th Cir. 2011)

1   (encouraging district courts to cross-check their calculations under the percentage-
2   of-recovery method against the lodestar method).

3   Plaintiffs have represented to the Court that class counsel have incurred litigation
4   expenses in the amount of $376,585.95.  (Doc. No. 230-1 at 31; Doc. No. 229-2,
5   Vozzolo Decl. ¶ 69; Doc. No. 229-6, Declaration of D. Joshua Staub ¶ 13; Doc. No.
6   229-7, Declaration of Michael D. Braun ¶ 12; Doc. No. 229-8, Declaration of Bruce D,
7   Greenberg ¶ 13; Doc. No. 229-9, Declaration of Janet Spielberg ¶ 10; Doc. No. 229-10,
8   Declaration of Marc L. Godino ¶ 17; Doc. No. 229-11, Declaration of Rosemary M.
9   Rivas ¶ 25; Doc. No. 229-12, Declaration of Jason Hartley ¶ 13; Doc. No. 229-13,
10  Kravec Decl. ¶¶ 11-12.)  After reviewing counsels' declarations regarding expenses,
11  the Court concludes $376,585.95 in litigation expenses is reasonable.  Similarly,
12  Plaintiffs' request of $354,608 in costs for the settlement administrator is reasonable
13  in light of the fact that it is less than the $800,000 that was set aside by the settlement
14  agreement for administration costs.  (Doc. No. 229-1 at 20.)

15  For these reasons, the Court concludes that an award of attorneys' fees in the
16  amount of $873,414.05, and litigation expenses in the amount of $376,585.95, are
17  reasonable and warranted in this case.  Accordingly, the Court grants Plaintiffs' request
18  for attorneys' fees and expenses.

19  **V.    Incentive Payments to Class Representatives**

20  Finally, the $4,000 incentive awards for Plaintiffs Astiana, Babic, Diaz, Larsen,
21  and Sethavanish are reasonable.  "The criteria courts may consider in determining
22  whether to make an incentive award include: 1) the risk to the class representative in
23  commencing suit, both financial and otherwise; 2) the notoriety and personal
24  difficulties encountered by the class representative; 3) the amount of time and effort
25  spent by the class representative; 4) the duration of the litigation and; 5) the personal
26  benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."
27  Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)
28  (citations omitted).

11cv1967

1    After reviewing the factors announced in <u>Van Vranken</u>, the Court concludes that

2    the requested incentive awards for the named Plaintiffs are reasonable.  The $4,000

3    awards are well within the acceptable range awarded in similar cases.  <u>See, e.g.</u>, <u>Fulford</u>

4    <u>v. Logitech, Inc.</u>, No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010)

5    (collecting cases awarding incentive payments ranging from $5,000 to $40,000).  Each

6    of the Plaintiffs advanced the interests of the absent class members by engaging in

7    investigation and discovery, attending depositions, and assisting counsel with other

8    aspects of the case.  (<u>See</u> Doc. No. 229-2, Vozzolo Decl. ¶ 79; Doc. No. 229-13,

9    Kravec Decl. ¶ 7.)  Accordingly, the Court approves the $4,000 incentive awards for

10   Plaintiffs Astiana, Babic, Diaz, Larsen, and Sethavanish.

11                                           **Conclusion**

12   For the reasons stated above, it is ordered that:

13   1.    This Judgment incorporates by reference the definitions in the Stipulation

14         of Settlement dated May 2, 2014 (Doc. No. 219, "Settlement") and all

15         terms used in this Judgment shall have the same meanings as set forth in

16         the Settlement.

17   2.    The Court has jurisdiction over the subject matter of this action and all

18         parties to the action, including all Settlement Class Members.

19   3.    The Court certifies the following Class: All California residents who

20         purchased any of the Products listed in paragraph 22 of the Settlement

21         during the Settlement Class Period. Excluded from the Class are: (a)

22         Kashi's employees, officers and directors; (b) persons or entities who

23         purchased the Products for the purpose of re-sale; (c) retailers or re-sellers

24         of the Products; (d) governmental entities; (e) persons who timely and

25         properly exclude themselves from the Class as provided herein; and (f) the

26         Court, the Court's immediate family, and Court staff.

27   4.    All Persons who satisfy the Class definition above, except those Class

28         Members who timely and validly excluded themselves from the Class, are

Settlement Class Members bound by this Judgment.

5.   The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715 ("CAFA"), and the United States Constitution, including the Due Process Clause.

6.   No part of the Settlement, this Judgment, nor the fact of the settlement constitutes any admission by any of the Parties of any liability, wrongdoing or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Litigation.

7.   Class Counsel is awarded $873,414.05 in attorneys' fees, and $376,585.95 in expenses.

8.   Plaintiff Class Representatives are each entitled to an incentive award of $4,000. The attorneys' fees and expense award and Plaintiffs' incentive awards are to be paid out of the Settlement Fund created by Kashi pursuant to the time table set forth in the Settlement.

10.  Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement, and all matters arising thereunder.

11.  This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.  Final Judgment in this action is entered.  The Court dismisses with prejudice the action, and all Released Claims against each and all Released Persons and without costs to any of the Parties as against the others.

**IT IS SO ORDERED.**

DATED: September 2, 2014

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

- 19 -

11cv1967